ARNOLD & PORTER. LLP
GILBERT R. SEROTA (No. 75305)
gilbert.serota@aporter.com
SIMONA A. AGNOLUCCI (No. 246943)
simona.agnolucci@aporter.com
DEBORAH SCHLOSBERG (No. 254621)
deborah.schlosberg@aporter.com
3 Embarcadero Center, 7th Floor
San Francisco, California 94111-4024
Telephone: +1 415.434.1600
Facsimile: +1 415.677.6262

LOWELL HAKY (State Bar No. 178526)
Vice President and Associate General Counsel
Charles Schwab & Co., Inc.
211 Main Street
San Francisco, CA 94105
Telephone: (415) 667-0622
Facsimile: (415) 667-1638

Attorneys for Plaintiff
CHARLES SCHWAB & CO., INC.

EDL

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

CV 12 0518

| | |
|---|---|
| CHARLES SCHWAB & CO., INC.,<br><br>Plaintiff,<br><br>v.<br><br>FINANCIAL INDUSTRY REGULATORY AUTHORITY, INC.,<br><br>Defendant. | Case No.<br><br>**COMPLAINT FOR DECLARATORY AND PRELIMINARY AND PERMANENT INJUNCTIVE RELIEF** |

Plaintiff Charles Schwab & Co., Inc., by its attorneys, alleges as follows:

**INTRODUCTION**

This is an action for declaratory and injunctive relief pursuant to Federal Rules of Civil Procedure 57 and 65 and 28 U.S.C. §2201. Plaintiff Charles Schwab & Co. ("Schwab") requests a declaration that Defendant Financial Industry Regulatory Authority, Inc. ("FINRA") may not enforce its rules regulating broker-dealers in a manner inconsistent with the Federal Arbitration Act ("FAA") as most recently interpreted by the United States Supreme Court in *AT&T Mobility v. Concepcion*, 131 S. Ct. 1740, 179 L. Ed. 2d 742 (2011), and *Compucredit Corp. v. Greenwood*, No. 10-948, 2012 WL 43514 (Jan. 10, 2012). A declaration is needed because FINRA has informed Schwab that it intends to seek disciplinary sanctions against Schwab for inserting a mutual class action waiver provision in its customer arbitration agreements. FINRA has also told Schwab it will face further discipline and additional sanctions if it seeks to enforce its arbitration agreement against a putative class action before the disciplinary proceedings are completed. As a result, Schwab is presently in the untenable position of either enforcing its arbitration agreement and facing regulatory sanctions or risking a waiver of its right to compel arbitration.

FINRA exercises governmental powers in its regulation of broker-dealers under authority delegated from Congress to the SEC and, in turn, from the SEC to FINRA. FINRA seeks to rely on its rules to discipline Schwab despite, and in disregard of, the United States Supreme Court's recent decisions holding that class action waivers are valid and enforceable under the Federal Arbitration Act ("FAA"), and that the FAA's protection of such provisions may only be overridden by a clear, contrary Congressional command. In this Circuit, FINRA's rules are treated as federal regulation. *Credit Suisse First Boston Corp. v. Grunwald*, 400 F.3d 1119, 1131-32 (9th Cir. 2005). No FINRA rule or statute contains such a command. Accordingly, the FAA bars FINRA from proceeding with its threatened disciplinary action against Schwab.

**PARTIES**

1. Schwab is a California corporation with its principal place of business in the City of San Francisco, San Francisco County.

2. FINRA is a non-profit corporation organized under the laws of Delaware with its principal place of business in Washington, D.C.

## JURISDICTION, VENUE AND INTRADISTRICT ASSIGNMENT

3. This Court has subject matter jurisdiction pursuant to 9 U.S.C. §2, 15 U.S.C. §78s and 28 U.S.C. §§1331 and 2201. This Court also has jurisdiction pursuant to 28 U.S.C. §1332 in that this is an action between citizens of different states and the amount in controversy exceeds $75,000 without regard to interest and costs.

4. This Court has personal jurisdiction over FINRA. FINRA has substantial, continuous and systematic contacts with this district, including regularly transacting business within the district. FINRA has two permanent offices that evidence its regular, ongoing activities in California. One office is located at One Montgomery Street, suite 2100, in San Francisco, and another at 300 South Grand Avenue, suite 1600, in Los Angeles.

