1
ARNOLD & PORTER. LLP
GILBERT R. SEROTA (Bar No. 75305)
2
gilbert.serota@aporter.com
SIMONA A. AGNOLUCCI (Bar No. 246943)
3
simona.agnolucci@aporter.com
DEBORAH SCHLOSBERG (Bar No. 254621)
4
deborah.schlosberg@aporter.com
3 Embarcadero Center, 7th Floor
5
San Francisco, California 94111-4024
Telephone:     +1 415.471-3100
6
Facsimile:     +1 415.471-3400

7
LOWELL HAKY (No. 178526)
Vice President and Associate General Counsel
8
CHARLES SCHWAB & CO., INC.
211 Main Street
9
San Francisco, CA 94105
Telephone:    + 415.471.3100
10
Facsimile:    + 415.471.3400

11
Attorneys for Plaintiff
CHARLES SCHWAB & CO., INC.
12

13
UNITED STATES DISTRICT COURT
14
NORTHERN DISTRICT OF CALIFORNIA
15
SAN FRANCISCO DIVISION
16

17
CHARLES SCHWAB & CO., INC.,

18
                    Plaintiff,

19
        v.

20
FINANCIAL INDUSTRY REGULATORY
AUTHORITY, INC.,
21
                    Defendant.
22

23

24

25

26

27

28

Case No. C 12-00518 EDL

**CHARLES SCHWAB & CO., INC.'S
NOTICE OF MOTION AND MOTION
FOR PRELIMINARY INJUNCTION;
MEMORANDUM OF POINTS AND
AUTHORITIES IN SUPPORT OF
CHARLES SCHWAB & CO., INC.'S
MOTION FOR PRELIMINARY
INJUNCTION**

Date:          April 3, 2012
Time:          10:00 a.m.
Judge:         Hon. Elizabeth D. Laporte
Courtroom:     E

Trial Date:    None Set

# TABLE OF CONTENTS

**Page**

INTRODUCTION ............................................................................................................ 1

FACTUAL AND PROCEDURAL BACKGROUND .................................................... 2

    I.     THE SUPREME COURT'S LANDMARK DECISIONS IN
          CONCEPCION AND COMPUCREDIT. .................................................... 2

    II.    SCHWAB'S AMENDED ARBITRATION AGREEMENT AND
          MUTUAL CLASS ACTION WAIVER. ...................................................... 3

    III.   FINRA ENFORCEMENT'S DISCIPLINARY ACTION AGAINST
          SCHWAB. .......................................................................................................... 4

    IV.   FINRA ENFORCEMENT ACTS AS A FEDERAL REGULATOR,
          AND ITS RULES HAVE THE FORCE OF FEDERAL LAWS. .................. 5

    V.    THIS ACTION FOR DECLARATORY AND INJUNCTIVE RELIEF. ...... 8

ARGUMENT .................................................................................................................. 8

    I.     SCHWAB IS LIKELY TO SUCCEED ON THE MERITS OF ITS
          CLAIM THAT NASD AND FINRA RULES CANNOT BE
          ENFORCED TO BAR A CLASS ACTION WAIVER. .............................. 9

          A.   Class Action Waivers Are Enforceable In The Context Of An
               Arbitration Agreement. ...................................................................... 10

          B.   Only Clear Congressional Commands In Federal Statutes Or
               Regulations Can Override The FAA. ................................................ 11

          C.   The NASD Rules Relied On By FINRA To Block Class Action
               Waivers Are Barred By The Federal Arbitration Act. ..................... 11

               1.    NASD Rules Have The Force Of Federal Law. .................. 12

               2.    The Rules Relied On By FINRA Enforcement Do Not
                     Constitute A Clear Congressional Command Overriding The
                     FAA. ........................................................................................ 13

                    a.   The Language Of The Rules Does Not Prohibit Class
                        Action Waivers. ........................................................... 13

                    b.   Nothing In The Rules' Regulatory History Suggests
                        That They Were Intended to Prohibit Class Action
                        Waivers. ...................................................................... 15

    II.    SCHWAB WILL SUFFER IRREPARABLE HARM IN THE
          ABSENCE OF PRELIMINARY RELIEF. .............................................. 17

          A.   The FINRA Disciplinary Process Will Not Result in A Definitive
               Ruling For Years. .............................................................................. 18

B.   During The Pendency Of FINRA Proceedings, Schwab Risks Waiving Its Right To Arbitrate Individual Claims Or Incurring Additional Disciplinary Sanctions.                                          19

III.   THE BALANCE OF EQUITIES TIPS IN SCHWAB'S FAVOR.          20

IV.   IT IS IN THE PUBLIC INTEREST FOR THIS MATTER TO BE RESOLVED EXPEDITIOUSLY BY A COURT OF COMPETENT JURISDICTION.                                                    21

CONCLUSION                                                      21

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Alascom, Inc. v. ITT North Electric Co.*, 727 F.2d 1419 (9th Cir.1984)  19

*Alliance for Wild Rockies v. Cottrell*, 632 F.3d 1127 (9th Cir. 2011)  9

*American Trucking Associations, Inc. v. City of Los Angeles*, 559 F.3d 1046 (9th Cir. 2009)  20

*AT&T Mobility v. Concepcion*, 131 S. Ct. 1740 (2011)  2, 3, 10

*Austin Mun. Sec. Inc. v. NASD*, 757 F.2d 676 (5th Cir. June 11, 1984)  8

*CompuCredit Corp. v. Greenwood*, 132 S. Ct. 665 (2012)  3, 11

*Credit Suisse First Boston Corp.* v. *Grunwald*, 400 F.3d 1119 (9th Cir. 2005)  6, 7, 12, 13, 21

*Cruz v. Cingular Wireless, LLC*, 648 F.3d 1205 (11th Cir. 2011)  10

*Dep't of Enforcement v. Shvarts*, Comp. No. CAF980029, 2000 NASD Discip., 2000 WL 768524 (June 2, 2000)  5

*Eyak Native Village v. Exxon Corp.*, 25 F.3d 773 (9th Cir. 1994)  14

*Farrell v. United States*, 313 F.3d 1214 (9th Cir. 2002)  17

*Fiero v. Fin. Indus. Regulatory Auth., Inc.*, 660 F.3d 560 (2011)  5, 7

*French v. First Union Securities*, 209 F. Supp. 2d 818 (M.D. Tenn. 2002)  14

*Green v. Supershuttle Int'l, Inc.*, 653 F.3d 766 (8th Cir. 2011)  10

*In re Application by Nat'l Ass'n of Sec. Dealers, Inc.*, Exchange Act Release No. 2211, 5 S.E.C. 627 (Aug. 7, 1939)  5

*In re Series 7 Broker Qualification Exam Scoring Litig.*, 548 F.3d 110 (D.C. Cir. 2008)  6

*Karsner v. Lothian*, 532 F.2d 876 (D.C. Cir. 2008)  6

*KPMG v. Securities And Exchange Comm'n*, 289 F.3d 109 (D.C. Cir. 2002)  19

*Lesch v. Chicago & Eastern Illinois R.R. Co.*, 279 F. Supp. 908 (N.D. Ill. 1968)  14

*Litman v. Cellco P'ship*, 655 F.3d 225 (3d Cir. 2011)  10

*Madden v. Cowen & Co.*, 576 F.3d 957 (9th Cir. 2009)  14

*Mayo v. Dean Witter Reynolds, Inc.*, 258 F. Supp. 2d 1097 (N.D. Cal. 2003), *amended*, 260 F. Supp. 2d 979 (N.D. Cal. 2003)  13, 20

*Microsoft Corp. v. Comm'r of Internal Revenue*, 311 F.3d 1178 (9th Cir. 2002) .......... 17

*Olde Discount Corp. v. Tupman*, 805 F. Supp. 1130 (D. Del. 1992) .......... 19, 20

