1  GIBSON, DUNN & CRUTCHER LLP
   Ethan D. Dettmer, SBN 196046
2  EDETTMER@GIBSONDUNN.COM
   Joshua S. Lipshutz, SBN 242557
3  JLIPSHUTZ@GIBSONDUNN.COM
   555 Mission Street, Suite 3000
4  San Francisco, California  94105
   Telephone: (415) 393-8200
5  Facsimile: (415) 393-8306

6  Attorneys for Defendant
   FINANCIAL INDUSTRY
7  REGULATORY AUTHORITY, INC.

8

9              UNITED STATES DISTRICT COURT

10        FOR THE NORTHERN DISTRICT OF CALIFORNIA

11              SAN FRANCISCO DIVISION

12

13 CHARLES SCHWAB & CO., INC.,          CASE NO. 12-cv-0518 EDL

14              Plaintiff,              Action Filed: February 1, 2012

15        v.                            **DEFENDANT'S NOTICE OF MOTION
                                        AND MOTION TO DISMISS COMPLAINT**
16 FINANCIAL INDUSTRY REGULATORY        **FOR LACK OF JURISDICTION UNDER**
   AUTHORITY, INC.,                     **RULES 12(b)(1) AND 12(h)(3);**
17                                      **MEMORANDUM IN SUPPORT**
              Defendant.               **THEREOF**
18

19                                      Hearing Date:    April 3, 2012
                                        Hearing Time:    10:00 a.m.
20                                      Location:        Courtroom E, 15th Floor
                                        Judge:           Hon. Elizabeth D. Laporte
21

22                                      Trial Date:      None set

23

24

25

26

27

28

1

**TABLE OF CONTENTS**

2

<u>Page</u>

3

PRELIMINARY STATEMENT ................................................................................ 1

4

FACTUAL BACKGROUND ................................................................................... 2

5

    A.    FINRA's Background As A Self-Regulatory Organization ......................... 2

6

    B.    The FINRA Rules At Issue ........................................................................ 3

7

    C.    Schwab's Agreement To Abide By FINRA's Rules When It Became A
          FINRA Member ........................................................................................ 5

8

9

    D.    Schwab's Amendment To Its Customer Account Agreement ..................... 6

    E.    FINRA's Disciplinary Action And Schwab's Retaliatory Complaint ........ 7

10

ARGUMENT ......................................................................................................... 9

11

    A.    This Court Lacks Jurisdiction Because Schwab Failed To Exhaust Its
          Administrative Remedies Under The Exchange Act. .................................. 9

12

13

          1.    The Exchange Act Provides For A Comprehensive
                Administrative Review Procedure That Schwab Is Required To
                Exhaust. ......................................................................................... 10

14

15

          2.    Schwab Cannot Assert A Valid Exception To The Exhaustion
                Requirement. ................................................................................. 11

16

17

          3.    Schwab's Failure To Exhaust FINRA's Administrative
                Procedures Creates Additional, Insurmountable Obstacles To
                This Court's Jurisdiction. ............................................................... 13

18

    B.    This Court Lacks Jurisdiction Because Schwab Asserts No Statutory
          Basis For Its Declaratory Judgment Claim. .............................................. 14

19

20

    C.    This Court Lacks Jurisdiction Over Schwab's Separate Allegation That
          It Will Be Unable To Enforce The Class Action Waiver In Its Account
          Agreement Against Its Customers. ............................................................ 16

21

22

CONCLUSION ...................................................................................................... 18

23

24

25

26

27

28

1

**TABLE OF AUTHORITIES**

2

**Page(s)**

3

**CASES**

4

*Abbott Labs. v. Gardner,*
    387 U.S. 136 (1967)............................................................................................ 13, 16

5

6

*Aircraft & Diesel Equip. Corp. v. Hirsch,*
    331 U.S. 752 (1947)................................................................................................... 12

7

8

*Alton v. Nat'l Ass'n of Secs. Dealers, Inc.,*
    No. C-94-0618 MHP, 1994 WL 443460 (N.D. Cal. July 26, 1994).................................. 10, 11, 12

9

*Animal Legal Defense Fund v. Mendes,*
    160 Cal. App. 4th 136 (2008) ....................................................................................... 14

10

11

*Arizona v. Atchison, T. & S.F. R.R. Co.,*
    656 F.2d 398 (9th Cir. 1981)........................................................................................ 15

12

13

*Ass'n of Am. Med. Colls. v. United States,*
    217 F.3d 770 (9th Cir. 2000)........................................................................................ 13, 14

14

15

*Ass'n of Inv. Brokers v. SEC,*
    676 F.2d 857 (D.C. Cir. 1982) ..................................................................................... 2, 11

16

*Augustine v. United States,*
    704 F.2d 1074 (9th Cir. 1983)...................................................................................... 2

17

18

*Cleantech Innovations, Inc. v. NASDAQ Stock Mkt., LLC,*
    No. 1:11-cv-09358-KBF, 2012 WL 345902 (S.D.N.Y. Jan. 31, 2012)................................. 10, 12

19

20

*Compucredit Corp. v. Greenwood,*
    ___ S. Ct. ___, 2012 WL 435124 (U.S. Jan. 12, 2012) .................................................. 9

21

*Credit Suisse First Boston Corp. v. Grunwald,*
    400 F.3d 1119 (9th Cir. 2005)...................................................................................... 17

22

23

*D.L. Cromwell Inv., Inc. v. NASD Regulation, Inc.,*
    279 F.3d 155 (2d Cir. 2002)........................................................................................ 17

24

*D'Alessio v. N.Y. Stock Exch., Inc.,*
    258 F.3d 93 (2d Cir. 2001).......................................................................................... 2

25

26

*Davis v. United States,*
    499 F.3d 590 (6th Cir. 2007)....................................................................................... 15

27

28

*Desiderio v. Nat'l Ass'n of Sec. Dealers, Inc.,*
    191 F.3d 198 (2d Cir. 1999)........................................................................................ 2, 17

ii

*Duffield v. Robertson Stephens & Co.,*
    144 F.3d 1182 (9th Cir. 1998) ................................................................. 17

*First Jersey Secs., Inc. v. Bergen,*
    605 F.2d 690 (3d Cir. 1979) ................................................................. *passim*

*FTC v. Std. Oil Co. of Calif.,*
    449 U.S. 232 (1980) ................................................................. 13, 14

*G.C. and K.B. Investments, Inc. v. Wilson,*
    326 F.3d 1096 (9th Cir. 2003) ................................................................. 15

*Gen. Atomic Co. v. United Nuclear Corp.,*
    655 F.2d 968 (9th Cir. 1981) ................................................................. 14

*Gov't Employees Ins. Co. v. Dizol,*
    133 F.3d 1220 (9th Cir. 1998) ................................................................. 15, 16

*Greene v. Sprint Commc'ns Co.,*
    340 F.3d 1047 (9th Cir. 2003) ................................................................. 14

*Gustafson v. Strangis,*
    572 F. Supp. 1154 (D. Minn. 1983) ................................................................. 16

*Hanson v. Wyatt,*
    552 F.3d 1148 (10th Cir. 2008) ................................................................. 15

*In re Series 7 Broker Qualification Exam Scoring Litig.,*
    548 F.3d 110 (D.C. Cir. 2008) ................................................................. 10

