GIBSON, DUNN & CRUTCHER LLP
Ethan D. Dettmer, SBN 196046
EDETTMER@GIBSONDUNN.COM
Joshua S. Lipshutz, SBN 242557
JLIPSHUTZ@GIBSONDUNN.COM
555 Mission Street, Suite 3000
San Francisco, California 94105
Telephone: (415) 393-8200
Facsimile: (415) 393-8306

Attorneys for Defendant
FINANCIAL INDUSTRY
REGULATORY AUTHORITY, INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

CHARLES SCHWAB & CO., INC.,

Plaintiff,

v.

FINANCIAL INDUSTRY REGULATORY AUTHORITY, INC.,

Defendant.

CASE NO. 12-cv-0518 EDL

**DEFENDANT FINRA'S OPPOSITION TO PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION**

Hearing Date: April 10, 2012
Hearing Time: 10:00 a.m.
Location: Courtroom E, 15th Floor
Judge: Hon. Elizabeth D. Laporte

Trial Date: None set

## TABLE OF CONTENTS

Page

I. PRELIMINARY STATEMENT ........ 1

II. FACTUAL BACKGROUND ........ 2

III. ARGUMENT ........ 2

A. FINRA Will Prevail On The Merits Of This Dispute For At Least Four Different Reasons. ........ 2

1. This Court Does Not Have Jurisdiction Over Schwab's Claims. ........ 3

2. FINRA Is Immune From Suit. ........ 4

3. The Federal Arbitration Act Has Never Been Held To Dictate The Terms Of SRO Rules. ........ 5

4. Even If FINRA Rule 2268(d) Has The Force Of Law, It Would Override The Federal Arbitration Act. ........ 6

B. Schwab Will Not Suffer Any Irreparable Harm By Pursuing Its Claims In The Congressionally Required Forum. ........ 9

C. The Balance Of The Equities Favors Compliance With The Exchange Act. ........ 10

D. It Is In The Public Interest For This Court To Defer To The Disciplinary Procedures Established By Congress. ........ 11

IV. CONCLUSION ........ 12

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Alascom, Inc. v. ITT N. Elec. Co.*, 727 F.2d 1419 (9th Cir. 1984) ..... 10

*Alton v. Nat'l Ass'n of Sec. Dealers, Inc.*, No. C-94-0618 MHP, 1994 WL 443460 (N.D. Cal. July 26, 1994) ..... 3

*AT&T Mobility LLC v. Concepcion*, 131 S. Ct. 1740 (2011) ..... 7

*Austin Mun. Sec., Inc. v. Nat'l Ass'n of Sec. Dealers, Inc.*, 757 F.2d 676 (5th Cir. 1985) ..... 5

*Bakersfield City Sch. Dist. v. Boyer*, 610 F.2d 621 (9th Cir. 1979) ..... 9

*Barbara v. N.Y. Stock Exch., Inc.*, 99 F.3d 49 (2d Cir. 1996) ..... 4, 5

*Caplan v. Fellheimer Eichen Braverman & Kaskey*, 68 F.3d 828 (3d Cir. 1995) ..... 10

*Christian v. Bureau of Prisons*, No. CV 11-7227 JAK (RZ), 2011 WL 3903173 (C.D. Cal. Sept. 2, 2011) ..... 3

*City of New York v. FCC*, 486 U.S. 57 (1988) ..... 7

*CompuCredit Corp. v. Greenwood*, 132 S. Ct. 665 (2012) ..... 2, 7, 8

*Credit Suisse First Bos. Corp. v. Grunwald*, 400 F.3d 1119 (9th Cir. 2005) ..... 5, 6, 8

*Crosby v. Nat'l Foreign Trade Council*, 530 U.S. 363 (2000) ..... 7

*D.L. Cromwell Invs., Inc. v. NASD Regulation, Inc.*, 279 F.3d 155 (2d Cir. 2002) ..... 5, 6

*D'Alessio v. N.Y. Stock Exch., Inc.*, 258 F.3d 93 (2d Cir. 2001) ..... 4

*Desiderio v. Nat'l Ass'n of Sec. Dealers, Inc.*, 191 F.3d 198 (2d Cir. 1999) ..... 6

*Dotster, Inc. v. Internet Corp. for Assigned Names & Nos.*, 296 F. Supp. 2d 1159 (C.D. Cal. 2003) ..... 10

*Duffield v. Robertson Stephens & Co.*, 144 F.3d 1182 (9th Cir. 1998) (en banc) ..... 6

*First Jersey Sec., Inc. v. Bergen*,
605 F.2d 690 (3d Cir. 1979) ........ 1, 3, 6, 11

