1   ARNOLD & PORTER. LLP
    GILBERT R. SEROTA (Bar No. 75305)
2   gilbert.serota@aporter.com
    SIMONA A. AGNOLUCCI (Bar No. 246943)
3   simona.agnolucci@aporter.com
    DEBORAH SCHLOSBERG (Bar No. 254621)
4   deborah.schlosberg@aporter.com
    3 Embarcadero Center, 7th Floor
5   San Francisco, California 94111-4024
    Telephone:    +1 415.471-3100
6   Facsimile:    +1 415.471-3400

7   LOWELL HAKY (No. 178526)
    Vice President and Associate General Counsel
8   CHARLES SCHWAB & CO., INC.
    211 Main Street
9   San Francisco, CA 94105
    Telephone:    + 415.471.3100
10  Facsimile:    + 415.471.3400

11  Attorneys for Plaintiff
    CHARLES SCHWAB & CO., INC.

12

13              UNITED STATES DISTRICT COURT

14            NORTHERN DISTRICT OF CALIFORNIA

15                 SAN FRANCISCO DIVISION

16

17  CHARLES SCHWAB & CO., INC.,              Case No. C 12-00518 EDL

18              Plaintiff,                   **CHARLES SCHWAB & CO., INC.'S**
                                             **OPPOSITION TO  DEFENDANT'S**
19       v.                                  **MOTION TO DISMISS FOR LACK OF**
                                             **JURISDICTION UNDER RULES 12(b)(1)**
20  FINANCIAL INDUSTRY REGULATORY            **and 12(h)(3)**
    AUTHORITY, INC.,
21                                           Date:        April 3, 2012
              Defendant.                     Time:        10:00 a.m.
22                                           Judge:       Hon. Elizabeth D. Laporte
                                             Courtroom:   E
23
                                             Trial Date:  None Set
24

25

26

27

28

# TABLE OF CONTENTS

**Page**

INTRODUCTION ..................................................................................................... 1

FACTUAL AND PROCEDURAL BACKGROUND......................................................... 2

    A.    The Nature Of FINRA's Authority. ................................................................ 2

    B.    The Supreme Court's Decisions In *AT&T Mobility* And *CompuCredit*. ..................... 3

    C.    FINRA Enforcement's Disciplinary Process. ............................................... 4

    D.    Schwab's Amended Arbitration Agreement And Mutual Class Action Waiver. ......... 5

    E.    This Action, FINRA Enforcement's Action And Threats Of Further Discipline, And The Class Action Suit In *Kamberian v. Charles Schwab & Co., Inc.* ................. 5

    F.    The FINRA Rules At Issue. ......................................................................... 6

ARGUMENT ............................................................................................................. 8

    I. THE COURT HAS FEDERAL QUESTION AND DIVERSITY JURISDICTION. .......... 8

        A.    This Dispute Arises Under The Laws Of The United States ........................... 8

        B.    The Parties Are Diverse And The Amount In Controversy Unquestionably Exceeds The Jurisdictional Minimum........................................................... 10

        C.    Schwab's Cause Of Action Is Recognized and Accepted by Numerous Courts ....................................................................................................... 11

    II. NOTHING IN THE EXCHANGE ACT DEPRIVES THIS COURT OF JURISDICTION............................................................................................... 14

    III. THERE IS A RIPE AND IMMEDIATE CONTROVERSY........................................... 17

    IV. EXHAUSTION OF REMEDIES DOES NOT REQUIRE DISMISSAL ....................... 20

        A.    Exhaustion Of Remedies Here Is Not Jurisdictional....................................... 21

        B.    Even If Exhaustion Were Required As A Prudential Matter, Several Recognized Exceptions Apply To Schwab's Suit.......................................... 22

        C.    Schwab's Interests In Immediate Judicial Review Outweigh FINRA's Concerns Over Efficiency Or Administrative Autonomy.............................. 24

CONCLUSION.......................................................................................................... 25

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Abbott Labs. v. Gardner,*
   387 U.S. 136 (1967), *overruled on other grounds, Califano v. Sanders,* 430 U.S. 99
   (1977) ................................................................................................................ 13, 18

*Aircraft & Diesel Equip. Corp. v. Hirsch,*
   331 U.S. 752 (1947) ................................................................................................ 23

*Alascom, Inc. v. ITT North Elec. Co.,*
   727 F.2d 1419 (9th Cir. 1984) ................................................................................ 23

*Alton v. NASD, Inc.,*
   No. C-94-0618 MHP, 1994 WL 443460 (N.D. Cal. July 26, 1994) .................... 22, 23

*Am. Auto. Mfrs. Ass'n v. Mass. Dep't of Env. Prot.,*
   163 F.3d 74 (1998) ................................................................................................ 17

*Arbaugh v. Y&H Corp.,*
   546 U.S. 500 (2006) ................................................................................................ 22

*Ass'n of Am. Med. Colls. v. United States,*
   217 F.3d 770 (9th Cir. 2000) ............................................................................ 18, 19

*Ass'n of Inv. Brokers v. SEC,*
   676 F.2d 857 (D.C. Cir. 1982) ................................................................................ 23

*AT&T Mobility v. Concepcion,*
   131 S. Ct. 1740 (2011) ......................................................... 1, 3, 4, 5, 6, 16, 24

*Avocados Plus Inc. v. Veneman,*
   370 F.3d 1243 (D.C. Cir. 2004) ........................................................................ 21, 22

*Bowen v. Massachusetts,*
   487 U.S. 879 (1988) ................................................................................................ 13

*California ex rel. Lockyer v. Dynegy, Inc.,*
   375 F.3d 831 (9th Cir. 2004), *opinion amended on denial of reh'g,* 387 F.3d 966 (9th
   Cir. 2004) ................................................................................................................ 8

*Clark v. Time Warner Cable,*
   523 F.3d 1110 (9th Cir. 2008) ................................................................................ 16

*Cleantech Innovations, Inc. v. NASDAQ Stock Mkt., LLC,*
   No. 11 CIV.09358 KBF, 2012 WL 345902 (S.D.N.Y. Jan. 31, 2012) .................... 16

*Comm. On Judiciary, U.S. House of Representatives v. Miers,*
    558 F. Supp. 2d 53 (D.D.C. 2008) .................................................................. 12

*CompuCredit Corp. v. Greenwood,*
    132 S. Ct. 665 (2012) ............................................................ 1, 4, 6, 16, 24

*Credit Suisse First Boston Corp. v. Grunwald,*
    400 F.3d 1119 (9th Cir. 2005) ............................................ 1, 3, 12, 19

*Davis v. Passman,*
    442 U.S. 228 (1979) .................................................................................... 11

*Fiero v. Fin. Indus. Regulatory Auth., Inc.,*
    660 F.3d 569 (2d Cir. 2011) .................................................................. 3, 12

*First Jersey Sec., Inc. v. Bergen,*
    605 F.2d 690 (3d Cir. 1979) .......................................... 14, 17, 21, 23, 24

*Free Enterprise Fund v. Public Co. Accounting Oversight Bd.,*
    130 S. Ct. 3138 (2010) ........................................................ 14, 15, 16, 17

*FTC v. Standard Oil Co. of California,*
    449 U.S. 232 (1980) .................................................................................... 19

*Gov't Emp. Ins. Co. v. Dizol,*
    133 F.3d 1220 (9th Cir. 1998) .................................................................. 20

*Gully v. First Nat. Bank,*
    299 U.S. 109 (1936) ...................................................................................... 8

*Gupta v. SEC,*
    796 F. Supp. 2d 503 (S.D.N.Y. 2011) ........................................ 15, 16, 17

*Gustafson v. Strangis,*
    572 F. Supp. 1154 (D. Minn. 1983) ...................................................... 13

*Hawkins v. NASD, Inc.,*
    149 F.3d 330 (5th Cir. 1998) ...................................................................... 9

*Hunt v. Wash. State Apple Adver. Comm'n,*
    432 U.S. 333 (1977) ............................................................................ 10, 11

*In re Series 7 Broker Qualification Exam Scoring Litigation,*
    548 F.3d 110 (D.C. Cir. 2008) ................................................................ 14

*In the Matter of Dep't of Enforcement v. Shvarts,*
    Comp. No. CAF980029, 2000 WL 768524, (June 2, 2000) ...................... 6

*Jablon v. Dean Witter & Co.*,
    614 F.2d 677 (9th Cir. 1980) ............................................................................ 13

*Karsner v. Lothian*,
    532 F.3d 876 (D.C. Cir. 2008) .......................................................................... 2, 3

*KPMG, LLC v. SEC*,
    289 F.3d 109 (D.C. Cir. 2002) ............................................................................ 5

*Mathews v. Diaz*,
    426 U.S. 67 (1976) ...................................................................................... 23, 24

*Maxon Marine, Inc. v. Director, OWCP*,
    39 F.3d 144 (7th Cir. 1994) ............................................................................... 13

*McBride Cotton & Cattle Corp. v. Veneman*,
    290 F.3d 973 (9th Cir. 2002) ........................................................................ 21, 24

*McCarthy v. Madigan*,
    503 U.S. 140 (1992), *superseded by statute on other grounds as stated in Booth v.
    Churner*, 532 U.S. 731 (2001) ................................................................. 22, 23, 24

*McNary v. Haitian Refugee Center, Inc.*,
    498 U.S. 479 (1991) .......................................................................................... 15

*Md. Cas. Co. v. Pac. Coal & Oil Co.*,
    312 U.S. 270 (1941) .......................................................................................... 18

*MedImmune, Inc. v. Genentech, Inc.*,
    549 U.S. 118 (2007) .......................................................................................... 15

*Merrill Lynch, Pierce, Fenner & Smith, Inc. v. NASD, Inc.*,
    616 F.2d 1363 (5th Cir. 1980) ........................................................................ 22, 23

*Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Nixon*,
    210 F.3d 814 (8th Cir. 2000) .......................................................................... 9, 10

*Olde Discount Corp. v. Tupman*,
    805 F. Supp. 1130 (D. Del. 1992), *aff'd*, 1 F.3d 202 (3d Cir. 1993) .................... 10, 23

*Partnership Exchange Securities Co. v. Nat'l Ass'n of Sec. Dealers, Inc.*,
    169 F.3d 606 (9th Cir. 1998) .............................................................................. 14

*PAZ Sec., Inc. v. SEC*,
    494 F.3d 1059 (D.C. Cir. 2007) ............................................................................ 5

*PTR, Inc. v. SEC*,
    159 F. App'x 338 (3d Cir. 2005) ........................................................................... 5

*Reed Elsevier, Inc. v. Muchnick,*
    — U.S. —, 130 S. Ct. 1237 (2010) ........................................................ 21

*Rekhi v. Wildwood Indus., Inc.,*
    61 F.3d 1313 (7th Cir. 1995) ........................................................... 13

*Sacks v. Office of Foreign Assets Control,*
    466 F.3d 764 (9th Cir. 2006) ........................................................... 18

*Sacks v. SEC,*
    648 F.3d 945 (9th Cir. 2011) ............................................................. 3

*Samuels v. Mackell,*
    401 U.S. 66 (1971) ..................................................................... 12

*Sparta Surgical Corp. v. NASD, Inc.,*
    159 F.3d 1209 (9th Cir. 1998) ......................................... 8, 9, 11, 13, 14

*Std. Inv. Chartered, Inc. v. Nat'l Ass'n of Sec. Dealers, Inc.,*
    — S. Ct. —, No. 11-381, 2012 WL 117816 (Dec. 6, 2011) ..................... 3

*Steel Co. v. Citizens for a Better Env't,*
    523 U. S. 83 (1998) .................................................................... 22

*Stormans v. Selecky,*
    586 F.3d 1109 (9th Cir. 2009) ........................................................ 18

*Swirsky v. NASD,*
    124 F.3d 59 (1997) ................................................................. 22, 23

*Thomas v. Anchorage Equal Rights Comm'n,*
    220 F.3d 1134 (9th Cir. 1999) ................................................... 17, 18

*Thunder Basin Coal Co. v. Reich,*
    510 U.S. 200 (1994) ................................................................... 14

*Touche Ross & Co. v. Redington,*
    442 U.S. 560 (1979) ................................................................... 11

*Ukiah Valley Medical Center v. Federal Trade Commission,*
    911 F.2d 261 (9th Cir. 1990) ........................................................ 19

*Union Pac. R. Co. v. Brotherhood of Locomotive Eng'rs & Trainmen Gen. Comm. Of
Adjustment, Cent. Region,*
    130 S. Ct. 584 (2009) ................................................................. 21

*United States v. Elrod,*
    627 F.2d 813 (7th Cir. 1980) ......................................................... 17

*Upton v. SEC,*
    75 F.3d 92 (2nd Cir. 1996)..................................................................................... 5

*US West Commc'ns v. MFS Intelenet, Inc.,*
    193 F.3d 1112 (9th Cir. 1999)................................................................................ 18

*Van Ness Townhouses v. Mar Indus. Corp.,*
    862 F.2d 754 (9th Cir. 1988)........................................................................... 15, 18

*Watson v. Proctor (In re Watson),*
    161 F.3d 593 (9th Cir. 1998)................................................................................ 10

*Webster v. Doe,*
    486 U.S. 592 (1988).............................................................................................. 13

*Winter v. California Medical Review, Inc.,*
    900 F.2d 1322 (1989)........................................................................................... 19

## STATUTES

5 U.S.C.
    §704.................................................................................................................... 13

15 U.S.C.
    §78aa............................................................................................................... 8, 9
    §78s(c)................................................................................................................ 3
    §78s(d)(2).......................................................................................................... 4
    §78s(e)............................................................................................................. 23
    §78y................................................................................................................ 14
    §78y(a)(1).......................................................................................................... 4

28 U.S.C. §1331 .................................................................................................. 13
    § 2201.............................................................................................................. 12

## OTHER AUTHORITIES

2 Richard J. Pierce, Jr., *Administrative Law Treatise*, §15.11 (5th ed. 2010) ............................. 20

2 Richard J. Pierce, Jr., *Administrative Law Treatise*, §15.12 (5th ed. 2010) ............................. 17

17 C.F.R.
    §201.110............................................................................................................ 4
    §201.360(a) ....................................................................................................... 4
    §201.360(d) ....................................................................................................... 4
    §201.411........................................................................................................... 4
    §201.420-421 .................................................................................................... 4

33 Charles Alan Wright & Charles H. Koch, Jr., *Federal Practice and Procedure* §8299 (3d
    ed. 2006)........................................................................................................... 13

13D Charles Alan Wright, et al., *Federal Practice and Procedure* §3569 (3d ed. 2008) ........ 9, 10

Brief of Defendants-Appellants NASD, Inc., *(filed in Austin Mun. Sec. Inc. v. NASD*, 757 F.2d 676, No. 84-1237 (5th Cir. June 11, 1984) ................................................... 3

Brief of Respondent NASD, 2011 WL 6094898 (filed in *Std. Inv. Chartered, Inc. v. Nat'l Ass'n of Sec. Dealers, Inc.*, — S. Ct. —, No. 11-381, 2012 WL 117816 (Dec. 6, 2011) ........ 3

FINRA Rule 2268 ........................................................................................................... 7

FINRA Rule 2268(d)(3) .......................................................................... 1, 6, 7, 10, 19

FINRA Rule 9231(b) ..................................................................................................... 4

FINRA Rule 9311(a) ..................................................................................................... 4

FINRA Rule 9351 .......................................................................................................... 4

FINRA Rule 9370(a) ..................................................................................................... 4

FINRA Rule 12204 ........................................................................................................ 1

FINRA Rule 12206 ........................................................................................................ 7

NASD Rule 3110(f) ....................................................................................................... 7

NASD Rule 3110(f)(4) ................................................................................................... 7

NASD Rule 3110(f)(4)(C) .......................................................................................... 1, 6

Richard J. Pierce, Jr., *Administrative Law Treatise*, 2012 Supp., §14.6 (2012) ........................... 17

SEC Release No. 34-26805, 54 Fed. Reg. 21,144 (May 10, 1989) ................................. 7

SEC Release No. 34-42160, 64 Fed. Reg. 66,681 (SR-NASD-98-74) (November 29, 1999) ....... 7

**INTRODUCTION**

This case presents a real, ripe and important federal question:  Can an entity exercising delegated federal regulatory authority interpret one of its rules in a manner that is in direct conflict with a federal statute?  Charles Schwab & Co. ("Schwab") brought this action because the FINRA Enforcement staff claimed Schwab violated FINRA rules when it amended its customer arbitration agreement to include a class action waiver provision.  As explained below and in its pending motion for a preliminary injunction, Schwab asserts that FINRA's interpretation of its rules is in direct conflict with the Federal Arbitration Act. ("FAA").

There is nothing hypothetical or speculative about this dispute.  FINRA commenced a disciplinary proceeding against Schwab on February 1 seeking sanctions and an order requiring Schwab to remove the provision from its customer contracts.  On February 21, Schwab was sued by a putative class of customers in an action in San Francisco Superior Court, *Kamberian v. Charles Schwab & Co.*, *infra*, that is subject to application of the class action waiver.  If Schwab seeks to enforce the waiver to dismiss the class action, FINRA has told Schwab that it will initiate further proceedings and seek more sanctions and other discipline.  But, if Schwab fails to enforce the waiver provision and allows the *Kamberian* action to go forward on a class basis, it may lose its right to compel arbitration.

When a federal regulation clashes with a federal statute, but the regulator refuses to follow the mandate of the statute, a federal question is at hand.  Here, FINRA's novel and unprecedented interpretation of FINRA Rule 2268(d)(3) and its identical predecessor, NASD Rule 3110(f)(4)(C), is in direct conflict with the FAA as interpreted by the United States Supreme Court in the *AT&T Mobility* and *CompuCredit* cases discussed below.[1]  Because FINRA rules are adopted pursuant to the Securities Exchange Act of 1934 ("Exchange Act") they have the force of federal law and preempt contrary state laws. *Credit Swiss First Boston v. Grunwald, infra.*  Supreme Court precedent teaches

---

[1] The FINRA Rules in question are far from models of clarity.  In relevant part they state that "[n]o predispute arbitration agreement shall include any condition that…limits the ability of a party to file any claim in court under the rules of the forums in which a claim may be filed under the agreement." FINRA never informed the SEC or firms under its jurisdiction that it regarded a class action procedural device to be a "claim," nor did it inform the SEC or broker dealers that it had somehow preserved a customer's right to prosecute class actions in court. FINRA's only clear rulemaking on the subject was its disclaimer of jurisdiction of class action arbitrations and its prohibition on compelling class actions to FINRA arbitration. *See* FINRA Rule 12204.

1    that the FAA expresses a strong federal policy in favor of arbitration that cannot be sidestepped by

2    prohibitions on class action waivers or by other federal rules or regulations except those expressing a

3    clear mandate to exempt certain actions from the FAA.  No such mandate exists here.  That is why a

4    declaratory judgment affirming the primacy of the FAA is clearly in order here.