5. Venue is proper in this district pursuant to 28 U.S.C. §1391(b)(1), (b)(2), and (c). FINRA is subject to personal jurisdiction in this state and would be subject to personal jurisdiction in this district if this district were a separate state. A substantial part of the events or omissions giving rise to Schwab's claim occurred in this district. Venue is also proper in this district pursuant to 28 U.S.C. §1391(a)(1), (a)(2), and (c) for the same reasons.

6. This civil action arises in the County of San Francisco, California, and should be assigned to the San Francisco Division or Oakland Division in accordance with Local Rule 3-2(d).

## BACKGROUND

### A. The History Of NASD And FINRA.

7. FINRA was originally incorporated in 1936 under the name National Association of Securities Dealers ("NASD"). In 2007, NASD merged with the regulation and enforcement functions of the New York Stock Exchange ("NYSE") and renamed itself FINRA. "FINRA" is used herein to encompass its current form and, in some cases, its prior form as NASD.

8. FINRA is a self-regulatory organization ("SRO") registered with the Securities and Exchange Commission ("SEC") as a national securities association. FINRA is now the only such organization.

9. FINRA is a key part of a comprehensive system adopted by Congress for regulating the securities markets. Congress chose to rely on FINRA to conduct the day-to-day regulation and administration of the United States' stock markets, under the close supervision of the SEC.

10. FINRA has regulatory power, delegated from Congress through the SEC in the Securities Exchange Act of 1934 ("Exchange Act"), over broker-dealer firms registered pursuant to section 15 of the Exchange Act and their registered associated persons.

11. The Exchange Act gives FINRA the power to propose rules for the conduct and governance of its regulatory functions. The Exchange Act regulates the content of those rules. FINRA may not use its rulemaking authority to regulate matters not related to the purposes of the Exchange Act or the administration of FINRA.

12. FINRA has contractual arrangements with stock exchanges, including the NASDAQ Stock Market, Inc., to function as their SRO for purposes of compliance with the Exchange Act. FINRA currently oversees nearly 4,460 brokerage firms, 160,485 branch offices and 629,520 registered securities representatives.

13. All broker-dealers in the United States, including Schwab, must become FINRA members if they conduct securities business with the public.

14. FINRA performs wide-reaching functions with respect to broker-dealer regulation. It sets admission and continuing qualification standards for broker-dealer firms and individual stockbrokers seeking to enter the securities industry. It prescribes rules binding on member firms and their registered representatives for the conduct of securities business. FINRA examines securities firms on a regular basis and is authorized to sanction members for noncompliance with securities laws and rules in the FINRA rulebook. Such sanctions include but are not limited to censure, monetary fines, and suspension or revocation of membership or registration.

**B. NASD Rules After 1975 Have the Force of Federal Law.**

15. In 1975, Congress amended the Exchange Act to give the SEC a much larger role than it had in the past in supervising FINRA. The 1975 Amendments require that FINRA file proposed rules with the SEC and give the SEC authority to approve or disapprove all such proposed rules after publishing them for public comment. Current law also allows the SEC to abrogate, add to, and delete from the rules of FINRA in any way it deems necessary or appropriate.

16. Because of the SEC's oversight, every FINRA rule approved by the SEC is an expression of federal legislative power and has the force and effect of a federal regulation. FINRA rules preempt state law when the two are in conflict. *Credit Suisse*, 400 F.3d at 1132.

**C. The FINRA Disciplinary Process**

17. The FINRA disciplinary process consists of five stages. First, a FINRA Hearing Panel hears the complaint. Second, either side may appeal the Hearing Panel's decision to the FINRA National Adjudicatory Council ("NAC"). Third, at its discretion, the FINRA Board may review the NAC's decision. Fourth, a FINRA member or associated person aggrieved by a disciplinary action may appeal that action to the SEC. Finally, at the conclusion of this process, a FINRA member or associated person may access a federal court for the first time by appealing an adverse determination by the SEC to a federal circuit court of appeals. It often takes several years for a disciplinary action to move through all five of these stages.

18. Two out of the three members of a FINRA Hearing Panel need not be attorneys. There is no requirement that any members of the NAC or FINRA Board be attorneys.

19. It is uncommon for anyone involved in the disciplinary process at the FINRA or SEC levels to have expertise or experience with federal law outside the securities laws or FINRA rules, with resolution of legal conflicts between different federal statutes, or with issues relating to the authority of an administrative agency to counteract the mandate of the FAA.