*P'ship Exch. Sec. Co. v. NASD*, 169 F.3d 606 (9th Cir. 1999) .......... 7

*PAZ Securities, Inc. v. Securities and Exchange Commission*, 494 F.3d 1059 (D.C. Cir. 2007) .......... 19

*PTR, Inc. v. Securities And Exchange Commission*, 159 Fed. Appx. 338 (3d Cir. 2005) .......... 19

*Sacks v. SEC*, 648 F.3d 945 (9th Cir. 2011) .......... 7

*Souter v. Tatro*, No. 03-CV-6141 CJS, 2004 WL 1574562 (W.D.N.Y. June 21, 2004) .......... 14, 15

*Sparta Surgical Corp. v. Nat'l Ass'n of Sec. Dealers, Inc.*, 159 F.3d 1209 (9th Cir. 1998) .......... 6, 7, 8

*Stuhlbarg Intern. Sales Co., Inc. v. John D. Brush and Co., Inc.*, 240 F.3d 832 (9th Cir. 2001) .......... 20

*Tuan Thai v. Ashcroft*, 366 F.3d 790 (9th Cir. 2004) .......... 17

*Upton v. Securities And Exchange Comm'n*, 75 F.3d 92 (2nd Cir. 1996) .......... 19

*Van Ness Townhouses v. Mar Indus. Corp.*, 862 F.2d 754 (9th Cir. 1988) .......... 19

*Watson v. Proctor*, 161 F.3d 593 (9th Cir. 1998) .......... 17

*Whiteside & Co., v. Securities And Exchange Comm'n*, 557 F.2d 118 (5th Cir. 1977) .......... 18

*Winter v. Natural Res. Defense Council, Inc.*, 555 U.S. 7 (2008) .......... 8

**Statutes**

15 U.S.C.
    §78a to 80b-4 (1975) .......... 12
    §78o-3(b)(6) .......... 6
    §78s(b)(2) .......... 12
    §78s(c) .......... 6
    §78s(d)(2) .......... 18
    §78y(a)(1) .......... 18

**Other Authorities**

17 C.F.R.
    §201.110 .......... 18
    §201.360(a) .......... 18
    §201.360(d) .......... 18
    §201.411 .......... 18
    §201.420-421 .......... 18

*Black's Law Dictionary* (9th Ed. 2009) .......... 14

Brief of Defendants-Appellants NASD, Inc. (filed in *Austin Mun. Sec. Inv. v. NASD*, No. 84-1237 (5th Cir. June 11, 1984))  ..............................................................  7

Brief of Respondent NASD, 2011 WL 6094898 (filed in *Std. Inv. Chartered, Inc. v. Nat'l Ass'n of Sec. Dealers, Inc.*,—S. Ct. —, No. 11-381, 2012 WL 117816 (Dec. 6, 2011))  ...  6, 7

FINRA Rule
   2010  ...................................................................................................................  5
   2268(d)(3)  ...................................................................................  1, 8, 12, 13, 16, 17
   8310(a)  ...........................................................................................................  7
   9120(r)  ...........................................................................................................  21
   9120(w)  ..........................................................................................................  21
   9231(b)  .....................................................................................................  18, 21
   9311(a)  ...........................................................................................................  18
   9351  ...............................................................................................................  18
   9370(a)  ...........................................................................................................  18
   12204(d)  .........................................................................................................  14
   12206  .............................................................................................................  15
   12800  .............................................................................................................  4

NASD Notice to Members 05-09 (January 2005)  ......................................................  16

NASD Rule
   3110(f)(4)  .......................................................................................................  15
   3110(f)(4)(C)  ...........................................................................  1, 8, 12, 13, 15, 16, 17

SEC Release No. 34-56145, 72 Fed. Reg. 42,169, 42,170 (SR-NASD-2007-23) (Aug. 1, 2007)  ............................................................................................................  7

SEC Release No. 34-51526, 2005 WL 1861751 (SR-NASD 2005-045)(April 12, 2005)  ............................................................................................................  16

SEC Release No. 34-63181 (October 26, 2010), 75 Fed. Reg. 67,155 (November 1, 2010)  ............................................................................................................  16

SEC Release No. 34-63784, 76 Fed. Reg. 5850 (SR-FINRA-2010-052) (February 2, 2011)  ............................................................................................................  16

SEC Release No. 34-50713, 69 Fed. Reg 70,293 (SR-NASD-98-74) (December 3, 2004)  ............................................................................................................  16

SEC Release No. 34-26805, 54 Fed. Reg. (May 10, 1989)  .......................................  15

SEC Release No. 34-42160, 64 Fed. Reg. 66,681 (SR-NASD-98-74) (November 29, 1999)  ............................................................................................................  15

1    TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

2        PLEASE TAKE NOTICE that on April 3, 2012, at 10:00 a.m., or as soon thereafter as this

3    matter may be heard by the above-entitled Court, located at 450 Golden Gate Avenue,

4    Courtroom E, 15th Floor, San Francisco, California 94102, Plaintiff Charles Schwab & Co., Inc.

5    ("Schwab") will, and hereby does, move for a preliminary injunction prohibiting Defendant

6    Financial Industry Regulatory Authority, Inc. ("FINRA") from proceeding with a disciplinary

7    action against Schwab or commencing any new disciplinary actions related to the class action

8    waiver provision in Schwab's account agreements with its customers until a final judgment by this

9    Court on the declaratory relief sought by Schwab.

10        The Motion is based on Plaintiff's Complaint, this Notice of Motion and Motion, the

11    Memorandum of Points and Authorities following herein, the Declaration of Gilbert R. Serota

12    submitted herewith, all files, pleadings and records in this action, and such other and further papers

13    and argument as may be submitted to the Court in connection with the Motion.

14

15                  **INTRODUCTION**

16        This is a motion by Plaintiff Charles Schwab & Co. ("Schwab") to preliminarily enjoin

17    Defendant FINRA from proceeding with a disciplinary action against Schwab or commencing any

18    new disciplinary actions related to the class action waiver provision in Schwab's account

19    agreements with its customers until a final judgment by this Court on the declaratory relief sought

20    by Schwab.

21        This action raises the threshold question of whether the Federal Arbitration Act ("FAA"), as

22    interpreted by the United States Supreme Court, bars FINRA from enforcing NASD Rule

23    3110(f)(4)(C)[1] and FINRA Rule 2268(d)(3) to prohibit a broker-dealer and its customers from

24    agreeing to waive filing class actions against each other in favor of individual arbitration conducted

25    by FINRA Dispute Resolution.  FINRA Enforcement contends that these rules prohibit this kind of

26

27    [1] All FINRA and NASD rules referred to herein can be found in FINRA's Online Manual, available at *FINRA—Rules and Regulations—FINRA Manual Online*, FINRA, http://finra.complinet.com

28    (last visited February 17, 2012).

agreement.  Schwab contends that the FINRA rules say no such thing and, even if they did, any such rule would be unenforceable under the FAA because the rules do not contain a clear Congressional command exempting broker-dealer customer agreements from enforcement under the FAA.

As we show below, preliminary injunctive relief is appropriate because (1) Schwab is likely to succeed on the merits of the application of the FAA to FINRA's rules; (2) if FINRA is allowed to proceed with its disciplinary action and to institute further actions if Schwab enforces its arbitration agreement, Schwab will be irreparably harmed by being forced to expend significant resources over several years in defense of the disciplinary action(s) before a ruling by a court on the threshold issues of law; (3) when and if a class action is filed, Schwab will be in the untenable position of either risking a waiver of its rights to arbitration by failing to enforce its arbitration agreement or facing additional charges by FINRA; (4) the balance of equities weighs heavily in Schwab's favor, because FINRA will suffer no harm if a preliminary injunction is granted; and (5) it is very much in the public interest for the Court to resolve these threshold issues of law that affect not only Schwab, but all the broker-dealers that are regulated by FINRA.