*Jablon v. Dean Witter & Co.,*
    614 F.2d 677 (9th Cir. 1980) ................................................................. 16

*Kolev v. Euromoters W./The Auto Gallery,*
    658 F.3d 1024 (9th Cir. 2011) ................................................................. 9

*KPMG, LLP v. SEC,*
    289 F.3d 109 (D.C. Cir. 2002) ................................................................. 12

*Krull v. SEC,*
    248 F.3d 907 (9th Cir. 2001) ................................................................. 7, 8

*Lujan v. Defenders of Wildlife,*
    504 U.S. 555 (1992) ................................................................. 14

*Merrill Lynch, Pierce, Fenner & Smith, Inc. v. NASD,*
    616 F.2d 1363 (5th Cir. 1980) ................................................................. 10

*Mister Discount Stockbrokers, Inc. v. SEC,*
    768 F.2d 875 (7th Cir. 1985) ................................................................. 8

iii

*Mont. Chapter of Ass'n of Civilian Technicians v. Young,*
    514 F.2d 1165 (9th Cir. 1975)...............................................................................................11

*Moses H. Cone Memorial Hosp. v. Mercury Constr. Corp.,*
    460 U.S. 1 (1983).......................................................................................................................15

*Myers v. Bethlehem Shipbuilding Corp.,*
    303 U.S. 41 (1938).....................................................................................................................11

*Nat'l Coll. Athletic Ass'n v. Tarkanian,*
    488 U.S. 179 (1988)...................................................................................................................17

*P'ship Exch. Sec. Co. v. Nat'l Ass'n of Sec. Dealers, Inc.,*
    169 F.3d 606 (9th Cir. 1999)......................................................................................................9

*Peterson v. Cellco P'ship,*
    164 Cal. App. 4th 1583 (2008) .................................................................................................14

*Robinson v. United States,*
    586 F.3d 683 (9th Cir. 2009)......................................................................................................2

*Sacks v. Office of Foreign Assets Control,*
    466 F.3d 764 (9th Cir. 2006)....................................................................................................16

*Shearson/Am. Express, Inc. v. McMahon,*
    482 U.S. 220 (1987).....................................................................................................................2

*Skelly Oil Co. v. Phillips Petroleum Co.,*
    339 U.S. 667 (1950)...................................................................................................................14

*Sparta Surgical Corp. v. Nat'l Ass'n of Sec. Dealers, Inc.,*
    159 F.3d 1209 (9th Cir. 1998)..................................................................................................15

*Swirsky v. NASD,*
    124 F.3d 59 (1st Cir. 1997).............................................................................................*passim*

*Texas v. United States,*
    523 U.S. 296 (1998)...................................................................................................................17

*Thunder Basin Coal Co. v. Reich,*
    510 U.S. 200 (1994)...................................................................................................................12

*U.S. v. W. Pac. R.R. Co.,*
    352 U.S. 59 (1956).....................................................................................................................13

*Ukiah Valley Med. Ctr. v. FTC,*
    911 F.2d 261 (9th Cir. 1990).....................................................................................................14

*United States v. Park Place Assocs., Ltd.,*
    563 F.3d 907 (9th Cir. 2009).....................................................................................................15

iv

*Upton v. SEC*,
   75 F.3d 92 (2d Cir. 1996) .................................................................................. 13

*Wilton v. Seven Falls Co.*,
   515 U.S. 277 (1995) .......................................................................................... 16

*Winter v. Calif. Med. Review, Inc.*,
   900 F.2d 1322 (9th Cir. 1990) .......................................................................... 13

*Zepeda v. United States INS*,
   753 F.2d 719 (9th Cir. 1983) ............................................................................ 15

## STATUTES

15 U.S.C. § 78o-3 ............................................................................................. 2, 7

15 U.S.C. § 78s ............................................................................................. 2, 8, 15

15 U.S.C. § 78y(a) ............................................................................................ 8, 12

28 U.S.C. § 1331 ................................................................................................... 15

28 U.S.C. § 1332 ................................................................................................... 15

28 U.S.C. § 2201 ................................................................................................... 14

## RULES

Fed. R. Civ. P. 12(b)(1) ........................................................................................... 9

Fed. R. Civ. P. 12(h)(3) ........................................................................................... 9

FINRA Code of Arbitration Procedure Rule 12204(a) ...................................... 3, 4

FINRA Rule 2268(d) ..................................................................................... *passim*

FINRA Rule 2268(f) ................................................................................................. 5

FINRA Rule 9213 ..................................................................................................... 7

FINRA Rule 9231(b) ................................................................................................ 7

FINRA Rule 9311 ..................................................................................................... 7

FINRA Rule 9349 ..................................................................................................... 7

FINRA Rule 9351 ..................................................................................................... 7

NASD Rule 3110(f)(4) .............................................................................................. 3

SEC Rule of Practice 192(a) ................................................................................... 11

**OTHER**

4 K. Davis, *Administrative Law Treatise* § 26:10 (2d ed. 1983) ........................................................ 14

*Am. Funds Distribs., Inc.*, Exchange Act Release No. 64747, 2011 WL 2515376  (June 24, 2011) .................................................................................................................................................. 12

## NOTICE OF MOTION AND MOTION

PLEASE TAKE NOTICE that on April 3, 2012, at 10:00 a.m., in Courtroom E of the above-captioned court, located at 450 Golden Gate Avenue, San Francisco, California 94102, or as soon thereafter as may be heard, Defendant Financial Industry Regulatory Authority, Inc. ("FINRA") will and hereby does move this Court to dismiss the Complaint filed in this action by Plaintiff Charles Schwab & Co., Inc. ("Schwab"), pursuant to Rules 12(b)(1) and 12(h)(3) of the Federal Rules of Civil Procedure.

This Notice of Motion and Motion is based upon the Complaint, the following Memorandum of Points and Authorities, the Declaration of Ethan D. Dettmer filed concurrently herewith, the papers and records on file with the Court in this action, and such argument and evidence as may be presented at a hearing on this Motion.

## MEMORANDUM OF POINTS AND AUTHORITIES

### PRELIMINARY STATEMENT

On February 1, 2012, Defendant FINRA filed a disciplinary action against Schwab, charging that Schwab's insertion of a class action waiver into its form Customer Account Agreement violates various FINRA rules (the "Disciplinary Action").  *See* Dettmer Decl., Ex. 1 [FINRA Complaint]. The Securities Exchange Act of 1934 establishes a mandatory process for resolving FINRA disciplinary actions, in which all arguments are adjudicated before FINRA, the Securities and Exchange Commission ("SEC"), and, ultimately, a federal Court of Appeals.  Looking to avoid that congressionally-required process, Schwab filed a Complaint for Declaratory and Preliminary and Permanent Injunctive Relief with this Court later on the same day the Disciplinary Action was filed, seeking invalidation of the very FINRA rules—approved by the SEC—that are the subject of the Disciplinary Action.  But under well-settled and uniform law, this retaliatory dispute does not belong in any Court unless and until Schwab exhausts the procedures established in the Exchange Act.  For that reason—and numerous others, including standing, ripeness, abstention, and failure to assert a cognizable cause of action—this Court should dismiss Schwab's Complaint for lack of subject matter jurisdiction under Rules 12(b)(1) and 12(h)(3).