*FTC v. Standard Oil Co. of Cal.*,
449 U.S. 232 (1980) ........ 9, 11

*Jablon v. Dean Witter & Co.*,
614 F.2d 677 (9th Cir. 1980) ........ 4

*Kolev v. Euromotors W./The Auto Gallery*,
658 F.3d 1024 (9th Cir. 2011) ........ 2, 7, 8

*Krull v. SEC*,
248 F.3d 907 (9th Cir. 2001) ........ 6

*Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*,
473 U.S. 614 (1985) ........ 7

*Munaf v. Geren*,
553 U.S. 674 (2008) ........ 2

*Myers v. Bethlehem Shipbuilding Corp.*,
303 U.S. 41 (1938) ........ 9

*Olde Disc. Corp. v. Tupman*,
805 F. Supp. 1130 (D. Del. 1992) ........ 10

*P'ship Exch. Sec. Co. v. Nat'l Ass'n of Sec. Dealers, Inc.*,
169 F.3d 606 (9th Cir. 1999) ........ 4

*Perpetual Sec. Inc. v. Tang*,
290 F.3d 132 (2d Cir. 2002) ........ 6

*Renegotiation Bd. v. Bannercraft Clothing Co.*,
415 U.S. 1 (1974) ........ 9

*Rios v. Cate*,
No. 10 CV 1064 MMA (PCL), 2010 WL 2998791 (S.D. Cal. July 28, 2010) ........ 3

*Salt Lake Tribune Publ'g Co. v. AT&T Corp.*,
320 F.3d 1081 (10th Cir. 2003) ........ 10

*Sapp v. Kimbrell*,
623 F.3d 813 (9th Cir. 2010) ........ 9, 11

*Scher v. Nat'l Ass'n of Sec. Dealers, Inc.*,
386 F. Supp. 2d 402 (S.D.N.Y. 2005) ........ 4

*Sec. Indus. Ass'n v. Connolly*,
883 F.2d 1114 (1st Cir. 1989) ........ 7

*Shearson/Am. Express Inc. v. McMahon*,
482 U.S. 220 (1987) ........ 7

*Skelly Oil Co. v. Phillips Petroleum Co.*,
339 U.S. 667 (1950) ........ 3

*Sparta Surgical Corp. v. Nat'l Ass'n of Sec. Dealers, Inc.*,
159 F.3d 1209 (9th Cir. 1998)........................................ 1, 4, 5

*Steel Co. v. Citizens for Better Env't*,
523 U.S. 83 (1998)........................................ 1

*Swirsky v. Nat'l Ass'n of Sec. Dealers*,
124 F.3d 59 (1st Cir. 1997)........................................ 1, 3

*Timbisha Shoshone Tribe v. Salazar*,
697 F. Supp. 2d 1181 (E.D. Cal. 2010)........................................ 1, 3, 11

*United States v. Nat'l Ass'n of Sec. Dealers, Inc.*,
422 U.S. 694 (1975)........................................ 8

*United States v. Park Place Assocs., Ltd.*,
563 F.3d 907 (9th Cir. 2009)........................................ 4

*United States v. Solomon*,
509 F.2d 863 (2d Cir. 1975)........................................ 6

*Vencor Nursing Ctrs., L.P. v. Shalala*,
63 F. Supp. 2d 1 (D.D.C. 1999)........................................ 9

*Winter v. Natural Res. Def. Council, Inc.*,
555 U.S. 7 (2008)........................................ 2, 9, 10, 11

*Woodford v. Ngo*,
548 U.S. 81 (2006)........................................ 9, 11

**Constitutional Provisions**

U.S. Const. art. VI, cl. 2........................................ 7

**Statutes**

7 U.S.C. § 26(n)(2) (2006)........................................ 8

**Rules**

FINRA R. 2268(d)........................................ 8

**Other Authorities**

Charles Alan Wright et al., *Federal Practice and Procedure* (2d ed. 1995)........................................ 10

Defendant Financial Industry Regulatory Authority, Inc. ("FINRA") respectfully opposes Plaintiff Charles Schwab & Co., Inc.'s ("Schwab") motion for preliminary injunction.