5         FINRA's potpourri of meritless Rule 12 theories brought to derail this action evidences a goal of

6    delay.  FINRA evidently would prefer to mire Schwab in a multi-layer, multi-year, multi-action

7    disciplinary quagmire on its "home court," rather than have the threshold issues of federal law decided

8    by a federal court.  In doing so, FINRA concedes more than it argues.  It concedes that the disciplinary

9    process will take a number of years; it does not dispute its intention to initiate additional actions against

10   Schwab if it enforces the waiver provision while the administrative process grinds along;  and it does not

11   even concede that Schwab *is entitled* to a ruling from any of its disciplinary panels on the threshold

12   question of the enforceability of the rules in question.   And, not surprisingly, FINRA takes a

13   schizophrenic and self-serving view of its own status – it concedes its exercise of federal regulatory

14   power, it concedes its rules have the force of federal law, it concedes that it has sought and obtained

15   immunity from suit over its disciplinary actions *because* it exercises delegated federal authority and, yet,

16   it concocts an argument that Schwab's decades-old "membership" in NASD accords FINRA some kind

17   of right to regulate in conflict with federal law (a right no federal agency would dare to assert).

18        For these reasons and those set forth below, this motion to dismiss should be denied.  We

19   begin with a discussion of the background facts and procedural history of this matter.

20                    **FACTUAL AND PROCEDURAL BACKGROUND**

21        **A.      The Nature Of FINRA's Authority.**

22        FINRA is the current name of the National Association of Securities Dealers ("NASD"), and

23   has been a self-regulatory organization ("SRO") registered with the Securities and Exchange

24   Commission ("SEC") since 1939.  Def.'s Motion to Dismiss ("Mot.") at 2; Compl. ¶¶7-8.  ("FINRA"

25   encompasses its current form and, in some cases, its prior form as NASD.)

26        FINRA does not contest that it is now the only SRO registered with the SEC as a national

27   securities association.  *See Karsner v. Lothian*, 532 F.3d 876, 880 (D.C. Cir. 2008).  Nor does FINRA

28   contest that all U. S. broker-dealers have no choice but to become FINRA members if they wish to

1   conduct securities business with the public. *See Fiero v. Fin. Indus. Regulatory Auth., Inc.*, 660 F.3d

2   569, 571 (2d Cir. 2011) (citing *Sacks v. SEC*, 648 F.3d 945, 948 (9th Cir. 2011)).

3       FINRA admits that it is a key part of a comprehensive system adopted by Congress for

4   regulating the securities markets. Mot. at 2; Brief of Respondent NASD, 2011 WL 6094898, at *3

5   (filed in *Std. Inv. Chartered, Inc. v. Nat'l Ass'n of Sec. Dealers, Inc.*, — S. Ct. —, No. 11-381, 2012

6   WL 117816 (Dec. 6, 2011)).   FINRA also admits that it wields power delegated by Congress to

7   conduct "the daily oversight and administration of the securities markets, under the close supervision

8   of the SEC." Mot. at 2; Brief of Respondent NASD, 2011 WL 6094898, at *3 (filed in *Std. Inv.*

9   *Chartered, Inc. v. Nat'l Ass'n of Sec. Dealers, Inc.*, — S. Ct. —, No. 11-381, 2012 WL 117816

10  (Dec. 6, 2011)).   FINRA admits that the SEC must approve all FINRA rules relevant to this dispute

11  before they become effective.   Mot. at 2; *Credit Suisse First Boston Corp.* v. *Grunwald*, 400 F.3d

12  1119, 1130 (9th Cir. 2005); *Karsner*, 532 F.3d at 880 (citing 15 U.S.C. §78s(c)).

13      Every FINRA rule approved by the SEC -- including every rule at issue in this case -- is an

14  expression of federal legislative power and has the force and effect of federal law. *Credit Suisse*, 400

15  F.3d at 1129-32.   Courts have long recognized that FINRA is a quasi-governmental, regulatory entity.

16  FINRA itself frequently takes this position. Brief of Defendants-Appellants NASD, Inc., at 19, *(filed*

17  *in Austin Mun. Sec. Inc. v. NASD*, 757 F.2d 676, No. 84-1237 (5th Cir. June 11, 1984)).

18      **B.      The Supreme Court's Decisions In *AT&T Mobility* And *CompuCredit*.**

19      In the past year, the United States Supreme Court issued two landmark decisions that are

20  central to the resolution of this dispute. Both emphasize the strong federal policies favoring

21  agreements to arbitrate, and both limit the ability of state or federal law to override those policies. In

22  *AT&T Mobility v. Concepcion*, 131 S. Ct. 1740 (2011), the Court held that state statutory or decisional

23  prohibitions on class action waivers, including state court rulings finding such waivers

24  unconscionable per se, are preempted by the Federal Arbitration Act ("FAA") where the contract also

25  calls for individual arbitration.   The Court in *AT&T Mobility* held that a rule "requiring" the

26  availability of classwide proceedings "interferes with fundamental attributes of arbitration and thus

27  creates a scheme inconsistent with the FAA." *Id.* at 1748.

28

In *CompuCredit Corp. v. Greenwood*, 132 S. Ct. 665 (2012), the Court established a high bar to arguments that agreements to arbitrate are unenforceable under a federal statute. The Court held that arbitration agreements must be enforced according to their terms "even when the claims at issue are federal statutory claims, unless the FAA's mandate has been 'overridden by a contrary Congressional command.'" *Id.* at 669 (citation omitted). Under *CompuCredit*, arbitration agreements cannot be found unenforceable under federal statutes or regulations based on implied interpretations of Congressional or agency intent or public policy. Nothing will suffice but a mandate set forth explicitly by Congress in a statute that clearly exempts a claim from arbitration.

*CompuCredit* and *AT&T Mobility* establish a clear rule that mutual agreements to arbitrate containing a class action waiver are enforceable absent an express indication that Congress intended a different result. The FINRA rules at issue here fall dramatically short of reaching this high bar.

## C.   FINRA Enforcement's Disciplinary Process.

FINRA's description of the disciplinary process matches that set forth in Schwab's Complaint. *Compare* Mot. at 7-8 *with* Compl. ¶¶17-20. A Complaint by FINRA Enforcement will be first heard by a FINRA Hearing Panel. FINRA Rule 9231(b). Either side may then appeal the decision to the National Adjudicatory Council ("NAC"). FINRA Rule 9311(a). Once the NAC has rendered its decision, the decision is subject to discretionary review by the FINRA Board. FINRA Rule 9351. The decision is then subject to review by the SEC. 15 U.S.C. §78s(d)(2); FINRA Rule 9370(a); 17 C.F.R. §201.420-421. Either the Commission or a hearing officer appointed by the Commission presides over that appeal. 17 C.F.R. §201.110. If a hearing officer has been appointed, he or she makes an initial decision, which becomes a final order of the Commission unless a party petitions for review by the Commission or the Commission itself chooses to review the initial decision. 17 C.F.R. §201.360(a), (d). On review, the Commission may affirm, modify, remand, or reverse the hearing officer's initial decision. 17 C.F.R. §201.411. After a hearing officer's initial decision has become a final order because no petition was made for Commission review, or after the Commission has reviewed the action and entered a final order, the order *finally* can be appealed to the United States Court of Appeals. 15 U.S.C. §78y(a)(1).

FINRA does not contest that this process can and frequently does take three, four, or even more years to complete. *See, e.g., PAZ Sec., Inc. v. SEC*, 494 F.3d 1059 (D.C. Cir. 2007) (disciplinary action began August 14, 2003 and was decided by appellate court on July 20, 2007); *PTR, Inc. v. SEC*, 159 F. App'x 338 (3d Cir. 2005) (disciplinary action began July 2002 and was decided by appellate court on November 9, 2005); *KPMG, LLC v. SEC*, 289 F.3d 109 (D.C. Cir. 2002) (disciplinary action began December 4, 1997 and was decided by appellate court on May 14, 2002); *Upton v. SEC*, 75 F.3d 92 (2nd Cir. 1996) (disciplinary action began October 21, 1991 and was decided by appellate court on January 18, 1996). Nor does FINRA contest that FINRA officials have no authority under the FINRA Rules to invalidate a FINRA Rule. Compl. ¶20.

**D.     Schwab's Amended Arbitration Agreement And Mutual Class Action Waiver.**

After the Supreme Court's opinion in *AT&T Mobility*, and mindful of FINRA Dispute Resolution's successful arbitration forum and simplified arbitration procedures for small claims, Schwab inserted a mutual class action waiver in the section of its customer agreement dealing with arbitration. Compl. ¶25. The amendment adding the class action waiver read as follows:

> **Waiver of Class Action or Representative Action.** Neither you nor Schwab shall be entitled to arbitrate any claims as a class action or representative action, and the arbitrator(s) shall have no authority to consolidate more than one parties' claims or to proceed on a representative or class action basis. You and Schwab agree that any actions between us and/or Related Third Parties shall be brought solely in our individual capacities. You and Schwab hereby waive any right to bring a class action, or any type of representative action against each other or any Related Third Parties in court. You and Schwab waive any right to participate as a class member, or in any other capacity, in any class action or representative action brought by any other person, entity or agency against Schwab or you. (Declaration of Gilbert R. Serota In Support of Charles Schwab & Co. Inc.'s Opposition to Defendant's Motion to Dismiss ("Serota Decl.") Ex. A at 2-3 (emphasis added))

Schwab sent over 6.8 million copies of the amended account agreement by mail or electronic delivery to its existing account holders, and has included the class action waiver provisions in the customer agreements of accounts opened on or after October 1, 2011. Serota Decl. Ex. B ¶12.

**E.     This Action, FINRA Enforcement's Action And Threats Of Further Discipline, And The Class Action Suit In *Kamberian v. Charles Schwab & Co., Inc.***

On October 20, 2011, FINRA Enforcement notified Schwab it was investigating Schwab's account agreement amendment incorporating the Waiver of Class Action or Representation Action. Serota Decl. ¶4. Schwab set forth its position that the FINRA rules do not prohibit a class action

1  waiver, and that if they did, they would be unenforceable under the recent Supreme Court decisions in

2  *AT&T Mobility* and *CompuCredit. Id.* ¶5.  FINRA Enforcement rejected Schwab's arguments and

3  told Schwab that if it sought to enforce its class action waiver clause of its customer agreement in

4  court during the period of pendency of any disciplinary action it would file, Schwab would face

5  additional disciplinary action. *Id.* ¶6.