20. There is nothing in the FINRA Rules giving members of the FINRA Hearing Panel, NAC, or FINRA Board the authority to invalidate a FINRA Rule.

**THIS CONTROVERSY**

**A. The Federal Arbitration Act.**

21. The FAA was enacted in 1925 to counteract judicial hostility to arbitration agreements. Section 2 of the FAA provides,

> A written provision in any maritime transaction or a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.

22. The FAA reflects a liberal federal policy favoring arbitration. The Supreme Court recently underscored this point in its landmark decision in *AT&T Mobility v. Concepcion*, 131 S. Ct. 1740, 179 L. Ed. 2d 742 (2011). In that opinion, the Supreme Court explained that "the overarching purpose of the FAA . . . is to ensure the enforcement of arbitration agreements according to their terms so as to facilitate streamlined proceedings." The Supreme Court held that the FAA preempts state statutes or judicial decisions that prohibit parties to an arbitration agreement from waiving the right to bring a class action. The Court held that any such prohibition "interferes with fundamental attributes of arbitration and thus creates a scheme inconsistent with the FAA."

23. On January 10, 2012, the Supreme Court issued its opinion in *Compucredit Corp. v. Greenwood*, No. 10-948, 2012 WL 43514 (Jan. 10, 2012). It held that the federal policy favoring arbitration extends to customer claims based on federal statutes, "unless the FAA's mandate has been 'overridden by a contrary Congressional command.'" *Id.* at *3. *Compucredit* establishes that nothing short of a Congressional statute clearly exempting a statutory claim from arbitration will suffice as evidence that another federal statute or policy overrides the FAA's mandate.

**B. Schwab's Arbitration Agreement and Mutual Class Action Waiver.**

24. Schwab's account agreement with its customers calls for arbitration before FINRA Dispute Resolution of any disputes arising out of the use of Schwab's services. The agreement informs customers of FINRA's customer arbitration procedures that are designed to ensure customers receive a fair and convenient hearing. FINRA Dispute Resolution's rules are designed to make arbitration friendly to customers. A customer's claim need not be in any particular format and may be written as a letter. While there is a fee for a customer to file a claim, the fee is determined

based on the size of the claim and may be as low as $50. The costs of filing an arbitration may be waived entirely in cases of financial hardship. Under FINRA rules, customers may join their claims into one proceeding if the claims arise from the same transaction or series of transactions. Customers are entitled to a majority or exclusively public arbitration panel. Customers may represent themselves in the arbitration or have an attorney. The arbitration hearing will generally be held at the location closest to the customer's residence.

25. After the Supreme Court's opinion in *AT&T Mobility v. Concepcion*, Schwab inserted a mutual class action waiver in the section of its customer agreement dealing with arbitration. Schwab acted to protect its shareholders and customers from the high costs and inefficiencies associated with customer class actions. Schwab was mindful of FINRA Dispute Resolution's successful arbitration forum for customers, including its provisions for simplified arbitration for small claims.

26. The amendment adding the class action waiver to Schwab's customer agreements reads as follows:

> "**Waiver of Class Action or Representative Action.** Neither you nor Schwab shall be entitled to arbitrate any claims as a class action or representative action, and the arbitrator(s) shall have no authority to consolidate more than one parties' claims or to proceed on a representative or class action basis. You and Schwab agree that any actions between us and/or Related Third Parties shall be brought solely in our individual capacities. You and Schwab hereby waive any right to bring a class action, or any type of representative action against each other or any Related Third Parties in court. You and Schwab waive any right to participate as a class member, or in any other capacity, in any class action or representative action brought by any other person, entity or agency against Schwab or you." (Emphasis in original).

27. For existing Schwab account holders, Schwab included a copy of the account agreement with the September 2011 monthly account statements, which were mailed October 3-7, 2011. For those Schwab customers enrolled in electronic statement delivery, Schwab posted the amendments as a pdf document on schwab.com adjacent to account holders' September statement. For the month of September 2011, Schwab delivered 6,828,023 copies of the amended account agreement by mail or through electronic delivery.

28. For new customers, Schwab included the class action waiver provisions within the account agreements of accounts opened on or after October 1, 2011. Since that date Schwab has provided customers opening a new account with a copy of the account agreement dated January 2011 together with all subsequent amendments.