We begin below with a discussion of the background law and facts.

## FACTUAL AND PROCEDURAL BACKGROUND

### I.

### THE SUPREME COURT'S LANDMARK DECISIONS IN *CONCEPCION* AND *COMPUCREDIT*.

In the past year, the United States Supreme Court issued two landmark decisions that are central to the resolution of this dispute. Both emphasize the strong federal policies favoring agreements to arbitrate, and both limit the ability of state or federal law to override those policies. In *AT&T Mobility v. Concepcion*, 131 S. Ct. 1740 (2011), the Court held that state statutory or decisional prohibitions on class action waivers, including state court rulings finding such waivers unconscionable per se, are preempted by the Federal Arbitration Act ("FAA") where the contract also calls for individual arbitration. The Court in *AT&T Mobility* held that a rule "requiring" the

1   availability of classwide proceedings "interferes with fundamental attributes of arbitration and thus

2   creates a scheme inconsistent with the FAA." *Id.* at 1748.

3         Last month, in *CompuCredit Corp. v. Greenwood*, 132 S. Ct. 665 (2012), the Court

4   established a high bar to arguments that agreements to arbitrate are unenforceable under a federal

5   statute.  The Court held that arbitration agreements must be enforced according to their terms "even

6   when the claims at issue are federal statutory claims, unless the FAA's mandate has been

7   'overridden by a contrary Congressional command.'" *Id.* at 669 (citation omitted).  Under

8   *CompuCredit*, arbitration agreements cannot be found unenforceable under federal statutes or

9   regulations based on implied interpretations of Congressional or agency intent or public policy.

10  Nothing but a Congressional mandate clearly exempting a claim from arbitration will suffice under

11  *CompuCredit*.  Together, these high court decisions constituted watershed events in the evolution of

12  the law regarding agreements to arbitrate. *CompuCredit* and *AT&T Mobility* establish a clear rule

13  that  mutual agreements to arbitrate containing a class action waiver are enforceable absent an

14  express indication that Congress intended a different result.

## II.

### SCHWAB'S AMENDED ARBITRATION AGREEMENT AND MUTUAL CLASS ACTION WAIVER.

18        Schwab's account agreement with its customers calls for arbitration before FINRA Dispute

19  Resolution of any disputes arising out of the use of Schwab's services.  Declaration of Gilbert R.

20  Serota In Support Of Charles Schwab & Co., Inc.'s Motion for Preliminary Injunction ("Serota

21  Decl.") Ex. A. The agreement informs customers of  FINRA's arbitration procedures, which are

22  designed to ensure customers receive a fair and convenient hearing.  *Id.*

23        After the Supreme Court's opinion in *AT&T Mobility*, Schwab inserted a mutual class action

24  waiver in the section of its customer agreement dealing with arbitration. Serota Decl. ¶2.  Schwab

25  acted to protect its shareholders and customers from the high costs and inefficiencies associated

26  with customer class actions.  Schwab was mindful of the fact that FINRA Dispute Resolution

27  provides a successful arbitration forum for customers, including simplified arbitration for small

28

1    claims. *See* FINRA Rule 12800 (providing simplified arbitration procedures for claims involving

2    $25,000 or less).

3    The amendment adding the class action waiver to Schwab's customer agreements reads as

4    follows:

5    **Waiver of Class Action or Representative Action.** Neither you nor Schwab shall
be entitled to arbitrate any claims as a class action or representative action, and the

6    arbitrator(s) shall have no authority to consolidate more than one parties' claims or to
proceed on a representative or class action basis. You and Schwab agree that any

7    actions between us and/or Related Third Parties shall be brought solely in our
individual capacities. You and Schwab hereby waive any right to bring a class

8    action, or any type of representative action against each other or any Related Third
Parties in court. You and Schwab waive any right to participate as a class member,

9    or in any other capacity, in any class action or representative action brought by any
other person, entity or agency against Schwab or you. (Serota Decl. Ex. A at 2-3

10   (emphasis added))

11   For existing Schwab account holders, Schwab included a copy of the account agreement

12   with the September 2011 monthly account statements, which were mailed October 3-7, 2011.

13   Serota Decl. Ex. B. ¶12. In October 2011, Schwab delivered over 6.8 million copies of the

14   amended account agreement by mail or through electronic delivery. *Id.* ¶12. For new customers,

15   Schwab included the class action waiver provisions within the account agreements of accounts

16   opened on or after October 1, 2011. *Id.* ¶14. Since that date Schwab has provided customers

17   opening a new account with a copy of the account agreement together with all subsequent

18   amendments. *Id.* ¶14.

19

20   ### III.

21   **FINRA ENFORCEMENT'S DISCIPLINARY ACTION AGAINST SCHWAB.**

22   On October 20, 2011, FINRA Enforcement staff ("FINRA Enforcement") notified Schwab it

23   was investigating Schwab's account agreement amendment incorporating the Waiver of Class

24   Action or Representation Action. Serota Decl. ¶5. In response, Schwab set forth its position that

25   the FINRA rules do not prohibit a class action waiver, and that if they did, they would be

26   unenforceable under the recent Supreme Court decisions in *AT&T Mobility* and *CompuCredit*. *Id.*

27   at ¶6. FINRA Enforcement rejected Schwab's arguments and told Schwab that during the period of

28

1  pendency of any disciplinary action, if Schwab sought to enforce its class action waiver clause of its

2  customer agreement in Court, it would face additional disciplinary action. *Id.* at ¶7.

3         On February 1, 2012, FINRA Enforcement initiated a Disciplinary Proceeding against

4  Schwab by filing a Complaint alleging that Schwab's Waiver of Class Action or Representation

5  Action violated NASD Rule 3110(f)(4)(C) before December 5, 2011 and now violates FINRA Rule

6  2268(d)(3).[2] Serota Decl. Ex. B.  Those rules provide that "[n]o predispute arbitration agreement

7  shall include any condition that . . . limits the ability of a party to file any claim in court permitted to

8  be filed in court under the rules of the forums in which a claim may be filed under the agreement."

9         As we discuss more fully below, this language does not expressly prohibit class action

10  waivers, was not promulgated to do so, and certainly does not rise to the level of a clear

11  Congressional command overriding the FAA.

12

13                                   **IV.**

14  **FINRA ENFORCEMENT ACTS AS A FEDERAL REGULATOR, AND ITS**
   **RULES HAVE THE FORCE OF FEDERAL LAWS.**

15         FINRA was incorporated in 1936, and shortly thereafter named itself National Association

16  of Securities Dealers, Inc. ("NASD").  Restated Certificate of Incorporation of Financial Industry

17  Regulatory Authority, Inc., *available at* http://finra.complinet.com (last visited Feb. 16, 2012); *In re*

18  *Application by Nat'l Ass'n of Sec. Dealers, Inc.*, Exchange Act Release No. 2211, 5 S.E.C. 627, at

19  *2 n.20 (Aug. 7, 1939).  In 2007, NASD merged with the regulation and enforcement functions of

20  the New York Stock Exchange ("NYSE") and renamed itself FINRA.  *Fiero v. Fin. Indus.*

21  *Regulatory Auth., Inc.*, 660 F.3d 560, 571 n.1 (2011) (citation omitted).  "FINRA" is used herein to

22  encompass its current form and, in some cases, its prior form as NASD.

23  _____

24  [2]FINRA Enforcement has also coupled Rule 2010, FINRA's general prohibition on conduct
   inconsistent with "just and equitable principles of trade," with the other Rules as an alternative basis
25  for this proposed disciplinary action.  Rule 2010 generally proscribes conduct in violation of other
   rules or which is unethical business-related conduct.  *See Dep't of Enforcement v. Shvarts*, Comp.
26  No. CAF980029, 2000 NASD Discip., 2000 WL 768524, at *6 (June 2, 2000) (discussing prior
   NASD Rule 2110).  For the reasons given in Part I herein, Schwab acted in good faith in adopting
27  the class action waiver and did not violate any rule that gave fair and reasonable notice that its
   conduct was not permitted.  Therefore, Rule 2010 does not appear to be a basis for a separate, free-
28  standing violation in this case.