1

## FACTUAL BACKGROUND[1]

2

### A.      FINRA's Background As A Self-Regulatory Organization

3         FINRA is a private, not-for-profit Delaware corporation functioning as a self-regulatory

4    organization ("SRO") and registered with the SEC as a national securities association under the 1938

5    Maloney Act Amendments to the Exchange Act.  *See* Compl. ¶¶ 2, 8; 15 U.S.C. § 78o-3.  FINRA

6    first registered with the SEC as an SRO in 1939 under the name National Association of Securities

7    Dealers ("NASD").  Compl. ¶ 7; *see also* Dettmer Decl., Ex. 5, at 627 [SEC Order Re: NASD

8    Registration, 5 S.E.C. 627, 627].   In 2007, NASD acquired the regulation, arbitration and

9    enforcement functions of the New York Stock Exchange ("NYSE") and was renamed FINRA.

10   Compl. ¶ 7.

11        As an SRO, FINRA is a key part of the interrelated and comprehensive mechanism for

12   regulating the securities markets, including market participants such as Schwab, established by the

13   Exchange Act.  *See Desiderio v. Nat'l Ass'n of Sec. Dealers, Inc.*, 191 F.3d 198, 201 (2d Cir. 1999).

14   Congress delegated to SROs the daily oversight and administration of the securities markets, under

15   the close supervision of the SEC.  *See* Compl. ¶¶ 9–10; *D'Alessio v. N.Y. Stock Exch., Inc.*, 258 F.3d

16   93, 105 (2d Cir. 2001).  With few exceptions not relevant here, the SEC must approve all FINRA

17   rules before they are implemented, including the Code of Arbitration Procedure.  *See* Compl. ¶ 11; 15

18   U.S.C. § 78s(b); *Shearson/Am. Express, Inc. v. McMahon*, 482 U.S. 220, 233–34 (1987).  And, at any

19   time, the SEC may "abrogate, add to, [or] delete from" FINRA's rules.  15 U.S.C. § 78s(c); *see also*

20   Compl. ¶ 15.  FINRA "prescribes rules binding on member firms and their registered representatives

21   for the conduct of securities business," Compl. ¶ 14, but members can petition the SEC for changes to

22   FINRA's rules.  *See Ass'n of Inv. Brokers v. SEC*, 676 F.2d 857, 864 (D.C. Cir. 1982) ("Petitioners

23   may invite an SEC rulemaking directed to the arbitration requirements of the self-regulatory

24   organizations."); SEC Rule of Practice 192(a) ("Any person desiring the issuance, amendment or

25   _____

26   [1]      For purposes of determining subject matter jurisdiction under Rules 12(b)(1) and 12(h)(3),
     this Court is not limited to the facts described in the Complaint and may "resolve factual disputes
27   where necessary." *Robinson v. United States*, 586 F.3d 683, 685 (9th Cir. 2009); *Augustine v. United
     States*, 704 F.2d 1074, 1077 (9th Cir. 1983).  FINRA does not admit the truthfulness of the facts
28   alleged in the Complaint and reserves all rights to dispute those facts in subsequent proceedings.

repeal of a rule of general application may file a petition therefor with the Secretary.").  FINRA is also "authorized to sanction members for noncompliance with securities laws and rules in the FINRA rulebook."  Compl. ¶ 14.  "Such sanctions include but are not limited to censure, monetary fines, and suspension or revocation of membership or registration."  *Id.*

**B.    The FINRA Rules At Issue**

FINRA has enacted, and the SEC has approved, two applicable rules: first, that class actions cannot be arbitrated in the FINRA forum; and second, that member firms may not limit the rights of public investors to go to court for claims that cannot be arbitrated.

FINRA's rules govern the terms that its member firms, like Schwab, may include in predispute arbitration agreements with their customers.  *See* FINRA R. 2268(d).[2]  FINRA Rule 2268(d)(1), in particular, prohibits member firms from including "any condition" that "limits or contradicts the rules of any self-regulatory organization."  And FINRA Rule 2268(d)(3) prohibits member firms from including "any condition" that "limits the ability of a party to file any claim in court permitted to be filed in court under the rules of the forums in which a claim may be filed under the agreement."  The rules of the forum referenced in Rule 2268(d)(3) are contained in the FINRA Code of Arbitration Procedure for Customer Disputes ("Code").  Rule 12204(d) of that Code explains that class actions are permitted to be filed in court by FINRA members' customers, by providing as follows:

> A member or associated person may not enforce any arbitration agreement against a member of a certified or putative class action with respect to any claim that is the subject of the certified or putative class action until:
>
> - The class certification is denied;
> - The class is decertified;
> - The member of the certified or putative class is excluded from the class by the court; or
> - The member of the certified or putative class elects not to participate in the class or withdraws from the class according to conditions set by the court, if any.

---

[2]    FINRA Rule 2268(d) became effective on December 5, 2011.  Prior to that date, NASD Rule 3110(f)(4) was effective at all times relevant to this dispute.  Both rules contain the same language.  For ease of reference, this Memorandum will refer to both rules by the FINRA rule number.  For convenience, all FINRA Rules are attached to the Dettmer Declaration as Exhibits 3–4.

Indeed, the Code not only *permits* class actions to be filed in court, it *requires* them to remain in court.  *See* Code, Rule 12204(a) ("Class action claims may not be arbitrated under the Code.").

The history of these rules dates back to the late 1980s.  Although FINRA believes firmly in the benefits of arbitration and, in fact, operates the largest securities arbitration forum in the United States, *see* Dettmer Decl., Ex. 14 [Perino Report], at 1, 3, it enacted the rules at issue to ensure that predispute arbitration agreements would not limit investors' access to the procedural and substantive protections available to them in court.  The SEC approved the predecessor to FINRA Rule 2268(d) in order to prevent predispute arbitration agreements from "curtail[ing] any rights that a party may otherwise have had in a judicial forum."  *See* Dettmer Decl., Ex. 7 [SEC Order Approving SRO Rules Re Arbitration Clauses, 54 Fed. Reg. 21,144], at 21,154.   The predecessor to FINRA Rule 2268(d)(3), for example, was proposed in 1988 in response to the SEC's suggestion that SROs review "issues raised by the current use of mandatory predispute arbitration agreements by their member firms."  *Id.* at 21,145, 21,154 n.56; *see also* Dettmer Decl., Ex. 12 [FINRA Notice to Members 88-87] (describing to FINRA members the proposed predecessor to FINRA Rule 2268(d)(3)).

One of the SEC's primary suggestions was that SROs should "consider procedures that would permit investor access to the courts in appropriate cases. . . .  For example, cases involving . . . class actions . . . may be more appropriately resolved through the courts."  Dettmer Decl., Ex. 13 [Arbitration Reform Hearings, Statement of SEC Chairman David S. Ruder]; *see also* Dettmer Decl. Ex. 7, at 21,153 (proposing predecessor to FINRA Rule 2268(d) in order to "improve disclosure to customers in account opening agreements, and to restrict the content of arbitration clauses"); *id.* at 21,154 ("The agreements may not be used to shorten applicable statutes of limitation, restrict the situs of an arbitration hearing contrary to SRO rules, nor to limit SRO forums otherwise available to parties.").  After the NASD presented its proposal for Rule 2268(d)'s predecessor to its membership, Schwab submitted comments expressing its overall approval of the new rules.  *See* Dettmer Decl., Ex. 16 [Letter from Phyllis Kay Dryden, Senior Vice President & General Counsel, Charles Schwab & Co., Inc., to Lynn Nellius, Secretary, NASD (Nov. 30, 1988)] ("In sum, Schwab believes that . . . the proposed amendment is an acceptable approach to predispute arbitration agreements.").