## I. PRELIMINARY STATEMENT

As FINRA explained in its Motion to Dismiss (Doc. 13), Schwab's Complaint is a flawed attempt to evade the congressionally-mandated procedures for resolving FINRA disciplinary disputes, established in the Exchange Act. *See Swirsky v. Nat'l Ass'n of Sec. Dealers*, 124 F.3d 59, 62 (1st Cir. 1997); *First Jersey Sec., Inc. v. Bergen*, 605 F.2d 690, 696 (3d Cir. 1979). For that reason—and numerous others, including lack of standing, lack of ripeness, abstention, the doctrine of primary jurisdiction, and Schwab's failure to assert a cognizable cause of action—this Court should dismiss this case for lack of subject matter jurisdiction before even entertaining Schwab's Motion for Preliminary Injunction. *See* FINRA's Motion to Stay (Doc. 18).[1]

With its Motion for Preliminary Injunction (Doc. 7), Schwab expands its efforts to circumvent the procedures enacted by Congress by seeking this Court's immediate review of the *merits* of its Complaint *before* this Court resolves the numerous jurisdictional hurdles. But Schwab's merits arguments are properly resolved in the administrative forum that indisputably has jurisdiction over this dispute, and not in this Court. *See Steel Co. v. Citizens for Better Env't*, 523 U.S. 83, 98 (1998). Indeed, the "serious questions as to the Court's subject matter jurisdiction" that FINRA has identified are reason enough for this Court to deny Schwab's motion. *Timbisha Shoshone Tribe v. Salazar*, 697 F. Supp. 2d 1181, 1188 (E.D. Cal. 2010).

In any event, Schwab has not come close to establishing any of the factors required for a preliminary injunction. As an initial matter, FINRA is acting within its capacity as a self-regulatory organization and is therefore immune from Schwab's suit. *See Sparta Surgical Corp. v. Nat'l Ass'n of Sec. Dealers, Inc.*, 159 F.3d 1209, 1214 (9th Cir. 1998). On the merits, Schwab cannot succeed in invalidating the FINRA rules it violated because those rules do not conflict with the FAA and, even if they did, binding Ninth Circuit precedent makes it clear they would override the FAA. *See Kolev v.*

---

[1] FINRA has moved to stay consideration of Schwab's Motion for Preliminary Injunction until FINRA's Motion to Dismiss has been resolved. Doc. 18. As of the time of this filing, FINRA's Motion to Stay has not been fully briefed.

*Euromotors W./The Auto Gallery*, 658 F.3d 1024, 1029 (9th Cir. 2011); *see also CompuCredit Corp. v. Greenwood*, 132 S. Ct. 665, 672 (2012). Finally, Schwab has not—and cannot—explain how resolving this dispute in the congressionally-required administrative forum rather than in court would impose on Schwab irreparable harm, be inequitable, or serve the public interest. Indeed, Schwab's mere *preference* to have its claims resolved in court—ironic, to say the least, in light of Schwab's efforts to force its own customers *out* of court with its class action waiver—cannot trump the FINRA disciplinary process that Congress enacted and Schwab agreed to utilize.

## II. FACTUAL BACKGROUND

The relevant facts, including the history of the FINRA Rules at issue and Schwab's repeated agreement to abide by those rules and to adhere to FINRA's disciplinary procedures, are set forth in FINRA's Motion to Dismiss. *See* Doc. 13 at 2–8.

## III. ARGUMENT

A "preliminary injunction is an extraordinary and drastic remedy." *Munaf v. Geren*, 553 U.S. 674, 689 (2008) (internal quotation marks omitted). This Court may only grant Schwab's motion "upon a clear showing that [Schwab] is entitled to such relief." *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008). Specifically, "[a] plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Id.* Schwab has not met—and cannot meet—a single one of those requirements.

### A. FINRA Will Prevail On The Merits Of This Dispute For At Least Four Different Reasons.

Schwab's argument that it is likely to succeed on the merits faces at least four insurmountable obstacles: (1) this Court's lack of subject matter jurisdiction over Schwab's claims; (2) FINRA's immunity from suit; (3) the absence of conflict between FINRA's rules and the FAA; and (4) the language in the FINRA rules that expressly overrides the FAA. To demonstrate a likelihood of success, Schwab must overcome *all four* of these obstacles. In fact, in cannot overcome any of them.

**1. This Court Does Not Have Jurisdiction Over Schwab's Claims.**

Because there are "serious questions as to the Court's subject matter jurisdiction" over Schwab's claims, Schwab cannot "establish the likelihood of success on the merits" required to obtain a preliminary injunction. *Timbisha Shoshone Tribe*, 697 F. Supp. 2d at 1188; *Christian v. Bureau of Prisons*, No. CV 11-7227 JAK (RZ), 2011 WL 3903173, at *2 (C.D. Cal. Sept. 2, 2011) ("Petitioner . . . fails to show a likelihood of success on the merits" where his claims "ha[ve] not been exhausted within the [agency]."); *Rios v. Cate*, No. 10 CV 1064 MMA (PCL), 2010 WL 2998791, at *2 (S.D. Cal. July 28, 2010) (denying preliminary injunction "[w]here, as here, the party seeking a [preliminary injunction] does not demonstrate compliance with a prerequisite to pursuing an action in federal court (*i.e.* exhaustion of administrative remedies), [and thus] cannot establish a likelihood of success on the merits"). For that reason alone, this Court should deny Schwab's motion.