6       On February 1, 2012, Schwab filed the present action seeking declaratory and injunctive relief.

7  The same day that Schwab filed this action, FINRA Enforcement initiated a Disciplinary Proceeding

8  against Schwab by filing a Complaint alleging that Schwab's Waiver of Class Action or

9  Representation Action violated FINRA Rule 2268(d)(3) or its predecessor before December 5, 2011,

10  NASD Rule 3110(f)(4)(C).[2] Serota Decl. Ex. B.

11       On February 21, 2012, the day before FINRA filed this Motion to Dismiss, Schwab was sued in

12  San Francisco Superior Court in an action captioned *Kamberian v. Charles Schwab & Co., Inc.*, No.

13  CGC-12-518383. *See* Serota Decl. Ex. C.  That suit is filed as a class action on behalf of all Schwab

14  customers who spoke with one of Schwab's employees on the telephone and had their conversations

15  recorded, allegedly in violation of California law.  *Id.* ¶¶4-5.  As a result of this class action, Schwab

16  faces the choice of either enforcing the class action waiver in its customer agreement and facing further

17  FINRA disciplinary action, or risking waiving its rights to compel individual arbitration.

18      **F.    The FINRA Rules At Issue.**

19       Current FINRA Rule 2268(d)(3), like its predecessor NASD Rule 3110(f)(4)(C), provides that

20  "[n]o predispute arbitration agreement shall include any condition that . . . limits the ability of a party

21  to file any claim in court permitted to be filed in court under the rules of the forums in which a claim

22  may be filed under the agreement."

23

24  [2]FINRA Enforcement has also coupled Rule 2010, FINRA's general prohibition on conduct inconsistent

25  with "just and equitable principles of trade," with the other Rules as an alternative basis for this
proposed disciplinary action. Rule 2010 generally proscribes conduct in violation of other rules or

26  which is unethical business-related conduct. *See In the Matter of Dep't of Enforcement v. Shvarts*,
Comp. No. CAF980029, 2000 WL 768524, at *6 (June 2, 2000) (discussing prior NASD Rule 2110).

27  For the reasons given in subsection B, *supra*, Schwab acted in good faith in adopting the class action
waiver and did not violate any rule that gave fair and reasonable notice that its conduct was not

28  permitted.  Therefore, Rule 2010 does not appear to be a basis for a separate, free-standing violation.

As first proposed in 1988, the predecessor to Rule 3110(f)(4) did not contain the language currently in subsection (C). It was only concerned with giving plaintiffs in arbitration the same remedies they would get in court, such as punitive damages. *See* SEC Release No. 34-26805, 54 Fed. Reg. 21,144 (May 10, 1989). The first time language similar to that in subsection (C) appeared in the rule was in its 1998 proposal. *See* SEC Release No. 34-42160, 64 Fed. Reg. 66,681 (SR-NASD-98-74) (November 29, 1999) (Amendments to Rule 3110(f) Governing Predispute Arbitration Agreements with Customers).  At that time, the proposal indicated that the intent behind the amendment was to protect an individual's ability to pursue a claim in court when it is not eligible for arbitration because it is barred by FINRA's six-year eligibility rule in Rule 12206.

FINRA concedes that in the seven years between the time provision (C) was proposed and took effect neither the SEC nor the NASD ever stated that the Rule was intended to give parties any continued right to pursue class actions in court.

FINRA's Motion cites to 1988 hearings before the House Subcommittee on Telecommunications and Finance of the Committee on Energy and Commerce to create the false and misleading impression that Rule 2268(d)(3) or its predecessor have always been directed at protecting a customer's right to pursue class actions. *See* Mot. at 4.  Untrue.  Because the language at issue was not even proposed *until ten years later* (or adopted until sixteen years later in 2004), nothing in the cited legislative history of Rule 2268 is relevant until 1998, including Schwab's comments on proposed rules in 1988.

Even if the lone reference to class actions in the House Subcommittee hearings were relevant, it does not carry the import FINRA suggests.  The fact that class actions may be more appropriately resolved through the courts is not a command that broker-dealers and their customers should not reach agreement to waive a customer's right to bring a class action.  It merely states that the courthouse is preferable to arbitration for such a procedural device.

1

**ARGUMENT**

**I.**

**THE COURT HAS FEDERAL QUESTION AND DIVERSITY JURISDICTION.**

FINRA asserts that this case should be dismissed because Schwab has failed to assert a statutory basis for subject matter jurisdiction and because Schwab has not asserted a valid cause of action against FINRA. Mot. at 14-16. Both arguments are wrong. As we show below, this Court has federal question jurisdiction based on the Exchange Act and the FAA, and diversity jurisdiction because the parties are diverse and the value of the object of this litigation exceeds the jurisdictional minimum. FINRA's assertions regarding Schwab's cause of action for declaratory and injunctive relief erroneously conflate subject matter jurisdiction and causes of action, which are separate and distinct concepts. Schwab has alleged a proper cause of action for declaratory relief. Courts commonly approach suits for declaratory and injunctive relief like this one as proper suits for judicial review of administrative action.

**A.     This Dispute Arises Under The Laws Of The United States**

FINRA's argument that neither the Exchange Act nor the FAA confer subject matter jurisdiction on this Court is dead wrong. *Id.* at 14-15. In a case cited in FINRA's motion, the Ninth Circuit held that the Exchange Act confers jurisdiction on federal courts for suits based on FINRA's rules. In *Sparta Surgical Corp. v. NASD, Inc.*, the Ninth Circuit held that claims based on violations of FINRA rules create federal subject matter jurisdiction. 159 F.3d 1209, 1211 (9th Cir. 1998).

That result is not surprising or out of step with general principles of federal question jurisdiction. For a case to arise under federal law, "a right or immunity created by the Constitution or laws of the United States must be an element, and an essential one, of the plaintiff's cause of action." *California ex rel. Lockyer v. Dynegy, Inc.*, 375 F.3d 831, 838 (9th Cir. 2004), *opinion amended on denial of reh'g*, 387 F.3d 966 (9th Cir. 2004) (quoting *Gully v. First Nat. Bank*, 299 U.S. 109, 112 (1936)).

Because the Exchange Act confers exclusive jurisdiction on the federal courts under 15 U.S.C. §78aa for suits brought to enforce rules and regulations promulgated under the Exchange Act, and because FINRA rules are promulgated under the Exchange Act with the SEC's direct oversight, the

1    court in *Sparta* easily concluded that federal courts have jurisdiction over suits brought to enforce

2    violations of such rules. 159 F.3d at 1212 (citing *Hawkins v. NASD, Inc.*, 149 F.3d 330, 332 (5th Cir.

3    1998)). The availability of a private cause of action under the SRO Rules is irrelevant to this

4    question. *Id.* at 1212-13. For jurisdictional purposes, it is enough that a question arises under SRO

5    rules that are closely overseen by the SEC and that the Exchange Act conferred jurisdiction on district

6    courts over suits to enforce those rules. *Id.*

7        This action stands on similar jurisdictional footing as *Sparta*. 15 U.S.C. §78aa confers

8    jurisdiction on the courts over suits to enforce SRO rules, so when combined with declaratory

9    judgment, the courts have jurisdiction over a suit seeking a declaration that those rules may not be

10   enforced. Where the district court in *Sparta* had jurisdiction over the suit based on an allegation of a

11   violation of a SRO rule, the Court here has jurisdiction over Schwab's suit based on Schwab's

12   allegation of *no* violation of an SRO rule. In either scenario, the courts have subject matter

13   jurisdiction under the Exchange Act and SRO rules promulgated thereunder.

14       FINRA's approach is incorrect for the separate and independent reason that Schwab's suit also

15   presents a federal question under the FAA. While a number of cases hold that the FAA does not

16   confer federal question jurisdiction on run-of-the-mill suits to compel arbitration or confirm an

17   arbitration award, these cases do not help FINRA here. FINRA ignores the doctrine that "the FAA

18   may create a right, vindication of which invokes federal question jurisdiction." 13D Charles Alan

19   Wright, et al., *Federal Practice and Procedure* §3569 (3d ed. 2008). In *Merrill Lynch, Pierce,*

20   *Fenner, and Smith, Inc. v. Nixon*, the Eighth Circuit upheld a district court's finding that it had

21   jurisdiction over a suit to enjoin a state administrative proceeding because the claims at issue in the

22   proceeding had already been arbitrated. 210 F.3d 814, 817 (8th Cir. 2000). Regarding the

23   jurisdictional issue, the court stated, "[T]he key questions are whether the federal arbitration statutes

24   create some federal right for [the plaintiff], and whether the actions of the [defendant] in this case

25   would interfere with that right. We believe that the answer to both questions is yes." *Id.*

26       Because federal courts have jurisdiction over suits to enjoin state officials from interfering

27   with such federal rights, the court in *Nixon* held that the complaint alleging interference with the

28   plaintiff's rights under the FAA "properly present[ed] a federal question and that the district court had

subject-matter jurisdiction to hear it." *Id.*   Federal question jurisdiction has also been found in a suit to enjoin a state administrative action against a securities broker by a customer, based on the broker's claim that such suit was preempted by the FAA and an arbitration clause in its customer agreement. *Olde Discount Corp. v. Tupman*, 805 F. Supp. 1130, 1132 (D. Del. 1992), *aff'd*, 1 F.3d 202 (3d Cir. 1993).[3]

Under the rationale of these cases, when a party's statutory right to the enforceability of an arbitration agreement is being frustrated by a proceeding in another venue, the effect on the FAA's mandate presents a federal question over which the federal courts have subject matter jurisdiction. Schwab's suit presents just such a dispute.   FINRA's interpretation of Rule 2268(d)(3) cannot be allowed because it would prevent Schwab from enforcing the class action waiver in its arbitration agreement in disputes with its customers as now expressly mandated under the FAA. *See Watson v. Proctor (In re Watson)*, 161 F.3d 593, 598 (9th Cir. 1998) ("A federal regulation in conflict with a federal statute is *invalid* as a matter of law.").   Because FINRA's actions impinge upon the statutory guarantee that arbitration agreements will be enforceable like other contracts, this suit presents a dispute arising under federal law and this court has federal question subject matter jurisdiction.