**C. FINRA's Position.**

29. On October 20, 2011, FINRA Enforcement Staff notified Schwab it was investigating Schwab's account agreement amendment incorporating the Waiver of Class Action or Representation Action. FINRA Enforcement Staff requested that Schwab provide certain identified documents and information, which Schwab did along with several communications setting forth its position that the FINRA rules do not prohibit a class action waiver, and that if they did, they would be unenforceable under the Supreme Court decisions cited above.

30. In the days immediately preceding the filing of this Complaint, FINRA Enforcement Staff rejected all of Schwab's arguments. FINRA's position is that NASD Rule 3110(f)(4)(C) precludes Schwab from inserting a class action waiver in its pre-dispute arbitration agreement with its customers.

31. FINRA Enforcement Staff maintains that the FAA is no bar to its proposed disciplinary action against Schwab and that its rules are not subject to the FAA. FINRA Enforcement Staff further asserts that during the period of pendency of any disciplinary action and any subsequent appeals, Schwab could not enforce the class action waiver clause of its customer agreement in Court without facing further disciplinary action, even at the risk of waiving its right to compel arbitration of claims brought against it.

**D. Schwab's Position.**

32. As described more particularly herein, Schwab's position is that FINRA's rules do not prohibit Schwab's class action waiver. First, FINRA's rules are binding on Schwab and have the force and effect of federal regulations. Second, the text and regulatory history of Rule 3110(f)(4)(C) show that FINRA's reliance on the Rule is misplaced. It was not intended to and cannot reasonably be interpreted to prohibit class action waivers. Third, FINRA's attempt to interpret and enforce Rule 3110(f)(4)(C) to prohibit a class action waiver in a member firm's

arbitration agreement is barred by the FAA, as articulated by Supreme Court's recent decisions in *AT&T Mobility* and *Compucredit.* Taken together, these cases establish that the FAA requires the enforcement of class action waivers absent a Congressional command to the contrary.

33. Rule 3110(f)(4)(C) has the force of federal law. After this provision of the proposed rule passed through the various stages of the rulemaking process described above, the SEC approved it in 2005. As a result of the SEC's oversight over the rule-making process, Rule 3110(f)(4)(C) is an expression of federal legislative power and has the force and effect of a federal regulation, not just a contract. This is settled law in the Ninth Circuit. *Credit Suisse,* 400 F.3d at 1132.

34. FINRA's interpretation of Rule 3110(f)(4)(C) is incorrect. NASD Rule 3110(f)(4)(C) provides that "[n]o predispute arbitration agreement shall include any condition that: limits the ability of a party to file any claim in court permitted to be filed in court under the rules of the forums in which a claim may be filed under the agreement."[1] A plain reading of this text contradicts FINRA's position. The term "claim" does not normally refer to a class action. A class action is not a claim. It is a procedural device used to enforce claims.

35. The Rule's history also does not support FINRA's reading, because there is no evidence in the history of Rule 3110(f)(4)(C)'s proposal, adoption, or subsequent amendments that FINRA intended the Rule to prevent the adoption of class action waivers. The first version of the Rule was almost identical to the current Rule 3110(f)(4) except that it had no subsection similar to 3110(f)(4)(C). When the SEC first approved this predecessor in 1989, the stated purpose was to permit parties seeking relief in arbitration to obtain the same remedies they would be entitled to in court (*e.g.*, attorney's fees and punitive damages).

36. The Rule was amended several times in the years afterwards. On October 5, 1998, the NASD first proposed amendments to Rule 3110(f) with language similar to Rule 3110(f)(4)(C). That language read, "Except as provided by this Rule, no predispute arbitration agreement shall

---

[1] Effective December 5, 2011, the SEC approved a proposal by FINRA and NASD Rule 3110(f) became FINRA Rule 2268(d). The conversion to FINRA Rule 2268(d) had no substantive effect on the text of the rule.

include any condition that: limits the ability of a party to file any claim in arbitration or to file any claim in court that could otherwise be filed under the rules of the forums in which a claim may be filed under the agreement."

37. In the NASD's Self-Regulatory Organization's Statement of the Purpose of, and Statutory Basis for, the Proposed Rule Change, there was no mention of a customer's continued right to participate in a class action in court. The statement of purpose addressed (1) choice of law provisions that might limit the availability of certain remedies, such as punitive damages, or the ability of a customer to bring a claim and (2) attempts by members to circumvent the "eligibility rule," which makes claims more than six years old ineligible for arbitration but permits them to proceed in court. It is the latter of these two purposes with which the then proposed section 3110(f)(4)(A)(ii) and now 3110(f)(4)(C) appears to be concerned.