FINRA is a self-regulatory organization ("SRO") registered with the Securities and Exchange Commission ("SEC") as a national securities association.  *Karsner v. Lothian*, 532 F.2d 876, 880 (D.C. Cir. 2008).  FINRA is the only such SRO.  *Id.*  FINRA is a key part of a comprehensive system adopted by Congress for regulating the securities markets.  Brief of Respondent NASD, 2011 WL 6094898, at *3 (filed in *Std. Inv. Chartered, Inc. v. Nat'l Ass'n of Sec. Dealers, Inc.*,—S. Ct. —, No. 11-381, 2012 WL 117816 (Dec. 6, 2011)).  Congress chose to rely on FINRA to conduct the day-to-day regulation and administration of the United States' stock markets, under the close supervision of the SEC.  *Id.*

FINRA has regulatory power, delegated from Congress through the SEC in the Securities Exchange Act of 1934 ("Exchange Act"), over broker-dealer firms registered pursuant to Section 15 of the Exchange Act and their registered associated persons.  *In re Series 7 Broker Qualification Exam Scoring Litig.*, 548 F.3d 110, 112 (D.C. Cir. 2008).  The Exchange Act gives FINRA the power to propose rules for the conduct and governance of its regulatory functions.  The Exchange Act regulates the content of those rules.  Brief of Respondent NASD, 2011 WL 6094898, at *5 (filed in *Std. Inv. Chartered, Inc. v. Nat'l Ass'n of Sec. Dealers, Inc.*,—S. Ct. —, No. 11-381, 2012 WL 117816 (Dec. 6, 2011)).  FINRA may not use its rulemaking authority to regulate matters not related to the purposes of the Exchange Act or the administration of FINRA.  *Id.* at 6 (citing 15 U.S.C. §78o-3(b)(6)).

In 1975, Congress amended the Exchange Act to give the SEC a much larger role than it had in the past in supervising FINRA.  *Sparta Surgical Corp. v. Nat'l Ass'n of Sec. Dealers, Inc.*, 159 F.3d 1209, 1214 (9th Cir. 1998).  The 1975 Amendments require that FINRA file proposed rules with the SEC and give the SEC authority to approve or disapprove all such proposed rules after publishing them for public comment.  *Credit Suisse First Boston Corp*. v. *Grunwald*, 400 F.3d 1119, 1130 (9th Cir. 2005).  Current law also allows the SEC to abrogate, add to, and delete from the rules of FINRA in any way it deems necessary or appropriate.  *Karsner*, 532 F.3d at 880 (citing 15 U.S.C. §78s(c)).

Because of the SEC's oversight, every FINRA rule approved by the SEC is an expression of federal legislative power and has the force and effect of a federal regulation. *Credit Suisse*, 400 F.3d at 1129-32.

FINRA has contractual arrangements with stock exchanges, including the NASDAQ Stock Market, Inc., to function as their SRO for purposes of compliance with the Exchange Act. *See* Order Approving Proposed Rule Change To Amend the By-Laws of NASD, SEC Release No. 34-56145, 72 Fed. Reg. 42,169, 42,170 (SR-NASD-2007-23) (Aug. 1, 2007). FINRA currently oversees nearly 4,450 brokerage firms, 161,065 branch offices and 629,755 registered securities representatives. *FINRA—Home Page*, Finra.org, http://www.finra.org (last visited Feb. 17, 2012). All broker-dealers in the United States, including Schwab, must become FINRA members if they conduct securities business with the public. *Fiero*, 660 F.3d at 571 (citing *Sacks v. SEC*, 648 F.3d 945, 948 (9th Cir. 2011)).

FINRA performs wide-reaching functions with respect to broker-dealer regulation. It sets admission and continuing qualification standards for broker-dealer firms and individual stockbrokers seeking to enter the securities industry. Brief of Respondent NASD, 2011 WL 6094898, at *3 (filed in *Std. Inv. Chartered, Inc. v. Nat'l Ass'n of Sec. Dealers, Inc.*,—S. Ct. —, No. 11-381, 2012 WL 117816 (Dec. 6, 2011)). It prescribes rules binding on member firms and their registered representatives for the conduct of securities business. *Id.* FINRA examines securities firms on a regular basis and is authorized to sanction members for noncompliance with securities laws and rules in the FINRA rulebook. *Id.*; *Fiero*, 660 F.3d at 572. Such sanctions include but are not limited to censure, monetary fines, and suspension or revocation of membership or registration. FINRA Rule 8310(a), *available at* http://finra.complinet.com. Courts have long recognized that NASD is a quasi-governmental, regulatory entity, and NASD itself frequently takes this position.[3]

---

[3] *See, e.g.*, Brief of Defendants-Appellants NASD, Inc., at 19, *filed in Austin Mun. Sec. Inc. v. NASD*, No. 84-1237 (5th Cir. June 11, 1984) (in arguing that it exercises quasi-governmental powers, NASD stressed that it "has been delegated governmental power and acts as a quasi-governmental regulatory body pursuant to statutory mandate and subject to extensive oversight and control by the SEC"); *P'ship Exch. Sec. Co. v. NASD*, 169 F.3d 606, 608 (9th Cir. 1999) (granting NASD immunity on the grounds that it "exercises quasi-governmental powers"); *Sparta Surgical Corp.*, 159 F.3d at 1214 (NASD "performs a variety of regulatory functions that would, in other

(Footnote Cont'd on Following Page)

## V.

### THIS ACTION FOR DECLARATORY AND INJUNCTIVE RELIEF.

On February 1, 2012, the same day that FINRA Enforcement initiated its Disciplinary Proceeding, Schwab filed this action against FINRA seeking declaratory and injunctive relief. Schwab requests a declaration that FINRA may not enforce its rules regulating broker-dealers in a manner inconsistent with the FAA as most recently interpreted by the United States Supreme Court in *AT&T Mobility* and *CompuCredit*. Schwab contends that a declaration by this Court is needed because FINRA intends to seek disciplinary sanctions against Schwab for inserting a mutual class action waiver provision in its customer arbitration agreements. By this motion, Schwab respectfully requests that the Court enjoin FINRA from pursuing its disciplinary proceeding against Schwab or from commending any new actions concerning the class action waiver until the Court has ruled on the threshold issue of whether the rules on which FINRA Enforcement relies may be interpreted to bar Schwab from including a class action waiver in the arbitration provision of its customer agreement.

### ARGUMENT

"A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Winter v. Natural Res. Defense Council, Inc.*, 555 U.S. 7, 20 (2008). As shown below, Schwab has established each of these elements:

*First*, the interpretation of NASD Rule 3110(f)(4)(C) and FINRA Rule 2268(d)(3) to block class action waivers is foreclosed by controlling U.S. Supreme Court precedent interpreting the FAA.

---

(Footnote Cont'd From Previous Page)
circumstances, be performed by a governmental agency"); *Austin Mun. Sec. Inc.*, 757 F.2d 676, 680, 690-91 (5th Cir. 1984) (NASD officers "serve as surrogates for the Commission," and so must enjoy the same immunity, because "Congress delegated power to [NASD] . . .").

*Second*, unless and until FINRA's disciplinary proceeding is enjoined, Schwab is in the untenable position of either foregoing—and potentially waiving—its right to arbitrate individual claims, or enforcing the arbitration provisions of its customer agreement and risking additional claims and penalties by FINRA Enforcement.  Meanwhile, Schwab is forced to expend significant resources on one or more disciplinary actions over a period of years before meaningful judicial review is available. This showing  unquestionably constitutes irreparable harm.