On October 6, 1998, NASD proposed to replace Rule 2268(d)(3)'s predecessor with the language currently in use, in order to "clarify the prohibition against provisions that limit [investors'] rights or remedies." Dettmer Decl., Ex. 8 [Notice of NASD Proposed Amendments to Rule 3110(f), 71 SEC Docket 269], at *2, *5–6. As the SEC explained, under the prior version of the Rule, "[a] customer who agreed to arbitrate disputes under New York law could inadvertently forfeit" rights, such as "the ability to obtain punitive damages[,] that might have been available in court." *Id.* at *5; *see also* Dettmer Decl., Ex. 9 [SEC Order Approving Amendments to Rule 3110(f), SEC Docket 713], at *4 (reiterating this purpose when approving the final rule).

FINRA's longstanding policy of protecting the substantive and procedural rights of investors to proceed in court is also reflected in Code Rule 12204(d) (quoted above). NASD proposed the basic language of Rule 12204(d) on June 17, 1992. *See* Dettmer Decl., Ex. 10 [Notice of NASD Proposed Changes to Arbitration Code, 57 Fed. Reg. 30,519-01], at 30,519. As part of the same proposal to the SEC, NASD proposed amendments to the NASD Rules of Fair Practice requiring NASD members to make certain disclosures in predispute arbitration agreements with their customers. *See id.* This disclosure requirement was approved by the SEC and is now codified as FINRA Rule 2268(f). The SEC approved these rule changes on October 28, 1992. *See* Dettmer Decl., Ex. 11 [SEC Order Approving NASD Rule Change Excluding Class Actions from Arbitration, 57 Fed. Reg. 52,659], at 52,659. In its approval order, the SEC agreed with NASD's position that "the judicial system has already developed the procedures to manage class action claims. Entertaining such claims through arbitration at the NASD would be difficult, duplicative and wasteful." *Id.* at 52,661. Thus, in approving these NASD rule changes, the SEC "agree[d] with the NASD's position that, in all cases, class actions are better handled by the courts and that investors should have access to the courts to resolve class actions efficiently." *Id.*

## C.     Schwab's Agreement To Abide By FINRA's Rules When It Became A FINRA Member

Schwab joined NASD, FINRA's predecessor, in the early 1970s. As part of Schwab's application for membership in NASD, Schwab certified its agreement "[t]o accept, abide by, comply with, and adhere to all the provisions, conditions, and covenants of . . . the Rules of Fair Practice"— now known as FINRA Rules—"as they are or may from time to time be adopted, changed, or

amended." Dettmer Decl., Ex. 15 [Schwab Membership Applications], at 4, 8, 12 . Schwab also agreed to abide by all other FINRA rules. Further, Schwab agreed to "accept, abide by, comply with, and adhere to all rulings, orders, directions and decisions of, and penalties imposed by, the Board of Governors of [the NASD] or any duly authorized committee of [the NASD]." *Id.* Schwab has recertified its agreement to abide by those rules at least ten times since become a FINRA member. *See, e.g.*, *id.*

Schwab has been a member of NASD (and subsequently FINRA) continuously since joining, and was therefore a member when the FINRA Rules at issue were proposed and adopted. *See* Dettmer Decl., Ex. 7, at 21,153 (approving the predecessor of FINRA Rule 2268(d)); Dettmer Decl., Ex. 9, at *1 (approving FINRA Rule 2268(d) in its current form). Schwab was also a member when NASD's membership voted on and approved FINRA Code of Arbitration Procedure Rule 12204(d). Dettmer Decl., Ex. 11. In fact, Charles Schwab himself served on the NASD's Board of Governors from 1993 to 1996. Dettmer Decl., Ex. 17 [NASD Manual]. He was followed on the Board by David Pottruck, President and CEO of Schwab, who was elected to the board on July 29, 1999, and left the board on November 26, 2001—the very period during which the SEC was accepting public comments on the current language of Rule 2268(d). *See* Dettmer Decl., Ex. 18 [Press Release Announcing NASD Elections]; Dettmer Decl., Ex. 9, at *1.

### D.    Schwab's Amendment To Its Customer Account Agreement

Schwab's Customer Account Agreement compels arbitration under the FINRA Code of Arbitration Procedure of any dispute arising out of the customer's use of Schwab's services. Compl. ¶ 24; *see also* Dettmer Decl., Ex. 2 [Schwab Account Agreement], at 2. In October 2011, Schwab amended its Customer Account Agreement to include a "Waiver of Class Action or Representative Action," which provides as follows:

> You and Schwab agree that any actions between us and/or Related Third Parties shall be brought solely in our individual capacities. You and Schwab hereby waive any right to bring a class action, or any type of representative action against each other or any Related Third Parties in court. You and Schwab waive any right to participate as a class member, or in any other capacity, in any class action or representative action brought by any other person, entity or agency against Schwab or you.

6

Compl. ¶ 26; *see also* Dettmer Decl., Ex. 2, at 2–3.  This amended provision was delivered to nearly 7 million existing Schwab customers in September 2011, and was included in the Account Agreement for new customers opening accounts on or after October 1, 2011.  Compl. ¶¶ 27–28.

**E.      FINRA's Disciplinary Action And Schwab's Retaliatory Complaint**

On February 1, 2012, at 11:55 a.m., FINRA's Department of Enforcement notified Schwab of a disciplinary complaint, charging that Schwab's amended Customer Account Agreement violates, *inter alia*, FINRA Rule 2268(d).  *See* Dettmer Decl., Ex. 1.  FINRA's disciplinary complaint asked the Hearing Panel to declare Schwab to be in violation of the FINRA rules described above, to order Schwab to refrain from further violations of FINRA Rule 2268(d), and to impose monetary and other appropriate sanctions.  *Id.* at 8.

The Exchange Act provides for a "process of both administrative and judicial review of [FINRA] disciplinary proceedings."  *Swirsky v. NASD*, 124 F.3d 59, 61 (1st Cir. 1997); *see First Jersey Secs., Inc. v. Bergen*, 605 F.2d 690, 696 (3d Cir. 1979); *Krull v. SEC*, 248 F.3d 907, 910–11 (9th Cir. 2001) (describing the review process).  That process involves multiple tiers of review.  Compl. ¶ 17.  First, a FINRA Hearing Panel conducts a hearing "to determine whether a member . . . should be disciplined."  15 U.S.C. § 78o-3(h)(1) (2010).[3]  During that initial phase, the member has an opportunity to argue its case before the FINRA Hearing Panel, which consists of a FINRA hearing officer and two industry members.  FINRA Rs. 9213, 9231(b).  If the member is unable to convince the Panel to dismiss the disciplinary complaint, it may file an appeal with FINRA's National Adjudicatory Council ("NAC").  FINRA R. 9311.  The NAC consists of fourteen industry and public members, including five law professors.  *See*  http://www.finra.org/Industry/Enforcement/ Adjudication/NAC/naccommittee/.  Any FINRA Board member may ask the Board to review the NAC's decision.  The Board has full authority to affirm, modify or reverse the NAC's decision and any sanction imposed thereunder.  *See* FINRA Rs. 9349, 9351.