**a) This Dispute Must Be Resolved Through The Procedures Congress Dictated And To Which Schwab Agreed.**

As described at greater length in FINRA's Motion to Dismiss (Doc. 13 at 9–14) and Motion to Stay (Doc. 18), this dispute must be resolved in the process established by Congress and repeatedly agreed to by Schwab, rather than in this Court. Courts have uniformly held that district courts lack jurisdiction over FINRA disciplinary proceedings, which must be heard instead by FINRA, the SEC, and federal Courts of Appeals, as Congress required. *See Swirsky*, 124 F.3d at 62; *First Jersey Sec.*, 605 F.2d at 696; *Alton v. Nat'l Ass'n of Sec. Dealers, Inc.*, No. C-94-0618 MHP, 1994 WL 443460, at *2–3 (N.D. Cal. July 26, 1994), *aff'd*, 105 F.3d 664 (9th Cir. 1996). Schwab's effort to bypass this well-established process is baseless.

**b) Schwab's Complaint Does Not State Any Legal Basis For A Private Right Of Action.**

In addition to the fatal flaw of having brought this claim outside the required venue, Schwab also failed to assert any statutory or other basis that supports a private cause of action against FINRA. *See* Doc. 13 at 14–16. As FINRA has already described in detail, *id.*, neither the FAA nor the Declaratory Judgment Act provides a basis for Schwab's claims, *see Skelly Oil Co. v. Phillips Petroleum Co.*, 339 U.S. 667, 671 (1950); *United States v. Park Place Assocs., Ltd.*, 563 F.3d 907,

918 (9th Cir. 2009), and it is well settled that the Exchange Act does not create a private cause of action against FINRA, *Sparta*, 159 F.3d at 1213; *Jablon v. Dean Witter & Co.*, 614 F.2d 677, 681 (9th Cir. 1980). Schwab is unlikely to succeed on the merits for this reason, as well.

**2. FINRA Is Immune From Suit.**

Even if Schwab's claims were properly before this court, they also fail because FINRA is immune from Schwab's suit. Federal courts have repeatedly "applied absolute immunity to a self-regulatory organization," such as FINRA or its predecessor NASD, acting within its regulatory capacity. *P'ship Exch. Sec. Co. v. Nat'l Ass'n of Sec. Dealers, Inc.*, 169 F.3d 606, 608 (9th Cir. 1999); *see also Sparta*, 159 F.3d at 1214 (holding that "self-regulatory organizations . . . enjoy complete immunity from suits . . . when they are acting under the aegis of the Exchange Act's delegated authority"); *id.* at 1213 ("Extending immunity when a self-regulatory organization is exercising quasi-governmental powers is consistent with the structure of the securities market as constructed by Congress."); *D'Alessio v. N.Y. Stock Exch., Inc.*, 258 F.3d 93, 105 (2d Cir. 2001) (SROs are absolutely immune "from suit for conduct falling within the scope of the SRO's regulatory and general oversight functions."); *Barbara v. N.Y. Stock Exch., Inc.*, 99 F.3d 49, 58–59 (2d Cir. 1996).

The scope of this immunity is sweeping and is triggered whenever an SRO engages in conduct consistent with the authority delegated to it pursuant to the Exchange Act and the regulations and rules promulgated thereunder. *D'Alessio*, 258 F.3d at 106. Importantly, federal courts have rejected the argument that absolute immunity is reserved only for state actors. As explained in *Barbara*, with respect to the New York Stock Exchange, another SRO, "[a]lthough the Exchange is a private, rather than a governmental entity, immunity doctrines protect private actors when they perform important government functions." 99 F.3d at 58; *see also Scher v. Nat'l Ass'n of Sec. Dealers, Inc.*, 386 F. Supp. 2d 402, 408 (S.D.N.Y. 2005) ("[I]t is by no means 'inconsistent' to find that, on the one hand, the NASD exercises insufficient state action . . . while nevertheless holding that the NASD is entitled to absolute immunity in the exercise of its quasi-public regulatory duties."), *aff'd*, 218 F. App'x 46 (2d Cir. 2007).