**B.     The Parties Are Diverse And The Amount In Controversy Unquestionably Exceeds The Jurisdictional Minimum.**

FINRA does not dispute that Schwab and FINRA are diverse, but only complains that the Court does not have jurisdiction because Schwab has not "explain[ed] how the amount in controversy exceeds $75,000 in this suit." Mot. at 15 n.8.   There are multiple ways in which the value of this suit far exceeds $75,000. "In actions seeking declaratory or injunctive relief, it is well established that the amount in controversy is measured by the value of the object of the litigation." *Hunt v. Wash. State Apple Adver. Comm'n*, 432 U.S. 333, 347 (1977) (citations omitted).   When the object of the suit is the right to be free of regulation, the "value of that right is measured by the losses that will follow

---

[3] Even though both suits also involved the preemptive effect of the Supremacy Clause, the courts' jurisdiction must have rested on the FAA and not the Constitution because the Supremacy Clause only became relevant if the FAA applied; the applicability of rights conferred by the FAA was a prerequisite for the constitutional argument.

1  from the statute's enforcement." *Id.*  Proof of such losses may include evidence of the costs of

2  complying with the regulation. *Id.*

3         Separate and apart from the cost of defending otherwise waived class actions, Schwab faces

4  the possibility of being fined by FINRA for hundreds of thousands or even millions of dollars. See

5  FINRA   Disciplinary   Proceeding   No.   2009020188101   (Jan.   25,   2012),   available   at

6  http://disciplinaryactions.finra.org/viewDocument.aspx?DocNb=28688 (Record of settlement of a

7  disciplinary proceeding against Merrill Lynch, Fenner, & Smith Inc. for avoiding its arbitration

8  responsibilities in which FINRA imposed a fine of $1,000,000.00); see also News Release, FINRA,

9  FINRA Fines Merrill Lynch $1 Million for Failure to Arbitrate Disputes With Employees (Jan. 25,

10  2012), available at http://www.finra.org/Newsroom/NewsReleases/2012/P125455.  Even if Schwab

11  were only required to amend its customer agreement to remove the class action waiver and provide

12  notice of that amendment to its millions of customers, the cost of mailing special notice of this

13  amendment to those of its customers still receiving paper correspondence would alone amount to

14  many times the statutory minimum. See Serota Decl. Ex. B ¶12 (Schwab provided notice of the first

15  class action waiver amendment to over 6.8 million customers electronically or by mail); U.S. Postal

16  Service   Notice   123,   Price   List   Eff.   Jan.   22,   2012,   at   13   (2012),   available   at

17  http://pe.usps.com/cpim/ftp/manuals/dmm300/Notice123.pdf  (lowest  possible  bulk  postage  is

18  fourteen cents per item).

19      **C.**    **Schwab's Cause Of Action Is Recognized and Accepted by Numerous Courts**

20         FINRA argues that this court does not have subject matter jurisdiction because of Schwab's

21  supposed failure "to allege any legally cognizable controversy for which there is a private right of

22  action." Mot. at 14. The argument is based on a faulty premise.  The lack of a cause of action is not a

23  matter affecting a court's subject matter jurisdiction. See *Touche Ross & Co. v. Redington*, 442 U.S.

24  560, 577 (1979) (distinguishing between jurisdiction and a cause of action under the Exchange Act);

25  *Davis v. Passman*, 442 U.S. 228, 239 n.18 (1979) (explaining difference between jurisdiction,

26  standing, causes of action, and remedies). FINRA's conflation of subject matter jurisdiction with a

27  cause of action is especially puzzling given that one of the primary authorities it relies on clearly

28  distinguishes between the two. See *Sparta*, 159 F.3d at 1212-13.

1    Even if this Court nonetheless reaches the cause of action issue, FINRA's argument fails.

2    FINRA tries to portray this matter as a simple dispute over membership rules.  This  argument may

3    have had merit several decades ago, but it ignores the current nature of FINRA's own authority and

4    Schwab's claims.  Given that FINRA membership is now required to do business as a broker dealer in

5    the United States (*see Fiero v. FINRA*, 660 F.3d 569, 571 (2nd Cir. 2011) (citation omitted)), that

6    FINRA exercises delegated federal regulatory authority, and that FINRA rules have the force of

7    federal law, Schwab's suit cannot be equated to a simple contract dispute.  *See Credit Suisse First*

8    *Boston Corp. v. Grunwald*, 400 F.3d 1119, 1129-1132 (9th Cir. 2005).  This case is about a federal

9    regulator's exercise of administrative power in conflict with a clearly interpreted federal statute.

10   Whether or not FINRA is a private entity, its acceptance of a central role in the federal regulatory

11   scheme created by Congress for the securities industry makes it subject to suit in federal court when

12   its regulatory authority is being exceeded.

13   FINRA contends that the Declaratory Judgment Act ("DJA"), 28 U.S.C. § 2201, does not

14   provide Schwab with a cause of action to contest its authority. Wrong again.  A declaratory judgment

15   is "essentially an equitable cause of action."  *Samuels v. Mackell*, 401 U.S. 66, 70 (1971) (quotation

16   omitted).  Some courts have misconstrued the point that the DJA does not create federal jurisdiction to

17   mean that the DJA does not create a cause of action.  *See Comm. On Judiciary, U.S. House of*

18   *Representatives v. Miers*, 558 F. Supp. 2d 53, 78-83 (D.D.C. 2008).  But, these are separate inquiries.

19   Where a suit presents a case or controversy in the constitutional sense and a litigant may point to a

20   source of law that creates its substantive rights, the DJA presents an appropriate cause of action to

21   vindicate those rights. *See id.* at 82.

22   Schwab's rights here arise under the Exchange Act and the FAA, as noted above, and this suit

23   presents a justiciable controversy for the reasons set forth in section III below, so Schwab has

24   presented a cause of action under the DJA. Requesting review of administrative rules by filing a suit

25   for declaratory judgment and injunctive relief is unremarkable:

26       Administrative lawyers use the injunction/declaratory judgment form when there is no
27       statutory form of proceeding.  Some now refer to this as the "general utility" form of
         proceeding.  The complaint is styled in the form of a request that the agency decision be
28       declared contrary to law and that the administrative action be enjoined.  Judges see this

form for what it is — request for review of the administrative action — and they proceed accordingly . . . The general utility form is widely accepted. (33 Charles Alan Wright & Charles H. Koch, Jr., *Federal Practice and Procedure* §8299 (3d ed. 2006) (footnote omitted)).

Federal courts, including the Supreme Court, accept jurisdiction over challenges to administrative action on this basis. In *Bowen v. Massachusetts* and *Webster v. Doe*, the plaintiffs filed suit in district court seeking declaratory and injunctive relief based on administrative agencies' actions even where no statute specifically authorized it. In both cases all courts involved, including the Supreme Court, treated the suits as requests for judicial review of administrative action. *See Bowen v. Mass.*, 487 U.S. 879 (1988); *Webster v. Doe*, 486 U.S. 592 (1988). Other courts have similarly recognized this form of procedure as acceptable for review of administrative action. *See, e.g., Rekhi v. Wildwood Indus., Inc.*, 61 F.3d 1313, 1320 (7th Cir. 1995); *Maxon Marine, Inc. v. Director, OWCP*, 39 F.3d 144, 146 (7th Cir. 1994) (noting that aggrieved persons may "obtain review by filing a suit for injunctive or declaratory relief in federal district court under the general federal-question statute, 28 U.S.C. §1331") (citing 5 U.S.C. §704; *Abbott Labs. v. Gardner,* 387 U.S. 136 (1967)). FINRA's contention that Schwab has no basis for relief must be rejected.

FINRA also argues that there is no private right of action based on its rules and that it is immune to suits based on its regulatory actions. Mot. at 9, 15-16. FINRA has not cited to any authority granting it immunity from injunctive and declaratory relief in suits for judicial review of its administrative actions. Its arguments, and the cases it relies on, are inapplicable. One authority FINRA cites involved suit between two private parties instead of a suit directly against FINRA, and so is distinguishable. *See Jablon v. Dean Witter & Co.*, 614 F.2d 677, 678 (9th Cir. 1980). In another, the basis supporting the plaintiff's common law claims was the NASD's failure to follow its own rules, which is not the basis of Schwab's suit here. *See Sparta*, 159 F.3d at 1211. In a third, the plaintiffs brought suit alleging FINRA failed to appropriately regulate the marketplace and allowed third parties to violate its rules. *See Gustafson v. Strangis*, 572 F. Supp. 1154, 1155 (D. Minn. 1983). Schwab seeks here only a clarification of the scope of its rules and a request that FINRA abide by them, which is materially different from a suit for negligence in regulation. Also, in all of the authority FINRA cites, the suits involved claims for monetary damages, unlike Schwab's suit here.