38. NASD proposed this amendment to the language of Rule 3110(f)(4)(C) five times over seven years before the SEC finally approved it.[2] Neither when the SEC first approved the proposed rule in 1989 nor when the SEC approved the applicable amendment to the Rule in January 2005 did the SEC or the NASD state that the Rule was intended to give parties any continued right to pursue class actions in court.

39. Even if FINRA's interpretation that the Rule prohibits Schwab from including a class action waiver in its arbitration agreement or from enforcing its arbitration agreement against a putative class action were tenable, the Supreme Court's decisions interpreting the FAA, including *AT&T Mobility* and *Compucredit,* prevent FINRA from enforcing the Rule in this manner. *AT&T Mobility* establishes that the federal policy favoring the enforcement of arbitration agreements also favors the enforcement of class action waivers in arbitration agreements. *Compucredit* establishes that the FAA's policy directive controls over other federal laws absent a clear contrary Congressional command. Neither the language nor the regulatory history of Rule 3110(f)(4)(C)

---

[2] On April 12, 2005, the SEC approved a cosmetic proposed rule change in Release No. 34-51526, 2005 WL 1861751 (April 12, 2005) (SR-NASD 2005-045). The changes made to the relevant section of NASD Rule 3110(4) simply renumbered Rule 3110(4)(A)(i)-(iv) to its most recent NASD rule form, 3110(4)(A)-(D).

qualifies it as a sufficiently clear Congressional command contrary to the FAA's mandate. Nor is any other FINRA rule a sufficiently clear command to override the FAA.

40. Because FINRA rules have the force of a federal regulation under established Ninth Circuit precedent by virtue of the SEC's approval of them, FINRA rules cannot be interpreted to conflict with the FAA.

41. FINRA Enforcement Staff's interpretation of FINRA Rule 3110(f)(4)(C) unquestionably would conflict with the FAA.

**COUNT I**
**DECLARATORY JUDGMENT THAT NASD AND FINRA RULES CANNOT BE ENFORCED TO BAR A CLASS ACTION WAIVER.**

42. Schwab incorporates each of the preceding paragraphs as if fully set forth herein.

43. An actual and substantial controversy exists between the parties. FINRA has stated that it will initiate disciplinary action against Schwab. Schwab's position is that such disciplinary action is impermissible because FINRA's interpretation of Rule 3110(f)(4)(C) conflicts with the FAA. Accordingly, there is an active controversy over whether the FAA precludes FINRA from disciplining Schwab for adopting and enforcing a mutual waiver of class actions in the arbitration agreements in its standard customer contract.

44. This controversy is of sufficient immediacy and reality to warrant issuance of a declaratory judgment for several reasons.

45. While this controversy is unresolved Schwab risks disciplinary sanctions if it moves to stay or dismiss a class action and compel arbitration of the individual claims. However, if Schwab foregoes enforcement of its arbitration agreement in a putative class action, it will likely be held to have waived its right to do so.

46. Disciplinary proceedings and appeals are time-consuming, and a court would not hear these issues for years. While the first disciplinary sanctions make their way through the lengthy administrative review process, Schwab and other member firms would have no guidance on the resolution of this issue. In addition, the disciplinary process at FINRA will not likely include

persons with experience or expertise resolving the novel issues of federal law, which are at the heart of this case.

47. Schwab therefore seeks a declaratory judgment that FINRA rules cannot be enforced to bar individual arbitration of class action claims.

**PRAYER FOR RELIEF**

WHEREFORE, Schwab requests that judgment be entered in favor of Schwab and against FINRA and requests the following relief:

1. A declaration that NASD or FINRA rules cannot be enforced to bar a provision in Schwab's customer agreements requiring individual arbitration of claims;

2. A preliminary and permanent injunction prohibiting FINRA from pursuing any disciplinary action against Schwab for including a class action waiver in its arbitration agreement or enforcing such waiver in litigation with a customer;

3. Costs and expenses in this action; and

4. Such further and other relief as this Court may deem just and proper.

Dated: February 1, 2012

ARNOLD & PORTER LLP

By: ______________________
GILBERT R. SEROTA

Attorneys for Plaintiff CHARLES SCHWAB & CO., INC.