*Third*, the balance of equities weighs heavily in Schwab's favor, because FINRA will suffer no harm if this Court grants a preliminary injunction.

*Fourth*, the granting of an injunction—and the expeditious resolution of important federal questions by a court of competent jurisdiction—undoubtedly is in the public interest not only for Schwab and its customers but for all of the broker-dealers regulated by FINRA.

The Ninth Circuit recently held that the question whether an injunction is warranted is subject to a "sliding scale" approach that balances the four elements described above.  *Alliance for Wild Rockies v. Cottrell*, 632 F.3d 1127 (9th Cir. 2011).  Accordingly, "'serious questions going to the merits' and a balance of hardships that tips sharply towards the plaintiff can support issuance of a preliminary injunction, so long as the plaintiff also shows that there is a likelihood of irreparable injury and that the injunction is in the public interest."  *Id*. at 1135.  Under the Ninth Circuit's test, Schwab is entitled to preliminary injunctive relief.

# I.

## SCHWAB IS LIKELY TO SUCCEED ON THE MERITS OF ITS CLAIM THAT NASD AND FINRA RULES CANNOT BE ENFORCED TO BAR A CLASS ACTION WAIVER.

Under recent Supreme Court decisions interpreting the FAA and affirming the strong policies favoring arbitration, the rules relied on by FINRA Enforcement cannot bar Schwab's class action waiver.  Under controlling Ninth Circuit law, FINRA and NASD Rules, which are approved by the SEC after public notice and comment, have the force of federal regulations.  Federal laws and regulations cannot override the FAA without including an express Congressional command to that effect.  Because no current FINRA or NASD rule constitutes an express Congressional

1    command sufficiently capable of overriding the FAA, Schwab's agreement to arbitrate is not barred

2    by the FINRA rules at issue here. Each of these points is discussed in the subsections that follow.

3

4    **A.    Class Action Waivers Are Enforceable In The Context Of An Arbitration Agreement.**

5         In *AT&T Mobility*, the Court held that neither state law nor decisions of state courts could

6    preclude a waiver of class actions in connection with an agreement to arbitrate under the Federal

7    Arbitration Act (FAA).  131 S. Ct. 1740 (2012).  In that case, the Concepcions sought to prosecute a

8    class action against AT&T Mobility over claims arising from its practice of billing customers for

9    sales tax on "free" mobile phones. *Id.* at 1744.  The sales and servicing agreement the AT&T

10   customers signed prohibited class actions and called for individual arbitration of all disputes

11   between the parties.  *Id.*  The Court reversed the prevailing rule in both the Ninth Circuit and

12   California state courts that a prohibition on class actions in a consumer contract containing an

13   arbitration agreement was unconscionable as a matter of law.  *Id.* at 1748-53.  The Court held that

14   state statutory or decisional prohibitions on class action waivers, including finding them

15   unconscionable, are preempted by the FAA where the contract also calls for individual arbitration.

16   *Id.* at 1753.

17        The Court in *AT&T Mobility* explained that "the overarching purpose of the FAA . . . is to

18   ensure the enforcement of arbitration agreements according to their terms so as to facilitate

19   streamlined proceedings." *Id.* at 1748.  It held that a rule "requiring" the availability of classwide

20   proceedings "interferes with fundamental attributes of arbitration and thus creates a scheme

21   inconsistent with the FAA." *Id.*

22        Subsequent decisions by Circuit Courts of Appeals have applied *AT&T Mobility* to enforce

23   class action waivers, even where such waivers would have been illegal under applicable law.  *See*

24   *Green v. Supershuttle Int'l, Inc.*, 653 F.3d 766, 769 (8th Cir. 2011) (FAA preempts Minnesota law

25   that class action waivers are unconscionable); *Litman v. Cellco P'ship*, 655 F.3d 225, 231 (3d Cir.

26   2011) (FAA preempts New Jersey law requiring availability of class mechanism in certain

27   consumer suits); *Cruz v. Cingular Wireless, LLC*, 648 F.3d 1205, 1213-14 (11th Cir. 2011) (FAA

28

1   would preempt Florida law that would prohibit class action waivers that in effect exculpate

2   defendants in certain consumer suits).

3

4   **B.      Only Clear Congressional Commands In Federal Statutes Or Regulations Can Override The FAA.**

5           Last month, the Supreme Court addressed the question of what language is required in a

6   federal statute in order for it to override the enforcement of an agreement to arbitrate under the

7   FAA.  In *CompuCredit*, the Supreme Court set a high bar for arguments that agreements to arbitrate

8   are unenforceable because they arise under a federal statute whose provisions allegedly exempt

9   itself from arbitration.  132 S. Ct. 665 (2012). The Court reversed a Ninth Circuit decision holding

10  that claims under the Credit Repair Organizations Act (CROA) were non-arbitrable.  *Id*. at 672-73.

11  The Ninth Circuit had read the statute as precluding arbitration based on language requiring a

12  disclosure to customers that "You have a right to sue" and a provision prohibiting any contractual

13  waiver of "any right" of the consumer under CROA.  *Id*. at 679.

14          The Supreme Court found that these arguments were unavailing and that a far clearer and

15  direct expression of Congressional intent to override FAA is required.  *Id*. at 670.  Acknowledging

16  the applicability of the FAA and reiterating the resulting strong policies favoring arbitration, the

17  Court made clear that arbitration agreements must be enforced according to their terms "even when

18  the claims at issue are federal statutory claims, unless the FAA's mandate has been 'overridden by a

19  contrary Congressional command.'"  *Id*. at 669 (citation omitted).  The Court held that the CROA's

20  repeated use of the terms "action" "class action" and "court" were insufficient to establish a

21  "Congressional command" to override the FAA.  Accordingly, under *CompuCredit*, arbitration

22  agreements cannot be found unenforceable under federal statutes or regulations based on implied

23  interpretations of Congressional or agency intent or public policy.  *See id*.  Nothing but a

24  Congressional statute clearly exempting a claim from arbitration will suffice under *CompuCredit*.

25  **C.      The NASD Rules Relied On By FINRA To Block Class Action Waivers Are Barred By The Federal Arbitration Act.**

26          Because NASD Rules have the force of federal regulations, they must satisfy

27  *CompuCredit*'s high bar in order to override the FAA.  As shown below, they do not meet the

28

1    standard. Nothing in their plain language or legislative history suggests that they are intended to

2    override the FAA and protect class actions.

3

4         **1.    NASD Rules Have The Force Of Federal Law.**

5              As discussed more fully in Part I(C)(2)(b) below, the SEC approved the predecessor to

6    NASD Rule 3110(f)(4)(C) and FINRA Rule 2268(d)(3) (together "the Rules") on May 10, 1989, as

7    it did with all subsequent amendments.  The SEC's imprimatur gives NASD rules the force of

8    federal law.  *Credit Suisse*, 400 F.3d at 1119.  In *Credit Suisse*, the Ninth Circuit considered

9    whether NASD arbitration rules could preempt application of the California Ethics Standards

10   statutes when applied to NASD-appointed arbitrators.  *Id.* at 1128.  The court concluded that

11   because NASD rules were approved by the SEC, they had the force of federal regulations and

12   preempted conflicting state law.  *Id.*

13             The *Credit Suisse* court reached its conclusion by examining the origins of the system of

14   supervised self-regulation by which the SEC oversees NASD.  *Id.*  The court found that although

15   self-regulatory organizations ("SROs") such as NASD had "substantial rule-making latitude" at

16   their inception, the 1975 Securities Act Amendments effected a "substantial overhaul" of the

17   Exchange Act and gave the SEC "a much larger role than it ha[d] in the past" in supervising the

18   SROs.  *Id.* at 1129-30, quoting Pub. L. No. 94-29, 89 Stat. 168 (codified as amended at 15 U.S.C.

19   §78a to 80b-4 (1975) (internal quotation marks omitted).  "After the 1975 Amendments, the SRO's

20   authority to regulate independently of the SEC's control was substantially curtailed."  *Id.* at 1130

21   (internal quotation marks omitted).  The court found that the limitation on an SRO's rule-making

22   authority was accomplished by requiring SROs to file proposed rules with the SEC, by requiring

23   that the SEC approve all proposed rules, and by allowing the SEC to abrogate, add to, and delete

24   from the rules of any SRO.  *Id.*

25             As a result of this system of SEC oversight, "[t]he ultimate approval of a proposed SRO rule

26   reflects the Commission's determination that the proposed rule is consistent with the purposes of

27   the Exchange Act."  *Id.*  An SRO rule approved under 15 U.S.C. §78s(b)(2)—such as the NASD

28   Rule at issue here—"fall[s] under the shadow of the federal umbrella . . ."  *Credit Suisse,* 400 F. 3d

1    at 1131.  As a result, "SRO rules that have been approved by the Commission pursuant to 15 U.S.C.