---

[3]      The Maloney Act prescribes a series of safeguards to ensure fairness at this first level of review.  For example, FINRA must "bring specific charges, notify such member or person of, and give him opportunity to defend against, such charges, and keep a record."  15 U.S.C. § 78o-3(h)(1); *see Swirsky*, 124 F.3d at 61.

Defendant's Motion To Dismiss And Memorandum In Support                    Case No.  12-cv-0518 EDL

Should the aggrieved party seek further review, the SEC conducts a *de novo* review of FINRA's disciplinary order.  15 U.S.C. § 78s(d); *see Swirsky*, 124 F.3d at 61; *Krull*, 248 F.3d at 911.  Pursuant to 15 U.S.C. § 78s(e), "[t]he SEC can affirm or modify any sanction, or remand to [FINRA] for further proceedings."  *Swirsky*, 124 F.3d at 62; *see Krull*, 248 F.3d at 911.  Finally, a party aggrieved by the SEC's action can seek judicial review only in a federal Court of Appeals.  15 U.S.C. § 78y(a); *see Mister Discount Stockbrokers, Inc. v. SEC*, 768 F.2d 875, 876 (7th Cir. 1985); *Krull*, 248 F.3d at 911.

Schwab has not yet even responded to FINRA's disciplinary complaint.  Instead, just hours after FINRA's disciplinary complaint was served on Schwab, Schwab filed a Complaint with this Court.  In its Complaint, Schwab seeks "a declaration that [FINRA] may not enforce its rules regulating broker-dealers in a manner inconsistent with the Federal Arbitration Act."  Compl., Introduction.  According to Schwab, the class action waiver it inserted into its Customer Account Agreement is valid and enforceable even if FINRA Rule 2268(d)(3) prohibits it, because any attempt "to prohibit a class action waiver in a member firm's arbitration agreement is barred by" the Federal Arbitration Act ("FAA").  Compl. ¶ 32; *see also id.* ¶ 39 ("Even if FINRA's interpretation that the Rule prohibits Schwab from including a class action waiver in its arbitration agreement or from enforcing its arbitration agreement against a putative class action were tenable, the Supreme Court's decisions interpreting the FAA . . . prevent FINRA from enforcing the Rule in this manner.").  Schwab argues that FINRA's "disciplinary action is impermissible because FINRA's interpretation of [Rule 2268(d)(3)] conflicts with the FAA."  Compl. ¶ 43.  "Schwab therefore seeks a declaratory judgment that FINRA rules cannot be enforced to bar individual arbitration of class action claims," *id.* ¶ 47, and a "preliminary and permanent injunction prohibiting FINRA from pursuing any disciplinary action against Schwab for including a class action waiver in its arbitration agreement or enforcing such waiver in litigation with a customer."  *Id.*, Prayer For Relief ¶ 2.

///

///

///

///

8

## ARGUMENT

This Court should dismiss Schwab's Complaint for lack of subject matter jurisdiction, for at least six reasons.  Fed. R. Civ. P. 12(b)(1); 12(h)(3).  First, Schwab failed to exhaust its administrative remedies—indeed, failed to even *begin pursuing* its administrative remedies—before filing this improper retaliatory lawsuit.  Under the comprehensive administrative procedures established pursuant to the Exchange Act, this Court has no role in adjudicating this dispute between Schwab and FINRA.  Further, because Schwab filed its Complaint before completing the administrative review process, this Court should also dismiss on ripeness, standing, and abstention grounds.  Next, this Court—indeed *any* court—lacks jurisdiction because Schwab fails to identify any statute providing it with a private right of action to assert its declaratory judgment claim.  Finally, to the extent Schwab is seeking to evade any potential FINRA-related consequences of *enforcing* the class action waiver in its amended Account Agreement against its customers in court, this Court lacks jurisdiction because Schwab's claim is not ripe.[4]

**A.      This Court Lacks Jurisdiction Because Schwab Failed To Exhaust Its Administrative Remedies Under The Exchange Act.**

The Exchange Act establishes "a detailed, comprehensive system of federal regulation of the securities industry."  *Swirsky*, 124 F.3d at 62.  This system includes a "broad . . . range of administrative remedies . . . for those aggrieved of [FINRA] action."  *Merrill Lynch, Pierce, Fenner*

---

[4]      Schwab's Complaint also fails to state a claim on which relief could be granted.  As an initial matter, FINRA has "absolute immunity" from Schwab's suit.  *P'ship Exch. Sec. Co. v. Nat'l Ass'n of Sec. Dealers, Inc.*, 169 F.3d 606, 608 (9th Cir. 1999); *see also Sparta Surgical Corp. v. Nat'l Ass'n of Sec. Dealers, Inc.*, 159 F.3d 1209, 1214 (9th Cir. 1998) (holding that "self-regulatory organizations . . . enjoy complete immunity from suits . . . when they are acting under the aegis of the Exchange Act's delegated authority").  On the merits, Schwab asks this Court to make two improper determinations regarding the FINRA Rules that prohibit members from precluding their customers from pursuing class-action claims in court.  Schwab argues, first, that the Rules do not mean what they say; and, second, that if they mean what they say then they are preempted by the FAA.  But Schwab can assert both arguments in responding to FINRA's disciplinary complaint.  Further, the first argument would require this Court to disregard the plain meaning and regulatory history of duly enacted Rules, while the second would require this Court to ignore the fact that the SEC has approved those Rules as consistent with the Exchange Act.  *Cf. Compucredit Corp. v. Greenwood*, ___ S. Ct. ___, 2012 WL 435124, at *5 (U.S. Jan. 12, 2012); *Kolev v. Euromoters W./The Auto Gallery*, 658 F.3d 1024, 1029–30 (9th Cir. 2011).  If the Court were to exercise jurisdiction over this matter, FINRA will elaborate on these and other arguments establishing the fatal shortcomings of the arguments advanced in support of Schwab's sole asserted claim in appropriate dispositive motions.

9

& Smith, Inc. v. NASD, 616 F.2d 1363, 1368 (5th Cir. 1980). The administrative scheme is comprehensive and provides for judicial review, and courts apply "the doctrine of exhaustion of administrative remedies . . . to prevent circumvention of established procedures." Swirsky, 124 F.3d at 62 (quoting First Jersey, 605 F.2d at 695). Because Schwab filed its Complaint before exhausting (or even commencing) its administrative remedies, this Court should dismiss the Complaint for lack of subject matter jurisdiction under Rules 12(b)(1) and 12(h)(3). Id.