The absolute immunity that is afforded to FINRA is critical to the comprehensive system established by Congress for regulating the securities markets. Under that system, Congress and the SEC delegated specific responsibilities for front-line regulation of the securities markets to SROs, such as FINRA, under the supervision of the SEC. *See Barbara*, 99 F.3d at 59. In this manner, SROs "perform[] a variety of regulatory functions that would, in other circumstances, be performed by a government agency." *Id.* The conduct of which Schwab complains—the commencement of an enforcement action—relates singularly to FINRA's mandate to "conduct[] investigations and commenc[e] disciplinary proceedings against [FINRA] member firms and their associated member representatives relating to compliance with the federal securities laws and regulations." *D.L. Cromwell Invs., Inc. v. NASD Regulation, Inc.*, 279 F.3d 155, 157 (2d Cir. 2002) (internal quotation marks omitted); *see also Sparta*, 159 F.3d at 1213 ("[I]mmunity has been afforded self-regulatory organizations when conducting disciplinary proceedings . . . .") (citing *Austin Mun. Sec., Inc. v. Nat'l Ass'n of Sec. Dealers, Inc.*, 757 F.2d 676, 686–93 (5th Cir. 1985)). Thus, Schwab's allegations go to the core of the regulatory, disciplinary, adjudicatory, and oversight functions delegated to FINRA under the Securities Exchange Act, and FINRA is immune from this suit.

### 3. The Federal Arbitration Act Has Never Been Held To Dictate The Terms Of SRO Rules.

As discussed above and in FINRA's Motion to Dismiss and Motion to Stay, the merits of Schwab's claims are properly resolved in the administrative forum and not in this Court. Even on the merits, however, Schwab cannot succeed in invalidating the FINRA rules it violated. In the disciplinary proceedings that Schwab seeks to enjoin, FINRA alleges that Schwab's class action waiver violates FINRA's membership rules—rules with which Schwab has repeatedly agreed to comply in a series of agreements between the parties. *See Credit Suisse First Bos. Corp. v. Grunwald*, 400 F.3d 1119, 1128 (9th Cir. 2005) ("We deal here with rules adopted by private entities—self regulatory organizations ('SROs') within the securities industry—rather than federal agencies."). FINRA therefore seeks to impose the discipline consequences dictated by the terms of Schwab's membership in FINRA. This lawsuit is merely an improper attempt by Schwab to evade the requirements of its agreement with FINRA, and the consequences of Schwab's violation of that

agreement.[2]

The FAA does not require, nor has any court ever interpreted it to require, an SRO's rules to select arbitration as the means of resolving disputes between the SRO's members and their customers. Indeed, no court has ever held that the FAA has any bearing whatsoever on the contents of an SRO's rules, and Schwab points to no such case. *See* Doc. 7 at 10 (citing cases holding only that "state *statutory* or *decisional* prohibitions on class action waivers . . . are preempted by the FAA") (emphasis added). Thus, Schwab has not demonstrated a likelihood of invalidating the FINRA rules at issue.[3]

**4. Even If FINRA Rule 2268(d) Has The Force Of Law, It Would Override The Federal Arbitration Act.**

Even if FINRA's Rules are an "expression of federal legislative power" as Schwab claims, Compl. ¶¶ 16, 33, and even if those rules "ha[ve] the force and effect of a federal regulation," Doc. 7 at 7, Schwab cannot prevail in its argument that the FAA invalidates FINRA Rule 2268(d). Under

---

[2] Courts have consistently held that FINRA (and its predecessor, the NASD) "is a private actor, not a state actor." *Desiderio v. Nat'l Ass'n of Sec. Dealers, Inc.*, 191 F.3d 198, 206 (2d Cir. 1999); *see also Credit Suisse*, 400 F.3d at 1128 (recognizing FINRA is a "private entit[y]"); *Duffield v. Robertson Stephens & Co.*, 144 F.3d 1182, 1200 (9th Cir. 1998), *overruled on other grounds by E.E.O.C. v. Luce, Forward, Hamilton, & Scripps*, 345 F.3d 742 (9th Cir. 2003) (en banc); *D.L. Cromwell*, 279 F.3d at 162 ("It has been found, repeatedly, that the NASD itself is not a government functionary.") (collecting cases); *Perpetual Sec. Inc. v. Tang*, 290 F.3d 132, 138 (2d Cir. 2002); *First Jersey*, 605 F.2d at 699; *United States v. Solomon*, 509 F.2d 863, 867–71 (2d Cir. 1975). No court has held otherwise.