1     *See, e.g., Partnership Exchange Securities Co. v. Nat'l Ass'n of Sec. Dealers, Inc.*, 169 F.3d 606, 608

2     (9th Cir. 1998) (noting that it and *Sparta* involved suits for damages); *In re Series 7 Broker*

3     *Qualification Exam Scoring Litigation*, 548 F.3d 110, 114 (D.C. Cir. 2008) (noting plaintiffs sought

4     monetary damages).  In fact, in *Partnership Exchange* the court appeared to consciously limit the

5     reach of its holding, taking care to always refer to the immunity it recognized as being protection from

6     monetary damages.  *Partnership Exchange*, 169 F.3d at 608 (affirming dismissal of a suit for money

7     damages because "the NASD is protected by absolute immunity from *money damages*") (emphasis

8     added); *see also Sparta*, 159 F.3d at 1211.[4]

9                                      **II.**

10    **NOTHING IN THE EXCHANGE ACT DEPRIVES THIS COURT OF JURISDICTION.**

11         FINRA ignores both the holding of a case it cites and recent Supreme Court precedent when it

12    contends that Schwab's exclusive route to review should be through administrative channels.  Mot. at

13    10.  As one of FINRA's own authorities attests, district courts retain their jurisdiction over challenges

14    to SRO action until an administrative determination reaches a court of appeals.  *See First Jersey Sec.,*

15    *Inc. v. Bergen*, 605 F.2d 690, 695 (3d Cir. 1979) (citing 15 U.S.C. §78y).  Though some courts have

16    held that the Exchange Act's provisions for agency review terminating at a court of appeals were

17    intended to be exclusive (*see In re Series 7*, 548 F.3d at 114), the Supreme Court has recently clarified

18    the issue and confirmed that district courts retain their jurisdiction if a requirement of pursuing review

19    through administrative channels in the first instance "'could foreclose all meaningful judicial review';

20    if the suit is 'wholly collateral to a statute's review provisions'; and if the claims are 'outside the

21    agency's expertise.'"  *Free Enterprise Fund v. Public Co. Accounting Oversight Bd.*, 130 S. Ct. 3138,

22    3150 (2010) (quoting *Thunder Basin Coal Co. v. Reich*, 510 U.S. 200, 212-13 (1994)).  In *Free*

23

---

24   [4] To the extent that FINRA believes its immunity requires Schwab to undergo the disciplinary
process before seeking judicial review, that argument is better addressed under the rubric of

25   exhaustion of remedies, as FINRA's claims of immunity or lack of private right of action add
nothing to that analysis.  But Schwab notes that even the authorities cited by FINRA as requiring

26   exhaustion of administrative remedies excuse exhaustion as a prerequisite in certain situations,
while FINRA's immunity argument allows for no such exceptions.  *See, e.g., First Jersey Sec., Inc.*

27   *v. Bergen*, 605 F.2d 690, 696 (3d Cir. 1979) (noting that it would not require exhaustion "when the
administrative procedure is clearly shown to be inadequate to prevent irreparable injury" or "when

28   there is a clear and unambiguous statutory or constitutional violation").

*Enterprise*, which involved review procedures modeled after those FINRA offers as a substitute here (*id.* at 3147) the Court found that the district court retained its jurisdiction because the plaintiffs' suit met all three factors. *Id.* at 3151. Schwab's suit here is no different.

First, FINRA procedures do not offer a meaningful path to review. Administrative procedures foreclose meaningful judicial review if they require a litigant to "'bet the farm'" by violating the statute before testing its validity. *Id.* at 3151 (quoting *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 129 (2007)). They also do so where the substance of the litigant's claim in court turns on different considerations and facts than would the substance of the administrative proceeding and where there is no administrative procedure for the litigant to raise such a claim. *Gupta v. SEC*, 796 F. Supp. 2d 503, 513-14 (S.D.N.Y. 2011). FINRA's proffered path to the courts fails for all three of these reasons. Because of the class action that was filed against it, Schwab is already in the untenable position of having to choose whether to "bet the farm" by enforcing its class action waiver and facing further discipline by FINRA, or to not enforce it and potentially lose its right to arbitration entirely. *See Van Ness Townhouses v. Mar Indus. Corp.*, 862 F.2d 754, 758 (9th Cir. 1988) (securities firm waived arbitration by failing to move for arbitration until two years into litigation). Schwab's threshold argument here is a purely legal one that turns on the legislative history of FINRA's rules and the effect of the FAA. FINRA never states that there is a meaningful avenue in its disciplinary proceedings for asserting that a rule is invalid until years of effort and layers of process have been wasted. FINRA argues that Schwab may try to make such an argument, but it concedes that FINRA authorities could not act on it to grant relief. *See* Mot. at 12; *cf. McNary v. Haitian Refugee Center, Inc.*, 498 U.S. 479, 497 (1991) (finding no possibility of meaningful judicial review where litigants' could not present evidence for their claims in the administrative proceeding because it would be irrelevant to the proceeding's purpose).

Second, Schwab's claim here is wholly collateral to the FINRA disciplinary process. In *Free Enterprise*, the Court found the plaintiffs' separation of powers argument was collateral to the review process because it attacked the source of the PCAOB's authority, rather than a specific determination of a violation of a rule. 130 S. Ct. at 3150. In *Gupta*, the court found an equal protection clause claim was collateral because it could succeed even if the plaintiff were guilty of everything the government

1   had alleged. 796 F. Supp. 2d at 513. Schwab's suit here is similarly collateral, because it attacks the

2   source of FINRA and the SEC's authority in the Exchange Act, and may succeed regardless of

3   whether Schwab violated the FINRA rules as they are written. Schwab's argument is that the FAA, as

4   interpreted in *AT&T Mobility* and *CompuCredit*, prevails over any inconsistent statute or regulations

5   absent a clear statutory command to the contrary. There being no such command in the Exchange

6   Act, FINRA's Rules have no authority to thwart the FAA's mandate. Thus, whether Schwab violated

7   FINRA Rules as written is irrelevant to Schwab's FAA claim. But as FINRA concedes, determining

8   whether the text of a Rule was violated is all that FINRA's disciplinary proceedings have the authority

9   to determine. *See* Mot. at 12.

10      Third, Schwab's claims are outside FINRA's disciplinary expertise. The Supreme Court

11   found the SEC did not have any advantage in expertise over the federal courts in deciding "standard

12   questions of administrative law" where such questions did not involve "fact-bound inquiries" or

13   "technical considerations of agency policy." *Free Enterise.*, 130 S. Ct. at 3151 (quotation marks

14   omitted). The *Gupta* court found that the SEC did not have any special expertise with claims based

15   on the retroactivity of a statute or other constitutional issues in part because district courts face such

16   questions much more frequently. 796 F. Supp. 2d at 512. Schwab's claims are likewise well within

17   the competence of this Court and outside FINRA's expertise. This case does not require a fact-

18   intensive inquiry or involve technical, intricate questions of securities regulation that require industry

19   experience to resolve. FINRA also has not demonstrated that FINRA officials have as much

20   experience deciding whether two laws are in conflict as federal judges.[5] FINRA adjudicatory officials

21   do not have any special familiarity with such questions.[6]

---

[5] For this point FINRA cites to a single unpublished case stating that the SEC, not FINRA, "*appears to believe* it has authority and expertise" over constitutional claims. *Cleantech Innovations, Inc. v. NASDAQ Stock Mkt., LLC*, No. 11 CIV.09358 KBF, 2012 WL 345902, at *2 (S.D.N.Y. Jan. 31, 2012) (emphasis added). That case directly contradicts a published opinion of the same court and Supreme Court precedent. *Compare id. with Gupta*, 796 F. Supp. 2d at 512 *and Free Enter.*, 130 S. Ct. at 3151.

[6] FINRA's argument based on the doctrine of primary jurisdiction fails for this same reason. This doctrine counsels that when a case involves technical issues within an agency's area of expertise, the courts should defer to the agency to resolve the issue. *See Clark v. Time Warner Cable*, 523 F.3d 1110, 1114 (9th Cir. 2008). As FINRA admits, *see* Mot. at 13, the doctrine is not jurisdictional, *see id.* at 1114, and in any case it would be nonsensical to apply it here. Primary

(Footnote Cont'd on Following Page)

Though FINRA cites instances where the SEC has entertained due process arguments, *see* Mot. at 12-13, it does not indicate that FINRA hearing officers or panels have decided such issues. This is significant, because Schwab faces up to three levels of review within FINRA before it even reaches the SEC. *See* Mot. at 7.  Pointing to isolated instances when the SEC has passed on constitutional questions does not mean it has expertise in such areas. The Supreme Court and the *Gupta* court have found it does not.  *Free Enterprise*, 130 S. Ct. at 3151; *Gupta*, 796 F. Supp. 2d at 512.

Because no petition has been presented to a court of appeals (*see First Jersey*, 605 F.2d at 695) and because Schwab's suit meets all three of the criteria in *Free Enterprise*, this Court retains its jurisdiction to hear this case.

## III.

### THERE IS A RIPE AND IMMEDIATE CONTROVERSY.

At different places in its Motion FINRA argues that Schwab's action should be dismissed based on ripeness, finality, standing, and prudential abstention. Mot. at 13-14, 16.  Each of these contentions is insufficient. As FINRA concedes, these doctrines are not entirely distinct, and often overlap or merge into one another. *See* Mot. at 14 n.7; *see also* 2 Richard J. Pierce, Jr., *Administrative Law Treatise*, §15.12 at 1335 (5th ed. 2010) ("Ripeness law tends to overlap with a good deal of contiguous law, including standing, reviewability, exhaustion, and . . . federalism problems of abstention").  At root, FINRA's contentions appear to center on whether Schwab's suit presents enough of an immediate injury to convert an abstract disagreement into a concrete dispute involving more than mere speculation. Mot. at 13-14. It unquestionably does.[7]

_____

(Footnote Cont'd From Previous Page)
jurisdiction properly applies only to a suit between two private parties; where the agency itself is before the court, there is no need for it because the agency gives the court the benefit of its expertise through its briefs. *See United States v. Elrod*, 627 F.2d 813, 817 (7th Cir. 1980).  And because courts must balance the benefits of agency views against the harm from the delay it creates, *see, e.g., Am. Auto. Mfrs. Ass'n v. Mass. Dep't of Env. Prot.*, 163 F.3d 74, 81 (1998), they increasingly use the vehicle of amicus briefing to include an agency in the action, to obviate the need for a stay or dismissal. Richard J. Pierce, Jr., *Administrative Law Treatise*, 2012 Supp., §14.6, at 95 (2012).