2    §78s(b)(2) preempt state law when the two are in conflict . . ."  *Id.* at 1132.

3           Both the SEC and NASD argued that their rules have the force of federal law in another case

4    involving the question of whether NYSE rules pre-empt California ethics standards that apply to

5    arbitrators.  In *Mayo v. Dean Witter Reynolds, Inc*., 258 F. Supp. 2d 1097 (N.D. Cal. 2003),

6    *amended*, 260 F. Supp. 2d 979 (N.D. Cal. 2003), Judge Fogel held that the federal regulatory

7    scheme established pursuant to the Exchange Act pre-empts application of the California ethics

8    standards to the NYSE and other SROs.  *Id.* at 1108.  The court relied on the fact that both NASD

9    and NYSE, as intervenors, and the SEC, as amicus, urged that SRO rules had pre-emptive power.

10   "Because this position is . . . supported by the SEC, it is entitled to great weight in the Court's

11   preemption analysis."  *Id.* at 1109.  FINRA will be estopped from taking a different position in this

12   case.

13          Rules 3110(f)(4)(C) and 2268(d)(3) are no different from either the NASD rules that were

14   the subject of *Credit Suisse* or the NYSE rules that were the subject of *Mayo*.  They were submitted

15   to the SEC as proposed rules.  *Credit Suisse*, 400 F.3d at 1130.  The SEC approved them after a

16   period of public notice and comment.  *Id*.  And, as in *Credit Suisse* and *Mayo*, the SEC's approval

17   of the rules brings them within the "shadow of the federal umbrella" and gives them the force of

18   federal law.  *Credit Suisse,* 400 F.3d at 1131.

19
20   **2.    The Rules Relied On By FINRA Enforcement Do Not Constitute A Clear**
         **Congressional Command Overriding The FAA.**

21              **a.    The Language Of The Rules Does Not Prohibit Class Action Waivers.**

22          The language of Rules 3110(f)(4)(C) and 2268(d)(3) is not susceptible to FINRA

23   Enforcement's proposed interpretation.  The Rules provide that "[n]o predispute arbitration

24   agreement shall include any condition that . . . limits the ability of a party to file any claim in court

25   permitted to be filed in court under the rules of the forums in which a claim may be filed under the

26   agreement."  They expressly protect a party's right to file a "claim" *if* that claim is permitted to be

27   filed in court under the "rules of the forums in which a claim may be filed under the agreement."

28   The Rules make no mention of a claimant's right to participate in a class action in court.

1      There is no evidence on the face of the Rules that they were intended as "Congressional

2  command" to override the FAA and protect the procedural device known as a class action.  The

3  Rules protect a right to file a "claim," which is defined as a substantive right to pursue a remedy for

4  an alleged wrong.  *Black's Law Dictionary* (9th Ed. 2009).  The ability to participate in a class

5  action is not a "claim," but a procedural device that permits a representative individual to pursue

6  certain claims on behalf of others, subject to prior approval of the court.  Numerous authorities hold

7  that a class action does not create or protect claims, it only provides a procedural mechanism to

8  enforce them.  *See Eyak Native Village v. Exxon Corp.*, 25 F.3d 773, 781 (9th Cir. 1994) ("A class

9  action is 'a multiple joinder device, permitting the litigation, in one single action, of multiple claims

10  involving similar or identical questions of law and fact, usually arising from the same set of

11  operative facts'") (quoting *Lesch v. Chicago & Eastern Illinois R.R. Co*., 279 F. Supp. 908, 911

12  (N.D. Ill. 1968)); *see also Madden v. Cowen & Co*., 576 F.3d 957 (9th Cir. 2009) (differentiating

13  between the ability to participate in a class action and pursue a claim).

14      Nor is there any clear provision in the NASD or FINRA forum rules that protect the right of

15  a customer to prosecute class actions in Court against broker-dealers as would be required by the

16  language of these rules.  FINRA adopted Rule 12204(d), which provides that a broker-dealer may

17  not enforce an arbitration agreement against a member of a certified or putative class action until "

18  the member of the certified or putative class is excluded from the class by the court."  This

19  provision has been interpreted to allow a motion to compel arbitration after the class action claims

20  have been dismissed. *See French v. First Union Securities*, 209 F. Supp. 2d 818 (M.D. Tenn. 2002)

21  (holding that when a customer's class claims are dismissed by the Court, former NASD Code

22  Section 10301(d)(1), which is identical to FINRA Code Section 12204(d), is no longer a barrier to

23  an order compelling arbitration);[4] *see also Souter v. Tatro*, No. 03-CV-6141 CJS, 2004 WL

24  1574562, at *5 (W.D.N.Y. June 21, 2004) ("At the outset, the Court will consider whether or not

25

26  _____

[4]In *French*, the Court explained that "[a]ny other construction of this rule would allow a plaintiff to
27  append a questionable putative class action claim to other claims in order to avoid the specter of
arbitration. Clearly, this is not what the NASD and the SEC intended when those organizations
28  made the changes to the NASD Code of Arbitration Procedure in 1992."  209 F. Supp 2d at 833-34.

1   this action may proceed as a class action . . . which in turn will determine whether or not plaintiffs'

2   claims must be arbitrated").

3        Accordingly, *CompuCredit*'s high bar for overriding the FAA has not been met.

         **b.**    **Nothing In The Rules' Regulatory History Suggests That They Were Intended to Prohibit Class Action Waivers.**

6        The regulatory history of the Rules further proves that they are not "Congressional

7   commands" to bar class action waivers in contracts containing arbitration agreements.  There is

8   nothing in the regulatory history of the Rules or in publications by NASD or FINRA to even

9   suggest otherwise.  Rather, the legislative history of the Rules indicates that they were intended to

10  protect an individual's ability to pursue a claim in court when it is not eligible for arbitration.  An

11  example of such a case is where a customer claim is not eligible for arbitration because it is barred

12  by FINRA's six-year rule (FINRA Rule 12206), but where the customer seeks to argue in court that

13  the applicable statute of limitations may not have expired due to a tolling theory.

14       The first version of the Rules was almost identical to the current Rule 3110(f)(4) except that

15  it had no subsection similar to 3110(f)(4)(C).  When the SEC first approved this predecessor in

16  1989, the stated purpose was to permit parties seeking relief in arbitration to obtain the same

17  remedies they would be entitled to in court (*e.g.*, attorney's fees and punitive damages).  *See* SEC

18  Release No. 34-26805, 54 Fed. Reg. 21,144 (May 10, 1989).

19       The Rule was amended several times in the years afterwards.  On October 6, 1998, the

20  NASD first proposed amendments to Rule 3110(f) with language similar to Rule 3110(f)(4)(C).  *See*

21  SEC Release No. 34-42160 (Amendments to Rule 3110(f) Governing Predispute Arbitration

22  Agreements with Customers) 64 Fed. Reg. 66,681 (SR-NASD-98-74) (November 29, 1999).  That

23  language read, "no predispute arbitration agreement shall include any condition that: limits the

24  ability of a party to file any claim in arbitration or to file any claim in court that could otherwise be

25  filed under the rules of the forums in which a claim may be filed under the agreement."