### 1. The Exchange Act Provides For A Comprehensive Administrative Review Procedure That Schwab Is Required To Exhaust.

Rather than launch what amounts to a collateral attack on FINRA's disciplinary action in this Court, Schwab is required to exhaust the Exchange Act's "process of both administrative and judicial review of [FINRA] disciplinary proceedings." Swirsky, 124 F.3d at 61; see First Jersey, 605 F.2d at 696. A FINRA member does not fully exhaust its administrative remedies unless and until it completes all administrative tiers of review. See Swirsky, 124 F.3d at 62; see also First Jersey, 605 F.2d at 694–95 (noting that judicial review is the final component of the Exchange Act's "comprehensive system of review"). At no point may the member unilaterally opt out of the administrative process by asking this Court (or any other district court) for relief. See Swirsky, 124 F.3d at 62 ("Because Swirsky failed to invoke the third tier of the review process, the district court lacked subject matter jurisdiction, and it properly dismissed Swirsky's complaint."); see also Merrill Lynch, 616 F.2d at 1368 ("In the absence of extraordinary circumstances, [SRO disciplinary rulings] are not subject to district court oversight."); Alton v. Nat'l Ass'n of Secs. Dealers, Inc., No. C-94-0618 MHP, 1994 WL 443460, at *2–3 (N.D. Cal. July 26, 1994), aff'd by 105 F.3d 664 (9th Cir. 1996). As the District of Columbia Circuit concluded, the Exchange Act's "multiple layers of review evince Congress's intent to direct challenges . . . to the avenues Congress created." In re Series 7 Broker Qualification Exam Scoring Litig., 548 F.3d 110, 114 (D.C. Cir. 2008); see also Cleantech Innovations, Inc. v. NASDAQ Stock Mkt., LLC, No. 1:11-cv-09358-KBF, 2012 WL 345902, at *1 (S.D.N.Y. Jan. 31, 2012) (dismissing for lack of jurisdiction because the Exchange Act's "comprehensive scheme for reviewing disciplinary actions taken by self-regulatory organizations" is "the 'exclusive route' for obtaining review of SRO disciplinary actions").

Schwab's Complaint seeks to circumvent this comprehensive scheme that Congress established for reviewing FINRA disciplinary proceedings.[5]   Indeed, by seeking declaratory and injunctive relief before the FINRA Hearing Panel has even convened in this matter, Schwab tries to bypass not just one, but *all* the tiers of review specified in the Exchange Act.   Schwab's attempted end-run around the Exchange Act's review process defies the "long settled rule of judicial administration that no one is entitled to judicial relief for a supposed or threatened injury until the prescribed administrative remedy has been exhausted."  *Myers v. Bethlehem Shipbuilding Corp.*, 303 U.S. 41, 50–51 (1938).   As a result, this Court lacks subject matter jurisdiction over Schwab's Complaint.  *See First Jersey*, 605 F.2d at 700 (failure to exhaust "render[s] the district court without jurisdiction to entertain the suit"); *Swirsky*, 124 F.3d at 62 (same); *Alton*, 1994 WL 443460, at *5 (same).

### 2.    Schwab Cannot Assert A Valid Exception To The Exhaustion Requirement.

Schwab includes certain allegations in its Complaint that seem to presage an attempt to justify circumventing the exhaustion requirement.  For example, Schwab alleges that "[i]t often takes several years for a disciplinary action" to be completed, Compl. ¶ 17, and that FINRA and SEC adjudicators lack "expertise or experience with federal law outside the securities laws or FINRA rules."  Compl. ¶ 19.  But these allegations are simply false—the members of the NAC, for example, include five law professors more than capable of understanding and resolving Schwab's arguments.   *See* http://www.finra.org/Industry/Enforcement/Adjudication/NAC/naccommittee/.

In any event, a party wishing to circumvent the Exchange Act's administrative review process must do more than allege that the process is inadequate or time-consuming.  *See First Jersey*, 605 F.2d at 696–97 (citing *Mont. Chapter of Ass'n of Civilian Technicians v. Young*, 514 F.2d 1165, 1167 (9th Cir. 1975)).   Indeed, if such allegations were sufficient to establish an exception to the

---

[5]    Schwab's Complaint also seeks to circumvent an alternative administrative remedy available to Schwab: petitioning the SEC for changes to FINRA's rules.  *See Ass'n of Inv. Brokers v. SEC*, 676 F.2d 857, 864 (D.C. Cir. 1982) ("Petitioners may invite an SEC rulemaking directed to the arbitration requirements of the self-regulatory organizations."); Dettmer Decl., Ex. 6 [SEC Rule of Practice 192(a)] ("Any person desiring the issuance, amendment or repeal of a rule of general application may file a petition therefor with the Secretary.").

11

exhaustion requirement, they "would likewise apply in every case where the NASD contemplated disciplinary proceedings." *Alton*, 1994 WL 443460, at *3 (quoting *First Jersey*, 605 F.2d at 697). "Such an undifferentiated injury is not the type of irreparable harm contemplated as an exception to the doctrine of exhaustion of remedies." *Id.* Instead, "a strong showing is required, both of the inadequacy of the prescribed procedure and of impending harm, to permit short-circuiting the administrative process." *Aircraft & Diesel Equip. Corp. v. Hirsch*, 331 U.S. 752, 773–74 (1947).

Schwab cannot make such a showing because the Exchange Act's process for reviewing FINRA disciplinary proceedings provides ample opportunity for Schwab to raise its arguments. While Schwab complains that "[t]here is nothing in the FINRA Rules giving members of the FINRA Hearing Panel, NAC, or FINRA Board the authority to invalidate a FINRA Rule," Compl. ¶ 20, there is no prohibition against Schwab's making such arguments in the administrative tribunal and securing a ruling on them in that forum or in the Court of Appeals. *See Cleantech*, 2012 WL 345902, at *2 ("[T]here is no reason to believe that the SEC lacks . . . expertise to review the constitutionality of the SRO actions here."). And as the Third Circuit held, "[u]ltimate review by the court of appeals ensures that constitutional or statutory errors will not go unremedied." *First Jersey*, 605 F.2d at 696; *see Cleantech*, 2012 WL 345902, at *2 ("The Supreme Court has indicated that the fact that a plaintiff's 'constitutional claims . . . can be meaningfully addressed in the Court of Appeals' trumps concern for the reviewing body's expertise in addressing constitutional questions." (quoting *Thunder Basin Coal Co. v. Reich*, 510 U.S. 200, 215 (1994))).

Other parties asserting federal statutory arguments have had no difficulty obtaining adjudication *within* the Exchange Act's regulatory framework. The SEC, for example, recently considered a due process argument in an appeal of an NASD disciplinary order. *See Am. Funds Distribs., Inc.*, Exchange Act Release No. 64747, 2011 WL 2515376, at *1 (June 24, 2011). In addition, various circuit courts have addressed similar claims in direct appeals from the SEC, pursuant to the Exchange Act's review process. *See* 15 U.S.C. § 78y(a). In *KPMG, LLP v. SEC*, for example, KPMG challenged an SEC decision before the U.S. Court of Appeals for the D.C. Circuit, arguing that it lacked fair notice of the Commission's interpretation of an accounting ethics rule. *KPMG, LLP v. SEC*, 289 F.3d 109, 126 (D.C. Cir. 2002). The Second Circuit addressed a

12

defendant's argument that an SEC disciplinary action violated his due process right to reasonable notice of the Commission's interpretation of SEC Rule 15c3-3(e) (requiring broker-dealers to keep separate accounts for the benefit of customers).  *Upton v. SEC*, 75 F.3d 92, 98 (2d Cir. 1996).

Like the aggrieved parties in *KPMG*, *Upton*, and *American Funds*, Schwab may advance its arguments before FINRA, the SEC, and finally a United States Court of Appeals—precisely the tiered review process enacted by Congress—and cannot do so in this Court.  Neither the Exchange Act nor this Court have countenanced Schwab's attempt to end-run those procedures by filing suit for injunctive and declaratory relief.[6]

### 3. Schwab's Failure To Exhaust FINRA's Administrative Procedures Creates Additional, Insurmountable Obstacles To This Court's Jurisdiction.