[3] Schwab also argues that its Customer Account Agreement does not violate FINRA Rule 2268(d)(3) because "FINRA's interpretation of [that rule] is incorrect." Compl. ¶ 34; *see also id.* ¶¶ 35-38 (making various allegations about the history of FINRA Rule 2268(d)(3)); Doc. 7 at 13–17. But this Court owes deference to the SEC's interpretation of FINRA's rules, which is precisely why the administrative process must precede court review. *See Krull v. SEC*, 248 F.3d 907, 912 (9th Cir. 2001) ("Because of the [SEC's] expertise in the securities industry, we owe deference to its construction of NASD's Rules of Fair Practice."). In any event, the history of Rule 2268(d)(3) makes clear that protecting the right of investors to bring, and participate in, class actions in court was a significant concern motivating the adoption of, and the SEC's approval of, that rule. *See* Doc. 13 at 3–5. Indeed, Schwab's erroneous interpretation of FINRA Rule 2268(d)(3) renders its own Account Agreement nonsensical: In order to comply with FINRA Rule 2268(f), its Account Agreement informs Schwab customers that Schwab may not "seek to enforce any predispute arbitration agreement against any person who has initiated in court a putative class action; or who is a member of a putative class." *See* Doc. 13-3 at 2. But those are the very same class actions Schwab's Account Agreement later says Schwab customers cannot bring, or participate in, in the first place. This Court need look no further to determine that Schwab's interpretation of Rule 2268(d)(3) is unreasonable and untenable.

binding Ninth Circuit precedent, federal regulations are capable of expressing the clear congressional command needed to override the FAA. *See Kolev*, 658 F.3d at 1029–30. And the FINRA rule at issue here, as approved by the SEC, contains the exact language the Supreme Court said is sufficient to override the FAA. *See CompuCredit*, 132 S. Ct. at 672. Thus, it is the FAA that must yield to FINRA Rule 2268(d), not the other way around.[4]

With respect to conflicts between the FAA and other federal laws, the Supreme Court and the Ninth Circuit have taken the approach typical of any conflict between federal laws. *See CompuCredit*, 132 S. Ct. at 669; *Shearson/Am. Express Inc. v. McMahon*, 482 U.S. 220, 226 (1987); *Kolev*, 658 F.3d at 1029. The FAA "requires courts to enforce agreements to arbitrate according to their terms . . . unless the FAA's mandate has been 'overridden by a contrary congressional command.'" *CompuCredit*, 132 S. Ct. at 669 (quoting *McMahon*, 482 U.S. at 226). Such a command is "'deducible from [the statute's] text or legislative history,' or from an inherent conflict between arbitration and the statute's underlying purposes." *McMahon*, 482 U.S. at 227 (quoting *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 628 (1985)) (alteration in original; citation omitted).

In *CompuCredit*, the Supreme Court held that the Credit Repair Organizations Act ("CROA"), which requires credit repair organizations to disclose that consumers have a "right to sue" them, did not supply a congressional command sufficient to override the FAA. 132 S. Ct. at 672–73. The Court further held that this disclosure requirement, coupled with a provision voiding waivers of consumer protections, did not override the FAA. *Id.* "Had Congress meant to prohibit [arbitration clauses] in the CROA," the Court concluded, "it would have done so in a manner less obtuse . . . ."

---

[4] Under the Supremacy Clause of the U.S. Constitution, the FAA, like all other federal laws, supersedes conflicting state laws. U.S. Const. art. VI, cl. 2; *see Crosby v. Nat'l Foreign Trade Council*, 530 U.S. 363, 373 (2000); *City of New York v. FCC*, 486 U.S. 57, 63 (1988). Federal laws also preempt state laws that obstruct the "full purposes and objectives" of the FAA. *AT&T Mobility LLC v. Concepcion*, 131 S. Ct. 1740, 1753 (2011). The Supreme Court's holding in *Concepcion* was a routine application of the Supremacy Clause, finding that the FAA preempts a California state law disfavoring arbitration agreements. But *Concepcion* is inapplicable to any conflict between FINRA's rules and the FAA because FINRA's rules are approved by the SEC pursuant to a federal law and thus, even under Schwab's theory, are not subordinate to the FAA. *See Sec. Indus. Ass'n v. Connolly*, 883 F.2d 1114, 1122 (1st Cir. 1989).

*Id.* at 672. The Supreme Court then provided examples of the type of statutory language that could overcome the FAA. *See id.* (citing 7 U.S.C. § 26(n)(2) (2006)) ("No predispute arbitration agreement shall . . . .").

In resolving conflicts between the FAA and other federal laws, the Ninth Circuit similarly follows "two basic principles of statutory interpretation: first, that later enacted statutes take priority over older ones, and second, that more specific statutes control more general ones." *Kolev*, 658 F.2d at 1029. But the Ninth Circuit has also held that a federal agency's rulemaking can override the FAA. *See id.* at 1030 (holding that the Federal Trade Commission's interpretation of a statute to "bar[] judicial enforcement of warranty provisions that mandate pre-dispute binding arbitration . . . evinces a 'contrary congressional command' sufficient to override the FAA's presumption in favor of arbitration"). In *Kolev*, the Ninth Circuit found congressional override of the FAA where the FTC construed the Magnuson–Moss Warranty Act ("MMWA") as "barring pre-dispute mandatory binding arbitration provisions covering written warranty agreements and issued a rule prohibiting judicial enforcement of such provisions with respect to consumer claims brought under the MMWA." *Id.* at 1025. Because the FTC issued its rule subsequent to the FAA, and because the rule was more specific than the FAA, the Ninth Circuit found sufficient congressional command to override it. *Id.* at 1029–30.