[7] Because ripeness appears to be the more appropriate framework here, Schwab responds on that basis, though its analysis applies equally to the issue of standing. *See Thomas v. Anchorage Equal Rights Comm'n*, 220 F.3d 1134, 1139 (9th Cir. 1999).

Ripeness contains both a constitutional and a prudential component. *Thomas v. Anchorage Equal Rights Comm'n*, 220 F.3d 1134, 1138 (9th Cir. 1999) (en banc). For the constitutional inquiry in the context of a declaratory judgment action, courts determine whether the "action is ripe for adjudication by evaluating 'whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.'" *Stormans v. Selecky*, 586 F.3d 1109, 1124 (9th Cir. 2009) (quoting *Md. Cas. Co. v. Pac. Coal & Oil Co.*, 312 U.S. 270, 273 (1941)). "[I]t is well-established law that an individual need not await prosecution under a law or regulation before challenging it." *Sacks v. Office of Foreign Assets Control*, 466 F.3d 764, 773 (9th Cir. 2006). The test for ripeness of such suits is whether the plaintiffs have a concrete plan to violate the law, whether authorities have specifically threatened prosecution, and whether there is a history of past prosecution or enforcement. *See id.*; *Thomas*, 220 F.3d at 1139.

Under either analysis, the inquiry here is straightforward. FINRA has explicitly threatened Schwab with additional discipline if Schwab enforces its class action waiver. Serota Decl. ¶6. Schwab is currently facing a class action suit in California state court to which the disputed class action waiver applies. Serota Decl. Ex. C. If Schwab does not enforce its class action waiver now, it risks waiving its right to compel arbitration. *See Van Ness*, 862 F.2d at 758. Schwab filed this suit on the same day it was served with a notice of disciplinary action. Mot. at 7-8. In light of these facts, FINRA cannot credibly contend that this dispute is not of insufficient immediacy.

For the prudential ripeness inquiry, the focus is on "the fitness of the issues for judicial decision and the hardship to the parties of withholding court consideration." *Abbott Labs. v. Gardner*, 387 U.S. 136, 149 (1967), *overruled on other grounds, Califano v. Sanders*, 430 U.S. 99 (1977). The fitness prong is met where "'the issues raised are primarily legal, do not require further factual development, and the challenged action is final.'" *Stormans*, 586 F.3d at 1126 (quoting *US West Commc'ns v. MFS Intelenet, Inc.*, 193 F.3d 1112, 1118 (9th Cir. 1999)). A challenge to a regulation satisfies the hardship prong if the "regulation requires an immediate and significant change in the plaintiffs' conduct of their affairs with serious penalties attached to noncompliance." *Id.* (quoting *Ass'n of Am. Med. Colls. v. United States*, 217 F.3d 770, 783 (9th Cir. 2000)).

The fitness aspect of the prudential ripeness test is met here. No factual development is required at all as there are very few relevant facts and none of them are disputed. Schwab does not contest that it inserted the class action waiver into its agreement, or that it is a broker-dealer subject to FINRA's regulatory oversight. The threshold issue is one of federal law that centers on the effect of the FAA on FINRA's regulations and whether FINRA Rule 2268(d)(3) was intended to apply to class action waivers in light of its legislative history. Both of these disputes are entirely legal.

FINRA appears to rest its hopes on this score on finality (*see* Mot. at 13-14) but its reliance is misplaced for two separate and independent reasons. First, the test for finality is "pragmatic and flexible" and examines whether the agency action "is a definitive statement of an agency's position; whether the action has a direct and immediate effect on the complaining parties; whether the action has the status of law; and whether the action requires immediate compliance with its terms." *Am. Med. Colls.*, 217 F.3d at 780. This inquiry turns on what the relevant agency action is.

Schwab is not seeking review of the decision to investigate Schwab, like the plaintiffs in *Winter v. California Medical Review, Inc.*, 900 F.2d 1322 (1989). Nor is Schwab asking this Court to review FINRA's decision to institute disciplinary proceedings, so *FTC v. Standard Oil Co. of California*, 449 U.S. 232 (1980), and *Ukiah Valley Medical Center v. Federal Trade Commission*, 911 F.2d 261 (9th Cir. 1990) also do not apply. The relevant agency action is FINRA's interpretation of the Rules at issue as being somehow exempt from the FAA. Compl. ¶¶32-33, 39-44. The institution of disciplinary proceedings and threat of future discipline illustrate the immediacy of Schwab's concerns, but they do not change the finality of the rules.

FINRA does not dispute that its Rules are final and enforceable in this sense, nor could it reasonably do so when promulgation of administrative rules is a quintessentially final agency action. *See Standard Oil*, 449 U.S. at 239-40 (noting multiple occasions when the Supreme Court held the issuance of administrative regulations to be final agency action). Because FINRA's Rules have the force of federal law (*see Credit Suisse First Boston Corp. v. Grunwald*, 400 F.3d 1119, 1129-32 (9th Cir. 2005)), they have a direct impact on Schwab's litigation strategy in the class action suit it is defending. Because the rules already have taken effect, they are sufficiently final for this Court to issue a decision interpreting them. The institution of discipline does not and cannot effect the finality

of the FINRA Rule at issue here.  If it could, agencies could destroy the finality of rules merely by taking action under them, and thus bizarrely turn what had been a ripe dispute based on fear of imminent prosecution into one that is unripe because there was an actual prosecution.

Second, FINRA's finality argument is also wrong because the finality inquiry is essentially indistinguishable from exhaustion of remedies.  As explained in section IV below, Schwab need not pursue this suit through administrative procedures.  *See* 2 Pierce, *Administrative Law Treatise,* §15.11 at 1309 ("There is no apparent reason why [exhaustion and finality] doctrines should differ in scope or be subject to different exceptions.").

The second prong of the prudential ripeness test, hardship to the parties of withholding review, is met here for the same reasons set forth above under the constitutional analysis.  Schwab is presently facing a class action.  It faces the choice of enforcing its class action waiver and facing the additional discipline FINRA has threatened or losing its right to arbitrate the class action claims on an individual basis.  This untenable position illustrates that this controversy is fit for—and indeed requires—immediate resolution.[8]

## IV.

## EXHAUSTION OF REMEDIES DOES NOT REQUIRE DISMISSAL

FINRA's arguments regarding exhaustion of remedies are out of place in a motion to dismiss based on subject matter jurisdiction, because there is no jurisdictional requirement of exhaustion anywhere in the Exchange Act.  Even if this Court chooses to entertain FINRA's exhaustion arguments as a prudential matter, they fall flat.  The Supreme Court has instructed that where an individual's interests in prompt adjudication outweigh the institutional interests favoring exhaustion,

---

[8] FINRA's request that this Court exercise its discretion under the Declaratory Judgment Act to decline to hear such actions has no merit.  *See* Mot. at 16 n.9.  The Court's discretion in such matters is channeled through a multi-factor test, and FINRA does not explain how those factors apply here.  *See Gov't Emp. Ins. Co. v. Dizol,* 133 F.3d 1220, 1225 & n.5 (9th Cir. 1998) (listing the factors courts should consider).  Besides, the typical scenario for the exercise of this discretion involves parallel state court proceedings, not parallel administrative proceedings, as reflected in the repeated references in the applicable factors to state court proceedings.  *See id.*  FINRA cites no authority giving courts discretion to decline to hear suits under circumstances like those present here.

1   exhaustion should be excused.  Schwab's action falls within several categories of suits where the

2   courts have previously recognized that this balance tips in favor of the individual, and also justifies

3   excusing exhaustion under its own application of the balancing test.

4   **A.      Exhaustion Of Remedies Here Is Not Jurisdictional.**

5   Exhaustion of remedies may be either jurisdictional or prudential.  *Avocados Plus Inc. v.*

6   *Veneman*, 370 F.3d 1243, 1247-48 (D.C. Cir. 2004).   To be jurisdictional, exhaustion must be

7   required by Congress in a statute. *Id.* at 1247.  But even when a statute calls for exhaustion, the courts

8   presume it is merely a codification of the prudential doctrine and not jurisdictional unless there is

9   "sweeping and direct language," *id.* at 1248 (quotation marks omitted), whereby "Congress states in

10   clear, unequivocal terms that the judiciary is barred from hearing an action until the administrative

11   agency has come to a decision." *Id.* (quotation marks and citation omitted); *see also McBride Cotton*

12   *& Cattle Corp. v. Veneman*, 290 F.3d 973, 980 (9th Cir. 2002).

13   The Supreme Court has noted that courts in the past—including the Supreme Court—have not

14   been sufficiently careful in their use of the term 'jurisdictional.'  *Reed Elsevier, Inc. v. Muchnick*, —

15   U.S. —, 130 S. Ct. 1237, 1243 (2010).  The Court has explicitly tried in a series of recent decisions to

16   rectify this by distinguishing between requirements that affect the courts' jurisdiction and "claim-

17   processing rules" that do not.  *Union Pac. R. Co. v. Brotherhood of Locomotive Eng'rs & Trainmen*

18   *Gen. Comm. Of Adjustment, Cent. Region*, 130 S. Ct. 584, 596 (2009).  The Court has instructed the

19   lower courts and litigants to do the same. *Reed*, 130 S. Ct. at 1244.