26       In the NASD's Self-Regulatory Organization's Statement of the Purpose of, and Statutory

27  Basis for, the Proposed Rule Change, there was no mention of a customer's continued right to

28  participate in a class action in court.  The statement of purpose addressed (1) choice of law

1  provisions that might limit the availability of certain remedies, such as punitive damages, or the

2  ability of a customer to bring a claim and (2) attempts by members to circumvent the "eligibility

3  rule," which makes claims more than six years old ineligible for arbitration but permits them to

4  proceed in court.  It is the latter of these two purposes with which the then proposed section

5  3110(f)(4)(A)(ii) and now 3110(f)(4)(C) appears to be concerned.  *Id.*

6      NASD proposed this amendment to the language of Rule 3110(f)(4)(C) five times over

7  seven years before the SEC finally approved it.[5]  Neither when the SEC first approved the proposed

8  rule in 1989 nor when the SEC approved the applicable amendment to the Rule in January 2004 did

9  the SEC or the NASD state that the Rule was intended to give parties any continued right to pursue

10  class actions in court.  SEC Release No. 34-50713, 69 Fed. Reg. 70, 293 (SR-NASD-98-74)

11  (December 3, 2004) (Order Granting Approval to Proposed Rule Change as Amended and Notice of

12  Filing and Order Granting Accelerated Approval to Amendment No. 5 by the National Association

13  of Securities Dealers, Inc., Regarding NASD Rule 3110(f) Governing Predispute Arbitration

14  Agreements With Customers) (SR-NASD-98-74)); *see* NASD Notice to Members 05-09 (January

15  2005) (explaining that the "amendments are intended to, among other things, address provisions that

16  attempt to circumvent NASD Rule 10304, governing the eligibility of claims in arbitration").

17      On October 20, 2010, FINRA proposed to change NASD Rule 3110(f)(4)(C) to FINRA

18  Rule 2668(d)(3) without amending the language of the Rule.  *See* File No. SR-FINRA-2010-052.

19  The SEC approved the Rule after public notice and comment.  *See* SEC Release No. 34-63181, 75

20  Fed. Reg. 67,155 (November 1, 2010) (Notice of Filing of Proposed Rule Change to Adopt FINRA

21  Rules Regarding Books and Records in the Consolidated FINRA Rulebook); SEC Release No. 34-

22  63784, 76 Fed. Reg. 5850 (SR-FINRA-2010-052) (February 2, 2011) (Order Approving Proposed

23  Rule Change).  The language of NASD Rule 3110(f)(4)(C) is identical to that of FINRA Rule

24  2668(d)(3), and neither the submitted comments nor the rule proposal mentioned a prohibition of

25

26  _____

[5]On April 12, 2005, the SEC approved a cosmetic proposed rule change in Release No. 34-51526,
27  2005 WL 1861751 (SR-NASD 2005-045) (April 12, 2005).  The changes made to the relevant
section of NASD Rule 3110(4) simply renumbered Rule 3110(4)(A)(i)-(iv) to its most recent NASD
28  rule form, 3110(4)(A)-(D).

class action waivers or otherwise indicated that the provision applies to a customer's right to bring a class action in court.

In sum, over the 23-year legislative history of the Rules, *not one* NASD or FINRA rule proposal or SEC release on NASD Rule 3110(f)(4)(C), FINRA Rule 2268(d)(3) or their predecessors mentioned a prohibition on class action waivers or a customer's right to participate in class action lawsuits in another forum.  Since adoption of the Rules, NASD and then FINRA have been noticeably silent in providing (non-binding) notice or guidance that the Rule might be applied to discipline member firms adopting a class action waiver.  This silence is particularly relevant since the Supreme Court's decision in *AT&T Mobility*.  Despite the wave of press, journal articles, and court decisions surrounding class action waivers and the FAA, FINRA has not sent out any notices to members regarding its view of the impact of *AT&T Mobility* on the NASD conduct rules or predispute arbitration clauses.

The legislative history is clear: protection of a "right" of a customer to pursue a class action or, on the other hand, the prohibition of class action waivers in customer arbitration agreements was never the actual or stated purpose of NASD Rule 3110(f)(4)(C) or FINRA Rule 2668(d)(3).  Accordingly, neither rule meets the test established by the Supreme Court in *CompuCredit*, and neither rule is capable of overriding the FAA.[6]

## II.

### SCHWAB WILL SUFFER IRREPARABLE HARM IN THE ABSENCE OF PRELIMINARY RELIEF.

Schwab will suffer irreparable harm if this Court does not enjoin the FINRA Enforcement disciplinary proceedings pending a definitive ruling on the threshold questions of federal law presented here.  Based on the multiple layers of process required in a FINRA Enforcement

[6]The Rules cannot be interpreted to conflict with the FAA for the additional reason that, as federal regulations, they must bow to, and be harmonized with, a federal statute such as the FAA.  "A federal regulation in conflict with a federal statute is invalid as a matter of law."  *Watson v. Proctor (In re Watson)*, 161 F.3d 593, 598 (9th Cir. 1998).  "It is beyond dispute that a federal regulation cannot empower the Government to do what a federal statute prohibits it from doing."  *Tuan Thai v. Ashcroft*, 366 F.3d 790, 798 (9th Cir. 2004).  "When such a conflict occurs, it is the statute's meaning that must control."  *Id.* at 798; *see also Farrell v. United States*, 313 F.3d 1214, 1219 (9th Cir. 2002); *Microsoft Corp. v. Comm'r of Internal Revenue*, 311 F.3d 1178, 1189 (9th Cir. 2002).

1    proceeding, Schwab and FINRA will be forced to expend significant time and resources over

2    several years before these important issues of federal law can reach a federal court.  In the interim,

3    Schwab will be placed in the untenable position of (1) foregoing enforcement of its class action

4    waiver, and potentially waiving the right to arbitrate individual customer claims, or (2) enforcing

5    the arbitration provisions of its customer agreement, and facing further FINRA disciplinary actions

6    and additional sanctions.  As discussed in the following subsections, this is exactly the type of

7    irreparable harm for which injunctive relief is designed.

8

9    **A.      The FINRA Disciplinary Process Will Not Result in A Definitive Ruling For Years.**

10          The FINRA disciplinary process, which began with the filing of FINRA's complaint on

11   February 1, 2012, is a lengthy one that may not be resolved for several years and will only reach a

12   federal court after at least three and possibly four levels of administrative process.  FINRA

13   Enforcement's Complaint first will be heard by a FINRA Hearing Panel.  FINRA Rule 9231(b).

14   Either side may then appeal the decision to the National Adjudicatory Council ("NAC").  FINRA

15   Rule 9311(a).  Once the NAC has rendered its decision, the decision is subject to discretionary

16   review by the FINRA Board.  FINRA Rule 9351.  The decision is then subject to review by the

17   SEC.  15 U.S.C. §78s(d)(2); FINRA Rule 9370(a); 17 C.F.R. §201.420-421.  Either the

18   Commission or a hearing officer appointed by the Commission presides over that appeal.  17 C.F.R.

19   §201.110.  If a hearing officer has been appointed, he or she makes an initial decision, which

20   becomes a final order of the Commission unless a party petitions for review by the Commission or

21   the Commission itself chooses to review the initial decision.  17 C.F.R. §201.360(a), (d).  On

22   review, the Commission may affirm, modify, remand, or reverse the hearing officer's initial

23   decision.  17 C.F.R. §201.411.  After a hearing officer's initial decision has become a final order

24   because no petition was made for Commission review, or after the Commission has reviewed the