Schwab's decision to file suit immediately after FINRA's initiation of disciplinary proceedings, rather than proceed through the FINRA adjudicative process, leaves this Court without jurisdiction for additional related reasons.  The filing of FINRA's complaint is not a final disciplinary action under Section 19(d)(2) of the Exchange Act; thus Schwab's challenge is unripe.  *Abbott Labs. v. Gardner*, 387 U.S. 136, 149 (1967), *overruled on other grounds*, *Califano v. Sanders*, 430 U.S. 99 (1977)); *see also Ass'n of Am. Med. Colls. v. United States*, 217 F.3d 770, 780 (9th Cir. 2000) (an agency action is not fit for judicial resolution if it is not "final").  Rather, the disciplinary complaint constitutes only a "preliminary determination" that Schwab has violated its obligations under the FINRA rules—the FINRA hearing panel, the NAC, the Board, or the SEC "may review [Schwab's] arguments and decide not to recommend sanctions."  *Winter v. Calif. Med. Review, Inc.*, 900 F.2d 1322, 1325 (9th Cir. 1990); *see also FTC v. Std. Oil Co. of Calif.*, 449 U.S. 232, 241 (1980) (FINRA's disciplinary action against Schwab is "a determination only that adjudicatory proceedings will commence").  Because there is no final or definite disciplinary action at issue, Schwab also

---

[6]  Even if the Court *could* decide this case, it *should* not do so because the parallel proceeding before the expert agency can do so better.  *See U.S. v. W. Pac. R.R. Co.*, 352 U.S. 59, 63 (1956) ("The doctrine of primary jurisdiction, like the rule requiring exhaustion of administrative remedies, is concerned with promoting proper relationships between the courts and administrative agencies charged with particular regulatory duties.").  Because the claim that Schwab asserts "requires the resolution of issues which, under a regulatory scheme, have been placed within the special competence of an administrative body . . . the judicial process is suspended pending referral of such issues to the administrative body for its views."  *Id.* at 64.

cannot demonstrate it has suffered "concrete and particularized" injury as required for standing under Article III of the U.S. Constitution. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992). In addition, this Court should exercise prudential abstention to avoid becoming "entangle[ed] . . . in abstract disagreements over administrative policies, and also to protect [FINRA] from judicial interference until an administrative decision has been formalized and its effects felt in a concrete way by [Schwab]." *Ass'n of Am. Med. Colls.*, 217 F.3d at 779; *see also Std. Oil*, 449 U.S. at 242–43.[7]

## B.   This Court Lacks Jurisdiction Because Schwab Asserts No Statutory Basis For Its Declaratory Judgment Claim.

This Court should also dismiss Schwab's Complaint for failure to allege any legally cognizable controversy for which there is a private right of action. *See Gen. Atomic Co. v. United Nuclear Corp.*, 655 F.2d 968, 968–69 (9th Cir. 1981) ("A federal court is presumed to lack jurisdiction in a particular case unless the contrary affirmatively appears."). Indeed, Schwab's Complaint cannot proceed in *any* court—federal or state—because Schwab fails to identify the legal basis for its claim. *See Greene v. Sprint Commc'ns Co.*, 340 F.3d 1047, 1049–53 (9th Cir. 2003) (dismissing for lack of subject matter jurisdiction where "[t]here is no private right of action for the relief that [plaintiffs] seek"); *see also, e.g.*, *Peterson v. Cellco P'ship*, 164 Cal. App. 4th 1583, 1586 (2008) (sustaining demurrer where "no private right of action exists"); *Animal Legal Defense Fund v. Mendes*, 160 Cal. App. 4th 136, 145 (2008) (same). Without an identifiable cause of action, this Court cannot even begin to analyze whether there is federal question jurisdiction. Nor can this Court decide whether Schwab has properly alleged the required elements of its claim.

Schwab's Complaint asserts a single claim against FINRA, seeking a "declaratory judgment that NASD and FINRA rules cannot be enforced." Compl. ("Count I"); *see also id.*, Introduction & ¶ 3 (citing the Declaratory Judgment Act ("DJA"), 28 U.S.C. § 2201). But the DJA is "procedural only," *Skelly Oil Co. v. Phillips Petroleum Co.*, 339 U.S. 667, 671 (1950), and "does not create an

---

[7]   "Finality in administrative law is sometimes treated as an aspect of the doctrine of ripeness, and sometimes as an independent jurisdictional requirement: 'Problems of finality are in the area where the law of exhaustion joins or overlaps with the law of ripeness . . . . Finality may be a part of exhaustion, a part of ripeness, or a third subject; courts do not clarify the classification, for they need not.'" *Ukiah Valley Med. Ctr. v. FTC*, 911 F.2d 261, 264 n.1 (9th Cir. 1990) (quoting 4 K. Davis, *Administrative Law Treatise* § 26:10, at 458 (2d ed. 1983)).

independent cause of action." *Davis v. United States*, 499 F.3d 590, 594 (6th Cir. 2007); *see also Hanson v. Wyatt*, 552 F.3d 1148, 1157 (10th Cir. 2008) (finding that the DJA "does not create substantive rights"); *Gov't Employees Ins. Co. v. Dizol*, 133 F.3d 1220, 1223 (9th Cir. 1998) (declaratory judgment action must still "fulfill statutory jurisdictional prerequisites"); *Arizona v. Atchison, T. & S.F. R.R. Co.*, 656 F.2d 398, 401 (9th Cir. 1981) (a court "must analyze [its] jurisdiction in a declaratory judgment action as if the Declaratory Judgment Act did not exist"). Thus, Schwab must point to some other federal statute or source of law that provides it with a private right of action.

Nowhere in the Complaint does Schwab identify the legal basis for its claim. Instead, Schwab's Complaint references two other federal statutes that, like the DJA, *do not* provide it with a private right of action. *See* Compl. ¶ 3 (citing the FAA (9 U.S.C. §2) and a provision of the Exchange Act (15 U.S.C. §78s)).[8]  The FAA does not provide a private right of action or a basis for federal jurisdiction. *See United States v. Park Place Assocs., Ltd.*, 563 F.3d 907, 918 (9th Cir. 2009) (holding that "the FAA does not itself . . . create a federal cause of action"); *see also Moses H. Cone Memorial Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 25 n.32 (1983) (the FAA "does not create any independent federal-question jurisdiction under 28 U.S.C. § 1331 or otherwise" (internal citation omitted)); *G.C. and K.B. Investments, Inc. v. Wilson*, 326 F.3d 1096, 1103 n.4 (9th Cir. 2003) ("The FAA is not a jurisdictional grant, and federal courts may only hear claims under the Act when there is an independent basis for federal jurisdiction."). And the Exchange Act cannot be the source of Schwab's cause of action because "[i]t is undisputed . . . that a party has no private right of action against [NASD] for . . . actions taken to perform its self-regulatory duties under the [Exchange] Act." *Sparta Surgical Corp. v. Nat'l Ass'n of Sec. Dealers, Inc.*, 159 F.3d 1209, 1213 (9th Cir. 1998)

---

[8]     Schwab's Complaint also cites 28 U.S.C. §§ 1331 and 1332, which provide the prerequisites for federal question and diversity jurisdiction, respectively. *See* Compl. ¶ 3.  Neither provision, however, sets forth substantive law that can serve as the basis for Schwab's claim.  Further, Schwab nowhere explains how the amount in controversy exceeds $75,000 in this suit; thus, this Court does not have diversity jurisdiction.  Schwab's "Prayer For Relief" also seeks a "preliminary and permanent injunction," but a request for injunctive relief depends on some independent claim with its own basis for jurisdiction. *Zepeda v. United States INS*, 753 F.2d 719, 727 (9th Cir. 1983) ("A federal court may issue an injunction if it has . . . subject matter jurisdiction over the claim.").