Here, Schwab alleges that FINRA's rules reflect "an expression of federal legislative power," Compl. ¶¶ 16, 33, and "ha[ve] the force and effect of a federal regulation," Doc. 7 at 7; *see also United States v. Nat'l Ass'n of Sec. Dealers, Inc.*, 422 U.S. 694, 732-33 (1975) (holding that "[t]he SEC's supervisory authority over the NASD" suggests that NASD rules reflect Congress's intent). Moreover, the Ninth Circuit has explained that FINRA's statutory obligation to follow its own rules, once those rules are determined by the SEC to be consistent with the purposes of the Exchange Act, is itself an obligation that has the force of federal law. *Credit Suisse*, 400 F.3d at 1132 n.19. Thus, FINRA has a federal statutory obligation to enforce Rule 2268(d). And Rule 2268(d) explicitly overrides the FAA: The rule post-dates the FAA by more than sixty years. *See* Doc. 13-8. It is more specific than the FAA, applicable to the specific context of FINRA members' customer arbitration agreements. And it uses the very language identified by the Supreme Court in *Compucredit* as

exemplifying a clear override of the FAA. *See* FINRA R. 2268(d) ("No predispute arbitration agreement shall include . . . ."). Consequently, the FAA must yield to FINRA's enforcement of Rule 2268(d) against Schwab.

**B. Schwab Will Not Suffer Any Irreparable Harm By Pursuing Its Claims In The Congressionally Required Forum.**

Schwab also has not met its burden of "demonstrat[ing] that irreparable injury is *likely* in the absence of an injunction." *Winter*, 555 U.S. at 22 (emphasis in original). First, Schwab's argument that FINRA's disciplinary proceedings and subsequent appeals are "lengthy" and will require it to expend "time and resources," Doc. 7 at 18, fails as a matter of law. *See Vencor Nursing Ctrs., L.P. v. Shalala*, 63 F. Supp. 2d 1, 13 (D.D.C. 1999) ("As a matter of law, neither the burden of pursuing administrative appeal nor the burden of prosecuting the instant action can constitute 'irreparable harm . . . .'"). The Supreme Court has rejected the argument that the alleged "expense and disruption of . . . protracted adjudicatory proceedings constitutes irreparable harm." *FTC v. Standard Oil Co. of Cal.*, 449 U.S. 232, 244 (1980). Indeed, in the context of administrative proceedings, "[m]ere litigation expense, even substantial and unrecoupable cost, does not constitute irreparable injury." *Renegotiation Bd. v. Bannercraft Clothing Co.*, 415 U.S. 1, 24 (1974) (citing *Myers v. Bethlehem Shipbuilding Corp.*, 303 U.S. 41, 51–52 (1938)); *see Bakersfield City Sch. Dist. v. Boyer*, 610 F.2d 621, 626 (9th Cir. 1979) (holding that judicial intervention in an administrative proceeding is appropriate "only when there is a clear showing of irreparable injury, and time and expenses due to litigation are not enough").

Second, Schwab makes no showing that pursuing its claim in court—a process that itself could take years, including appeals—will resolve its dispute with FINRA any faster than proceeding through the proper administrative process. Thus, even if time and expense were cognizable irreparable injuries, Schwab fails to demonstrate they are likely to be more burdensome "in the absence of an injunction." *Winter*, 555 U.S. at 22. In fact, the opposite is likely true. *See Sapp v. Kimbrell*, 623 F.3d 813, 823 (9th Cir. 2010) ("'[E]xhaustion promotes efficiency' by allowing claims to 'be resolved more quickly and economically in proceedings before an agency than in litigation in federal court . . . .'") (quoting *Woodford v. Ngo*, 548 U.S. 81, 89 (2006)).