20   FINRA's arguments on exhaustion use precisely the type of sloppy terminology the Supreme

21   Court has warned against.  Though FINRA argues exhaustion is a jurisdictional requirement, it does

22   not cite to any statute, much less one with "sweeping and direct" language requiring exhaustion of

23   remedies. *Cf. McBride Cotton*, 290 F.3d at 978-979 (exhaustion statutes are rarely jurisdictional;

24   citing an example of the type of language that would be required to pose a jurisdictional bar).  Nor do

25   any of FINRA's authorities holding that exhaustion of FINRA remedies is a jurisdictional requirement

26   cite a statute for the proposition; the doctrine appears instead to be purely a creation of the courts.

27   *See, e.g., First Jersey Securities, Inc. v. Bergen*, 605 F.2d 690, 695 (3rd Cir. 1979) (requiring

28   exhaustion because the existence of a review procedure "suggests" that the doctrine "should" apply);

1    *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. NASD, Inc.*, 616 F.2d 1363, 1370 (5th Cir. 1980)

2    (same).  Though some decisions FINRA cites use the language of subject matter jurisdiction, such

3    formulations are the type of "unrefined dispositions" the Supreme Court has said are "'drive-by

4    jurisdictional rulings' that should be accorded 'no precedential effect.'" *Arbaugh v. Y&H Corp.*, 546

5    U.S. 500, 511 (2006) (quoting *Steel Co. v. Citizens for a Better Env't*, 523 U. S. 83, 91 (1998)); *see*

6    *Swirsky v. NASD*, 124 F.3d 59, 62 (1997) (after finding the exhaustion doctrine should be applied,

7    characterizing the requirement as depriving it of subject matter jurisdiction and yet nonetheless noting

8    potential exceptions); *Alton v. NASD, Inc.*, No. C-94-0618 MHP, 1994 WL 443460 (N.D. Cal. July

9    26, 1994) (same).  These decisions do not grapple with the modern distinction between jurisdictional

10   and non-jurisdictional exhaustion, and so do not force this Court to decide the exhaustion issue on a

11   jurisdictional basis.  *Cf. Avocados*, 370 F.3d at 1250 (declining to read a prior decision as implying

12   exhaustion was jurisdictional when it was decided before the distinction between jurisdictional and

13   non-jurisdictional exhaustion arose).

> **B.      Even If Exhaustion Were Required As A Prudential Matter, Several Recognized Exceptions Apply To Schwab's Suit.**

15       No precedential authority in this circuit requires exhaustion of SRO remedies, not even as a

16   prudential matter.   But even if this Court were inclined to so hold, this case falls within well-

17   recognized exceptions.   Federal courts have a "virtually unflagging obligation" to exercise the

18   jurisdiction given them." *McCarthy v. Madigan*, 503 U.S. 140, 146 (1992) (quotation marks omitted),

19   *superseded by statute on other grounds as stated in Booth v. Churner*, 532 U.S. 731, 740 (2001).  The

20   Supreme Court has set up an "intensely practical" balancing test for deciding whether exhaustion

21   should be required, one that weighs "the interest of the individual in retaining prompt access to a

22   federal judicial forum against countervailing institutional interests favoring exhaustion."   *Id.*

23   (quotation marks omitted).

24       The Court recognizes certain categories of cases when application of this balancing test will

25   favor the individual's interests.  *Id.*  These categories include (1) when requiring exhaustion "may

26   occasion undue prejudice to subsequent assertion of a court action," as from excessive delay or

27   irreparable harm; and (2) when there is "some doubt" that the agency has the power to grant effective

1   relief, as when the agency "lacks institutional competence to resolve the particular type of issue

2   presented, such as the constitutionality of a statute" or "lack[s] authority to grant the type of relief

3   requested." *McCarthy*, 503 U.S. at 146-48 (internal quotation marks and citations omitted).  FINRA's

4   authorities provide for similar exceptions, and several of them would also excuse exhaustion when a

5   suit presents a clear statutory violation.  *See Swirsky*, 124 F.3d at 63 (listing the *McCarthy*

6   exceptions); *Merrill Lynch v. NASD*, 616 F.2d at 1370 (excusing exhaustion when a litigant shows

7   irreparable harm will result or when there is a clear statutory or constitutional violation); *First Jersey*,

8   605 F.2d at 696 (same); *Alton*, 1994 WL 443460, at *3 (same); *see also Aircraft & Diesel Equip.*

9   *Corp. v. Hirsch*, 331 U.S. 752, 773-74 (1947) (excusing statutorily-required exhaustion when the

10  procedure is inadequate and irreparable harm would result).

11       Schwab's suit need not exhaust FINRA remedies for all three of these reasons.  Requiring

12  exhaustion here would certainly prejudice Schwab.  The FINRA disciplinary process, as FINRA

13  concedes, can last four or more years.[9]  During this time Schwab risks waiving its right to compel

14  arbitration in one or more class action suits, which constitutes irreparable harm.  *Alascom, Inc. v. ITT*

15  *North Elec. Co.*, 727 F.2d 1419, 1422 (9th Cir. 1984) (finding the loss of arbitration rights to be a

16  "serious, perhaps, irreparable" consequence) (quotation marks omitted); *Olde Discount Corp. v.*

17  *Tupman*, 805 F. Supp. 1130, 1141 (D. Del. 1992) (loss of the "federal substantive right to

18  arbitrate . . . constitutes irreparable harm clearly distinguishable from purely economic losses").

19       Nor can Schwab obtain effective relief at the administrative level.  FINRA hearing officers

20  and panels lack experience and competence to decide whether the FAA's mandate prevails over the

21  Exchange Act and SRO rules.[10]  *Cf. Mathews* v. *Diaz*, 426 U.S. 67, 76 (1976) (noting that the

22

23  [9] FINRA offers the alternative of requesting a rulemaking by the SEC. Mot. at 11 n.5 (citing *Ass'n*
    *of Inv. Brokers v. SEC*, 676 F.2d 857, 864 (D.C. Cir. 1982)).  FINRA cites no authority indicating
24  that this procedure is ever a prerequisite for judicial review.  Given the delays involved in agency
    rulemaking, this procedure is unlikely to offer any faster route to review.

25  [10] It is questionable whether even the SEC has competence to decide this question, given that its
26  review of FINRA disciplinary rulings is constrained by statute to determining whether the defendant
    committed the alleged acts, whether the acts violated the Exchange Act sections or FINRA rules
27  alleged, and whether such sections "are, and were applied in a manner, consistent with the purposes
    of" the Exchange Act.  *See* 15 U.S.C. §78s(e).  This does not appear to allow the SEC to overturn a
28  discipline because it is not consistent with the FAA.

1    constitutionality of a statute was beyond the competence of the Secretary of Health, Education, and

2    Welfare).  Under such circumstances, pursuing relief before FINRA would be an "idle act." *McBride*

3    *Cotton*, 290 F.3d at 982 (finding exhaustion futile where the agency lacked authority to resolve the

4    plaintiffs' claims).

5         Finally, under the Supreme Court's recent decisions in *AT&T Mobility* and *CompuCredit*,

6    FINRA's Rules are in clear violation of the FAA's mandate.  Under the authority FINRA itself cites,

7    where the statutory violation is clear, there is no need to divert a litigant to administrative review in

8    the first instance. *See First Jersey*, 605 F.2d at 696.

9

10   **C.    Schwab's Interests In Immediate Judicial Review Outweigh FINRA's Concerns**
          **Over Efficiency Or Administrative Autonomy.**

11        Leaving aside the categories of cases where the Supreme Court has excused exhaustion in the

12   past, application of the Supreme Court's balancing test here also indicates exhaustion is not necessary

13   because Schwab's individual interests outweigh FINRA's institutional interests.  On the individual

14   side, Schwab's interests are simple and compelling.  Schwab seeks prompt resolution of the purely

15   legal issue involved here, so that it may determine how to proceed in the class action suit it is

16   currently defending and in any others that may be filed, and avoid the irreparable injury of losing its

17   right to arbitrate.  On the institutional side, the Supreme Court has recognized two types of interests

18   relevant to the analysis.  *See McCarthy*, 503 U.S. at 145-46.  First, exhaustion helps protect

19   administrative authority, particularly when agency discretion or expertise is involved, by allowing an

20   agency to correct its own errors and preventing "'frequent and deliberate flouting of administrative

21   processes" that could weaken an agency's effectiveness. *Id.* at 145.  Second, exhaustion may promote

22   judicial efficiency by allowing an agency to correct its errors or providing a factual record useful for

23   later judicial review. *Id.*  Neither concern has much weight here.

24        First, Schwab's suit does not implicate FINRA's discretion and expertise, since the question is

25   not factual or technical, but a purely legal question outside FINRA's special industry expertise.  As

26   explained above, FINRA does not have the power to grant the relief Schwab seeks, so there is little

27   chance of the agency correcting its own errors here.  Schwab's claim here involving the FAA is also

28   unusual, so it does not blaze a trail for respondents in other disciplinary actions to follow.

1    Second, requiring exhaustion here would destroy judicial efficiency, not promote it.  There are

2  no facts to develop that might assist judicial review.  Requiring exhaustion of the five potential levels

3  of review (FINRA Hearing Panel, NAC, FINRA Board, SEC hearing officer, and SEC) is a pointless

4  waste of time and money. This suit would still wind up in federal court at the end of this process many

5  years from now, with no additional clarity or necessary factual record to show for it.

6    This case presents a classic situation where requiring exhaustion would not serve the purposes

7  of the doctrine.  The Court should proceed directly to the merits of this case.

8                                       **CONCLUSION**

9    For the foregoing reasons, this Court should DENY FINRA's Motion to Dismiss.

10  Dated: March 7, 2012                          ARNOLD & PORTER LLP

11

12                                          By:  _____/s/ Gilbert R. Serota_____

13                                               GILBERT R. SEROTA

14                                          Attorneys for Plaintiff CHARLES SCHWAB &
                                            CO., INC.

15

16

17

18

19

20

21

22

23

24

25

26

27

28