25   action and entered a final order, the order *finally* can be appealed to the United States Court of

26   Appeals.  15 U.S.C. §78y(a)(1).

27          It is not uncommon for this process to take three, four, or even more years.  *See, e.g.,*

28   *Whiteside & Co., v. SEC*, 557 F.2d 118 (5th Cir. 1977) (disciplinary action began October 31, 1974

1   and was decided by appellate court on August 18, 1977); *Upton v. SEC*, 75 F.3d 92 (2nd Cir. 1996)

2   (disciplinary action began October 21, 1991 and was decided by appellate court on January 18,

3   1996); *KPMG v. SEC*, 289 F.3d 109 (D.C. Cir. 2002) (disciplinary action began December 4, 1997

4   and was decided by appellate court on May 14, 2002); *PTR, Inc. v. SEC*, 159 Fed. Appx. 338 (3d

5   Cir. 2005) (disciplinary action began July 2002 and was decided by appellate court on November 9,

6   2006); *PAZ Securities, Inc. v. SEC*, 494 F.3d 1059 (D.C. Cir. 2007) (disciplinary action began

7   August 14, 2003 and was decided by appellate court on July 20, 2007).  Accordingly, absent an

8   injunction, the important questions of federal law presented herein may not be decided by a federal

9   court until 2016.

10

11        **B.**     **During The Pendency Of FINRA Proceedings, Schwab Risks Waiving Its Right To Arbitrate Individual Claims Or Incurring Additional Disciplinary Sanctions.**

12        During the pendency of FINRA disciplinary proceedings, Schwab has two options for

13   handling putative customer class actions: (1) Schwab can enforce its agreement to arbitrate, and risk

14   additional disciplinary sanctions from FINRA Enforcement; or (2) Schwab can forego enforcing its

15   arbitration agreement and risk waiving its right to arbitrate individual claims.  Either option in this

16   Hobson's choice unquestionably will cause Schwab irreparable harm.

17        If Schwab does not enforce its arbitration agreement, it risks waiving its right to arbitrate

18   individual claims.  It is well-settled that a party's right to arbitrate a dispute may be waived if the

19   party delays in compelling arbitration of that dispute.  *See, e.g.*, *Van Ness Townhouses v. Mar Indus.*

20   *Corp.*, 862 F.2d 754, 758 (9th Cir. 1988) (securities firm waived arbitration of claims that were

21   arbitrable under customer agreement by failing to move for arbitration until suit had been in

22   litigation for two years).

23        There is no question that if Schwab loses the right to arbitrate individual claims, such harm

24   is irreparable.  Courts have so held.  *Alascom, Inc. v. ITT North Electric Co.*, 727 F.2d 1419, 1422

25   (9th Cir. 1984) (if a party "must undergo the expense and delay of a trial before being able to

26   appeal, the advantages of arbitration—speed and economy—are lost forever. We find this

27   consequence 'serious, perhaps, irreparable'"); *Olde Discount Corp. v. Tupman*, 805 F. Supp. 1130,

28   1141 (D. Del. 1992) ("the Court concludes that the loss of [the] federal substantive right to arbitrate,

1    should injunctive relief be denied, constitutes irreparable harm clearly distinguishable from purely

2    economic losses").

3        FINRA Enforcement represented to counsel for Schwab, both on the telephone and in in-

4    person meetings, that Schwab will face additional disciplinary actions if it seeks to enforce the class

5    action waiver clause of its customer agreement in Court during the pendency of any disciplinary

6    action by FINRA Enforcement.  Serota Decl.  ¶7.  Any disciplinary action against Schwab

7    undoubtedly will harm its public image and customer goodwill.  *See American Trucking Assocs.,*

8    *Inc. v. City of Los Angeles*, 559 F.3d 1046 (9th Cir. 2009) (loss of customer goodwill constitutes

9    irreparable harm); *Stuhlbarg Intern. Sales Co., Inc. v. John D. Brush and Co., Inc.*, 240 F.3d 832,

10   841 (9th Cir. 2001) ("[e]vidence of threatened loss of prospective customers or goodwill certainly

11   supports a finding of the possibility of irreparable harm").

12

13                                          **III.**

14              **THE BALANCE OF EQUITIES TIPS IN SCHWAB'S FAVOR.**

15       In comparison to the irreparable harm Schwab will suffer in the absence of preliminary

16   relief, FINRA will suffer no harm if an injunction is granted.  If this Court grants a preliminary

17   injunction, the disciplinary proceedings will be stayed pending a decision on the merits of the

18   questions of federal law presented here.  If, as Schwab predicts, the Court rules in Schwab's favor,

19   FINRA will not have wasted its resources on an unfounded disciplinary proceeding.

20       If, on the other hand, the Court rules against Schwab, subject to any appellate review that

21   may be appropriate, FINRA may proceed to discipline Schwab after the Courts' rulings, and the

22   hearing panel will have the benefit of a District and/or Circuit Court ruling on federal legal issues.

23   In the event that Schwab customers bring a class action, and Schwab moves to dismiss that class

24   action, FINRA may file an amicus brief and/or move to intervene.  In that motion or brief, FINRA

25   is free to argue that Schwab's motion to dismiss should be denied because Schwab's class action

26   waiver is invalid.  NASD has intervened in cases involving issues very similar to those presented

27   here—namely, the power and scope of SRO rules vis-à-vis state laws.  *See, e.g., Mayo*, 258 F. Supp.

28   2d 1097 (NASD and NYSE intervened, arguing that SRO rules pre-empted application of the

California ethics standards to the NYSE and other SROs); *Credit Suisse*, 400 F.3d at 1119 (NASD briefed and argued, as *amicus curiae*, questions of whether NASD rules may pre-empt state law).

Because the harm Schwab faces absent preliminary relief is significant—the potential loss of its right to arbitrate, or the harm of disciplinary sanctions and loss of goodwill (*see* Part II, *supra*)—the balance of equities in this case tips sharply in Schwab's favor.


### IV.

**IT IS IN THE PUBLIC INTEREST FOR THIS MATTER TO BE RESOLVED EXPEDITIOUSLY BY A COURT OF COMPETENT JURISDICTION.**

The threshold legal issues presented by this case are matters of first impression that deserve expeditious court review.  The public, including FINRA and its member firms, deserve to know if FINRA rulemaking is somehow exempt from the FAA and, if so, why.  It is unclear whether *or when* the disciplinary proceedings will ever reach the question of the interpretation of the FAA and its application to FINRA's rules.  And, even if the disciplinary hearing panel decides to hear the question of whether FINRA rules and the FAA are in conflict, its ruling will be of questionable value and far from definitive.[7]  It will then take years for such a ruling to reach a Court.

Accordingly, it is in the public interest for those questions to be decided by this Court now.

---

[7]FINRA's Hearing Panel is not well equipped to rule on complex issues of federal law.  Two out of the three members of the FINRA Hearing Panel need not be attorneys.  FINRA Rule 9120(r), (w); 9231(b).  There is no requirement that any members of the NAC or FINRA Board be attorneys.  By-Laws of FINRA Regulation, Inc., art. V, sec. 5.2; By-Laws of FINRA, Inc., art. VII, sec. 4.  It is uncommon for anyone involved in the disciplinary process at the FINRA Enforcement or SEC levels to have expertise or experience with federal law outside the securities laws or FINRA rules, with conflicts between different federal statutes, or with issues relating to the authority of an administrative agency to counteract the mandate of the FAA.

1

**CONCLUISON**

2          For the foregoing reasons, this Court should GRANT Schwab's Motion for Preliminary

3  Injunction.

4  Dated: February 21, 2012                    ARNOLD & PORTER LLP

5

6                                              By:  _____/s/ Gilbert R. Serota_____

7                                                        GILBERT R. SEROTA

8                                              Attorneys for Plaintiff CHARLES SCHWAB &
                                               CO., INC.

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28