1    (citing *Jablon v. Dean Witter & Co.*, 614 F.2d 677, 681 (9th Cir. 1980)).  Indeed, no court has ever

2    implied a private right of action against FINRA for any act or omission under the Exchange Act.  *See*

3    *Gustafson v. Strangis*, 572 F. Supp. 1154, 1157 (D. Minn. 1983) (citing cases).[9]

4    **C.    This Court Lacks Jurisdiction Over Schwab's Separate Allegation That It Will Be Unable To Enforce The Class Action Waiver In Its Account Agreement Against Its**

5    **Customers.**

6          Schwab alleges that FINRA's rules will prevent Schwab from enforcing the class action

7    waiver in its amended Account Agreement against Schwab customers who bring, or participate in,

8    class actions in court.  *See* Compl. ¶ 39 (alleging that "FINRA's interpretation [of] the Rule prohibits

9    Schwab . . . from enforcing its arbitration agreement against a putative class action").  Schwab

10   therefore "seeks a declaratory judgment that FINRA rules cannot be enforced to bar individual

11   arbitration of class action claims."  *Id.* ¶ 47; *see also id.*, Prayer For Relief ¶ 1 (seeking "[a]

12   declaration that NASD or FINRA rules cannot be enforced to bar a provision in Schwab's customer

13   agreements requiring individual arbitration of claims").

14         Any allegation that FINRA Rule 2268(d)(3) prevents Schwab from seeking a stay, dismissal,

15   or any other order, under the FAA or otherwise, in any class action brought in any court by any one

16   of its customers is entirely speculative and therefore unripe.  *See Sacks v. Office of Foreign Assets*

17   *Control*, 466 F.3d 764, 773 (9th Cir. 2006) (citing *Abbott Labs. v. Gardner*, 387 U.S. 136, 148

18   (1967)) ("The ripeness requirement aims to 'prevent the courts, through avoidance of premature

19   adjudication, from entangling themselves in abstract disagreements.'").   FINRA's disciplinary

20   complaint does not charge Schwab with violating FINRA's rules by *enforcing* the class action waiver

21   clause against its customers—only by inserting the clause into its Customer Account Agreement.  *See*

22

23   _____

24   [9]      Even if this Court had jurisdiction to entertain Schwab's declaratory judgment action, it should decline to do so as a matter of discretion.  *See Wilton v. Seven Falls Co.*, 515 U.S. 277, 282

25   (1995) ("[D]istrict courts possess discretion in determining whether and when to entertain an action under the Declaratory Judgment Act, even when the suit otherwise satisfies subject matter

26   jurisdiction prerequisites."); *Gov't Empl. Ins. Co. v. Dizol*, 133 F.3d 1220, 1223 (9th Cir. 1998) (en banc) ("If the suit passes constitutional and statutory muster, the district court must also be satisfied

27   that entertaining the action is appropriate.")  The Ninth Circuit has held that "federal courts should generally decline to entertain reactive declaratory actions" like this one, particularly where (as here)

28   doing so would "discourage litigants from filing declaratory actions as a means of forum shopping" and "avoid duplicative litigation."  *Id.* at 1225.

Dettmer Decl., Ex. 1.  While FINRA may initiate additional disciplinary proceedings if and when Schwab seeks to enforce the clause against its customers, any such future proceedings would do no more than subject Schwab to FINRA disciplinary action for violating FINRA's rules.  This is a result of a *separate* private agreement into which Schwab entered with FINRA, in which Schwab agreed to abide by FINRA's rules.  *See Credit Suisse First Boston Corp. v. Grunwald*, 400 F.3d 1119, 1128 (9th Cir. 2005) (FINRA rules are not laws or regulations, but rather the terms of membership in a private organization); *Nat'l Coll. Athletic Ass'n v. Tarkanian*, 488 U.S. 179, 183 (1988) ("By joining [a private organization], each member agrees to abide by and to enforce [its] rules."); *id*. at 197 (a private association's "greatest authority [i]s to threaten sanctions against [its member], with the ultimate sanction being expulsion . . . from membership.").[10]  Schwab's Complaint is nothing more than a premature attempt to evade the hypothetical private consequences of its agreement with FINRA by obtaining a preemptive *advisory opinion* from this Court on the validity and enforceability of its Customer Account Agreement class action waiver.  Schwab's allegations are therefore unripe. *See Texas v. United States*, 523 U.S. 296, 300 (1998) ("A claim is not ripe for adjudication if it rests on contingent future events that may not occur as anticipated, or indeed may not occur at all.") (internal quotation marks omitted).

///

///

///

---

[10]      All courts agree that FINRA is a private, non-state actor.  *See Desiderio v. NASD*, 191 F.3d 198, 206 (2d Cir. 1999); *see also Credit Suisse First Boston Corp. v. Grunwald*, 400 F.3d 1119, 1128 (9th Cir. 2005) (recognizing FINRA is a "private entit[y]"); *Duffield v. Robertson Stephens & Co.*, 144 F.3d 1182, 1200 (9th Cir. 1998), *overruled on other grounds by E.E.O.C. v. Luce, Forward, Hamilton, & Scripps*, 345 F.3d 742 (9th Cir. 2003); *D.L. Cromwell Inv., Inc. v. NASD Regulation, Inc.*, 279 F.3d 155, 162 (2d Cir. 2002) ("It has been found, repeatedly, that the NASD itself is not a government functionary.") (collecting cases).  FINRA's structure and history demonstrate its status as a private entity.  FINRA is a not-for-profit Delaware corporation that does not receive government funding.  *Desiderio*, 191 F.3d at 206.  FINRA was not created in name by act of Congress.  *Id.*  No government official serves as a FINRA officer or serves on any FINRA board or committee, and the government does not appoint any FINRA officers, or board or committee members.  *Id.* Consequently, FINRA's actions are those of a private association, not those of the government.  *See Credit Suisse*, 400 F.3d at 1128 ("SRO rules . . . are adopted and enforced by private organizations."); *First Jersey*, 605 F.2d at 698 ("[FINRA] is a voluntary association, not a state agency.").

1

**CONCLUSION**

2
          For one or more of the numerous reasons stated herein, this Court should dismiss Schwab's

3
Complaint for lack of jurisdiction.

4
DATED:  February 22, 2012                    Respectfully submitted,

5
                                             GIBSON, DUNN & CRUTCHER LLP

6

7
                                             By: _____ */s/ Ethan D. Dettmer*_____

8
                                                         Ethan D. Dettmer

9
                                             Attorneys for Defendant Financial Industry
                                             Regulatory Authority, Inc.

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Defendant's Motion To Dismiss And Memorandum In Support                    Case No.  12-cv-0518 EDL