Third, Schwab argues that the absence of a preliminary injunction forces it to either forgo enforcement of its class action waiver provision or risk additional disciplinary action by FINRA. Doc. 7 at 19–20. But that supposed "Hobson's choice," *id.* at 19, cannot constitute irreparable harm because it is of Schwab's own making. 11A Charles Alan Wright et al., *Federal Practice and Procedure* § 2948.1 (2d ed. 1995) ("[A] party may not satisfy the irreparable harm requirement if the harm complained of is self-inflicted."); *Salt Lake Tribune Publ'g Co. v. AT&T Corp.*, 320 F.3d 1081, 1106 (10th Cir. 2003); *Caplan v. Fellheimer Eichen Braverman & Kaskey*, 68 F.3d 828, 839 (3d Cir. 1995); *Dotster, Inc. v. Internet Corp. for Assigned Names & Nos.*, 296 F. Supp. 2d 1159, 1163 (C.D. Cal. 2003). Schwab entered into two conflicting agreements—one with FINRA to abide by FINRA's rules, and the other with its customers to waive class actions in violation of FINRA's rules. Thus, Schwab's conflict "results from the express terms of a contract [Schwab] negotiated, and therefore . . . is a harm that [Schwab] inflicted upon itself." *Salt Lake Tribune*, 320 F.3d at 1106. Such a dilemma is not irreparable harm: "If [Schwab] entered a disadvantageous contract, [it] must suffer the consequences." *Dotster*, 296 F. Supp. 2d at 1163.

In any event, if Schwab prevails in its merits argument and invalidates FINRA's rule—an outcome that is equally possible regardless whether the dispute proceeds in court or in the administrative process—then Schwab's enforcement of its class action waiver will not result in any FINRA disciplinary sanctions. Thus, Schwab's improper request for a preliminary injunction is merely an attempt to avoid facing the consequences of being *wrong*.[5]

**C. The Balance Of The Equities Favors Compliance With The Exchange Act.**

Schwab also has not shown that the "balance of equities tips in [its] favor." *Winter*, 555 U.S. at 20. Although Schwab is not faced with irreparable injury, FINRA would suffer significant harm if this Court were to preliminarily enjoin disciplinary proceedings "on issues that are not final, have not

---

[5] Schwab also argues that "los[ing] the right to arbitrate" would constitute irreparable harm. Doc. 7 at 19 (citing *Alascom, Inc. v. ITT N. Elec. Co.*, 727 F.2d 1419, 1422 (9th Cir. 1984); *Olde Disc. Corp. v. Tupman*, 805 F. Supp. 1130, 1141 (D. Del. 1992)). But Schwab is not in danger of "los[ing] the right to arbitrate." The only question here is whether Schwab's decision to compel arbitration would violate a separate agreement into which Schwab entered with FINRA (*see Dotster*, 296 F. Supp. 2d at 1163), a question that is not ripe for adjudication.

been exhausted, and are not ripe for review." *Timbisha Shoshone Tribe*, 697 F. Supp. 2d at 1191. FINRA and the SEC both "ha[ve] an interest in developing a full record and using [their] expertise to consider administrative questions." *Id.* A preliminary injunction would, for example, deny FINRA and the SEC "an opportunity to correct [their] own mistakes and to apply [their] expertise" in the ordinary course of the administrative process. *Standard Oil*, 449 U.S. at 242; *Woodford*, 548 U.S. at 89; *Sapp*, 623 F.3d at 823. Injunctive relief would also erode FINRA's authority by encouraging "disregard of [FINRA's] procedures." *Woodford*, 548 U.S. at 89 (internal quotation marks omitted); *Sapp*, 623 F.3d at 823. And allowing Schwab to circumvent the disciplinary process would harm FINRA's interest in efficiency. *Sapp*, 623 F.3d at 823.

### D. It Is In The Public Interest For This Court To Defer To The Disciplinary Procedures Established By Congress.

Finally, a preliminary injunction is contrary to the public's interest in "promot[ing] and preserv[ing] a judicial system that adheres to the rule of law." *Timbisha Shoshone Tribe*, 697 F. Supp. 2d at 1191; *see also Winter*, 555 U.S. at 24. Adhering to the Exchange Act's comprehensive review process will promote efficient, consistent, and predictable results on which the public can rely. *See Woodford*, 548 U.S. at 89 (agency proceedings are more efficient than litigation); *cf. Standard Oil*, 449 U.S. at 242 (judicial intervention leads to "piecemeal review"). In addition, the administrative process provides ample opportunity for Schwab to air all manner of "complex issues of federal law," Doc. 7 at 21 n.7, incorporating review by both the SEC and a federal court of appeals. *See First Jersey Sec.*, 605 F.2d at 696. By contrast, Schwab's proposed preliminary relief would "ignore the well-settled rules of finality and exhaustion [and] would cause confusion in a judicial system that thrives on consistency and predictability." *Timbisha Shoshone Tribe*, 697 F. Supp. 2d at 1191–92.

## IV. CONCLUSION

For the reasons set forth herein, this Court should deny Schwab's Motion for Preliminary Injunction.

DATED: March 6, 2012

Respectfully submitted,

GIBSON, DUNN & CRUTCHER LLP

By: */s/ Ethan D. Dettmer*
Ethan D. Dettmer

Attorneys for Defendant Financial Industry Regulatory Authority, Inc.

101243611.8