ARNOLD & PORTER. LLP
GILBERT R. SEROTA (Bar No. 75305)
gilbert.serota@aporter.com
SIMONA A. AGNOLUCCI (Bar No. 246943)
simona.agnolucci@aporter.com
DEBORAH SCHLOSBERG (Bar No. 254621)
deborah.schlosberg@aporter.com
3 Embarcadero Center, 7th Floor
San Francisco, California 94111-4024
Telephone: +1 415.471-3100
Facsimile: +1 415.471-3400

LOWELL HAKY (No. 178526)
Vice President and Associate General Counsel
CHARLES SCHWAB & CO., INC.
211 Main Street
San Francisco, CA 94105
Telephone: + 415.471.3100
Facsimile: + 415.471.3400

Attorneys for Plaintiff
CHARLES SCHWAB & CO., INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

CHARLES SCHWAB & CO., INC.,

Plaintiff,

v.

FINANCIAL INDUSTRY REGULATORY AUTHORITY, INC.,

Defendant.

Case No. C 12-00518 EDL

**REPLY IN SUPPORT OF CHARLES SCHWAB & CO., INC.'S MOTION FOR PRELIMINARY INJUNCTION**

Date: April 10, 2012
Time: 10:00 a.m.
Judge: Hon. Elizabeth D. Laporte
Courtroom: E

Trial Date: None Set

# TABLE OF CONTENTS

| | Page |
|---|---|
| INTRODUCTION | 1 |
| ARGUMENT | 3 |
| I. SCHWAB IS LIKELY TO SUCCEED ON THE MERITS OF ITS CLAIM THAT THE NASD AND FINRA RULES AT ISSUE CANNOT BE ENFORCED TO BAR A CLASS ACTION WAIVER. | 3 |
| A. FINRA Has Not Raised A Single Credible Argument Against This Court's Jurisdiction; Its Own Cases Find Federal Question Jurisdiction. | 3 |
| B. FINRA Is Not Immune From A Declaratory Judgment Action Concerning Its Rule Interpretation. | 3 |
| C. The Rules At Issue Have The Force Of Federal Laws And Cannot Be Interpreted In A Manner Contrary to The FAA. | 5 |
| D. Neither The Text Nor The Legislative History Of Rule 2268(d)(3) Shows A "Clear Congressional Command" To Override The Supreme Court's Interpretation Of The FAA. | 5 |
| 1. FINRA Fails To Address Its Tortured Reading Of Rule 2268(d)(3). | 6 |
| 2. FINRA Relies On Irrelevant Legislative History. | 7 |
| 3. The Actual Legislative History Evidences No Intent To BarWaivers. | 8 |
| 4. FINRA's Reliance On The SEC's Approval Of The Rules Ignores FINRA's Failure To Identify The Supposed Purpose Of The Rule. | 11 |
| II. SCHWAB WILL SUFFER IRREPARABLE HARM IN THE ABSENCE OF INJUNCTIVE RELIEF. | 12 |
| III. FINRA HAS FAILED TO SHOW THAT IT WILL SUFFER ANY HARM IF INJUNCTIVE RELIEF IS GRANTED. | 14 |
| IV. IT IS IN THE PUBLIC INTEREST FOR THIS MATTER TO BE RESOLVED EXPEDITIOUSLY BY A COURT OF COMPETENT JURISDICTION. | 15 |
| CONCLUSION | 15 |

# TABLE OF AUTHORITIES

Page(s)

## Cases

*AT&T Mobility v. Concepcion,* 131 S. Ct. 1740 (2011) 5

*Austin Mun. Sec., Inc. v. NASD, Inc.*, 757 F.2d 676 (5th Cir. 1985) 4

*Barbara v. N.Y. Stock Exch., Inc.*, 99 F.3d 49 (2d Cir. 1996) 3, 4

*Caplan v. Fellheimer Eichen Braverman & Kaskey*, 68 F.3d 828 (3d Cir. 1995) 13

*CompuCredit Corp. v. Greenwood*, 132 S. Ct. 665 (2012) 6, 10, 11

*Credit Suisse First Boston Corp.* v. *Grunwald*, 400 F.3d 1119 (9th Cir. 2005) 5

*D'Alessio v. N.Y. Stock Exch., Inc.*, 258 F.3d 93 (2d Cir. 2001) 3, 5

*Dotster, Inc. v. Internet Corp. for Assigned Names & Nos.*, 296 F. Supp. 2d 1159 (C.D. Cal. 2003) 13

*Eyak Native Village v. Exxon Corp.*, 25 F.3d 773 (9th Cir. 1994) 6

*Fiero v. FINRA*, 660 F.3d 569 (2d Cir. 2011) 5

*French v. First Union Sec.*, 209 F. Supp. 2d 818 (M.D. Tenn. 2002) 7

*FTC v. Standard Oil Co. of Cal.*, 449 U.S. 232 (1990) 14

*Kolev v. Euromotors West/The Auto Gallery*, 658 F.3d 1024 (9th Cir. 2011) 10

*Lesch v. Chicago & E. Ill. R.R. Co.*, 279 F. Supp. 908 (N.D. Ill. 1968) 6

*Lewis v. UBS Fin. Services Inc.*, No. C 10-04867 SBA, —F. Supp. 2d—, 2011 WL 4727795 (N.D. Cal. Sept. 30, 2011) 7

*Madden v. Cowen & Co.*, 576 F.3d 957 (9th Cir. 2009) 6, 7

*McBride Cotton and Cattle Corp. v. Veneman*, 290 F.3d 973 (9th Cir. 2002) 3

*Peoples v. Fischer*, No. 11 Civ. 2694(SAS), 2011 WL 6057825 (S.D.N.Y. Dec. 1, 2011) 4

*Pulliam v. Allen*, 466 U.S. 522 (1984) 4

*Salt Lake Tribune Publ'g Co. v. AT&T Corp.*, 320 F.3d 1081 (10th Cir. 2003) 13

*Sapp v. Kimbrell*, 623 F.3d 813 (9th Cir. 2010) 13

*Scher v. NASD, Inc.*, 386 F. Supp. 2d 402 (S.D.N.Y. 2005) 3, 4

*Souter v. Tatro*, No. 03-CV-6141 CJS, 2004 WL 1574562 (W.D.N.Y. June 21, 2004) 7

*Sparta Surgical Corp. v. NASD, Inc.*, 159 F.3d 1209 (9th Cir. 1998) 3, 5

*Supreme Ct. of Va. v. Consumers Union of U.S., Inc.*, 446 U.S. 719 (1980) 4

*Timbisha Shoshone Tribe v. Salazar*, 697 F. Supp. 2d 1181 (E.D. Cal. 2010) 14, 15

*Trudeau v. Fed. Trade Comm'n*, 456 F.3d 178 (D.C. Cir. 2006) 5

*Woodford v. Ngo*, 548 U.S. 81 (2006) 14, 15

**Statutes**

5 U.S.C. §702 5

15 U.S.C. §1679c(a) 11

15 U.S.C. §1679f(a) 11

**Other Authorities**

*Black's Law Dictionary* (9th Ed. 2009) 6

FINRA Rules
- Rule 12204(d) 7
- Rule 12206 8
- Rule 2268(d)(3) 6

**INTRODUCTION**

FINRA's brief is right about one thing: In order for the FINRA and NASD rules at issue in this case to override the Supreme Court's interpretation of the Federal Arbitration Act in *AT&T Mobility,* FINRA has the burden of showing a "clear Congressional command" to prohibit broker-dealers from entering into class action waivers in their arbitration agreements. FINRA concedes that Congressional intent must be clear and evident from either the text or the legislative history of the rules. FINRA's Opposition to Schwab's Motion for Preliminary Injunction ("Opp.") at 7.

Although it acknowledges the high bar set by the Supreme Court, FINRA fails to show Congressional intent in either permissible way. As to the rules' text, the Court will find *no discussion whatsoever* by FINRA of the actual language of these rules. FINRA does not even quote the full (garbled) text of the rules that it relies on (which is set out, in relevant part, in the footnote below).[1] It also offers no response to the law holding that a class action is not a "claim," and it fails to show any provision in its forum rules where the right of a customer to prosecute a class action in court is preserved. FINRA, therefore, fails to show a "clear" Congressional command to prohibit class action waivers in arbitration contracts evident from the text of the rules.

FINRA's discussion of the legislative history of the rules is equally impotent. It cites only a few lines of legislative history of a predecessor rule that did not even contain the language at issue in this case and which discusses an irrelevant concern -- whether or not FINRA's arbitration forum should host class actions. Opp. at 6 n.3. FINRA's reliance on irrelevant matter is not surprising. As we show from the *relevant* history of the rules, the unavoidable truth is that FINRA never told the SEC (or the public) when it asked for permission to adopt these rules that they were intended to prohibit arbitration agreements containing class action waivers.[2] It is probably for this reason that FINRA devotes most of its brief to regurgitating the meritless arguments in its motion to dismiss.

---

[1] "No predispute arbitration agreement shall include any condition that: limits the ability of a party to file any claim in court permitted to be filed in court under the rules of the forums in which a claim may be filed under the agreement." FINRA Rule 2268(d)(3).

[2] FINRA's apparent motive in contesting jurisdiction and seeking to expand its immunity is to avoid judicial review of its unprecedented interpretation of these rules and allow its unfair practice of "rulemaking by discipline." Under this oft-criticized practice, it is expeditious, but unfair, for FINRA to take a controversial policy position on some act or policy of a broker dealer, claim that an

(Footnote Cont'd on Following Page)

Not only do FINRA's jurisdictional and other arguments fail on the law, the exalted legal status FINRA seeks to establish for itself cannot be countenanced. FINRA's arguments in cases in this district and in the Ninth Circuit successfully established itself as a maker of federal regulation with preemptive power. FINRA cannot, therefore, credibly contend that its rulemaking does not raise a federal question. In fact, the cases its cites on immunity hold that there is federal question jurisdiction where FINRA actions are at issue. FINRA's belittling of this case as a mere private "contract" dispute argument is simply anachronistic. FINRA is now the exclusive SRO for broker-dealers in the United States, such that membership is no longer optional, but mandatory if a firm wishes to do such business. Its rules are now subject to prior approval by the SEC pursuant to the federal securities laws and preempt conflicting state law. How can a dispute about the proper interpretation of FINRA's federal regulations be credibly characterized as a private contract dispute? It cannot.

Finally, FINRA asks this Court to extend its immunity beyond private damages actions to immunity from declaratory and injunctive relief actions for judicial review of its rule interpretations. No Court has ever done so, and this Court should not be the first. This type of immunity does not even exist for federal agencies.

For each of these reasons and those set forth below, FINRA's grounds for opposition to Schwab's motion for a preliminary injunction must be rejected and the injunction should be granted.

(Footnote Cont'd From Previous Page)
ambiguous rule covers the act or policy, and then coerce an individual broker or broker dealer to accede to FINRA's policy at the threat of millions of dollars in sanctions and/or years of costly administrative proceedings. FINRA apparently favors this one-sided approach to the more appropriate practice of promulgating a clear and specific rule and going through the public administrative rulemaking process.

## ARGUMENT

### I. SCHWAB IS LIKELY TO SUCCEED ON THE MERITS OF ITS CLAIM THAT THE NASD AND FINRA RULES AT ISSUE CANNOT BE ENFORCED TO BAR A CLASS ACTION WAIVER.

#### A. FINRA Has Not Raised A Single Credible Argument Against This Court's Jurisdiction; Its Own Cases Find Federal Question Jurisdiction.

FINRA's assertion that "serious questions" about the Court's jurisdiction make it unlikely Schwab will succeed on the merits is wrong. Opp. at 3-4. As set forth in Schwab's Opposition to FINRA's motion to dismiss, the cases FINRA itself cites show that this Court has federal question and diversity jurisdiction. *Sparta Surgical Corp. v. NASD, Inc.*, 159 F.3d 1209, 1211-13 (9th Cir. 1998); *D'Alessio v. N.Y. Stock Exch., Inc.*, 258 F.3d 93, 99-104 (2d Cir. 2001). Schwab has properly pled a ripe claim for judicial review of administrative action under applicable case law and under the Declaratory Judgment Act. Nor has FINRA pointed to any authority that would make an exhaustion requirement jurisdictional. *See McBride Cotton and Cattle Corp. v. Veneman*, 290 F.3d 973, 980 (9th Cir. 2002).

#### B. FINRA Is Not Immune From A Declaratory Judgment Action Concerning Its Rule Interpretation.

FINRA's immunity arguments fail for at least three reasons discussed in this section: (1) FINRA fails to identify any case where a court has granted it immunity against claims for declaratory and injunctive relief involving its rulemaking and interpretation; (2) absolute immunity does not extend to suits for such relief; and (3) FINRA's arguments overreach, since not even federal agencies (from which FINRA draws its power) enjoy the broad scope of immunity that FINRA claims here.

Each case FINRA cites in support of its immunity argument is distinguishable because it involved claims for monetary damages based on FINRA's enforcement actions or alleged failure to properly regulate. *See, e.g.*, *D'Alessio*, 258 F.3d at 98 (suit for compensatory and punitive damages); *Barbara v. N.Y. Stock Exch., Inc.*, 99 F.3d 49, 56-59 (2d Cir. 1996) (court dismissed damages claims based on immunity); *Scher v. NASD, Inc.*, 386 F. Supp. 2d 402, 406 (S.D.N.Y.

2005) (suit for damages based on failure to warn of results of plaintiff perjuring herself in NASD investigation).

Here, Schwab requests a declaratory judgment concerning the interpretation of a rule FINRA promulgated pursuant to its rulemaking authority. This type of action does not raise the policy concerns that underlie the immunity doctrine. This distinction was made clear by one of the first courts to hold that SROs could be immune: "Even though a civil cause of action against [NASD] officers for personal liability is foreclosed, *suits for injunctive or declaratory relief may still be brought*." *Austin Mun. Sec., Inc. v. NASD, Inc.*, 757 F.2d 676, 690 (5th Cir. 1985) (emphasis added).

Second, even if Schwab were suing FINRA in its adjudicatory capacity, a suit for injunctive and declaratory relief would be permitted. The Supreme Court has allowed state judges to be sued under 42 U.S.C. §1983 for injunctive relief, notwithstanding their judicial immunity to suits for damages. *Pulliam v. Allen*, 466 U.S. 522, 541-42 (1984) ("We conclude that judicial immunity is not a bar to prospective injunctive relief against a judicial officer acting in her judicial capacity."). Prosecutors are similarly amenable to suit for injunctive relief, since "[t]he doctrines of absolute and qualified immunity do not apply when a plaintiff seeks prospective injunctive relief only." *Peoples v. Fischer*, No. 11 Civ. 2694(SAS), 2011 WL 6057825, at *3 (S.D.N.Y. Dec. 1, 2011) (citing *Supreme Ct. of Va. v. Consumers Union of U.S., Inc.,* 446 U.S. 719, 736–37 (1980)).

Third, providing FINRA with immunity from a suit like this one would give it *more* protection than federal agencies have. The basis for SRO immunity is that they carry out regulatory activities on behalf of the federal government. *See Austin*, 757 F.2d at 692-93 ("The NASD's actions are more akin to those of the SEC, which has sovereign immunity from damage suits. . . . Although the NASD possesses no sovereign power, we conclude that . . . it requires absolute immunity from civil liability . . .); *Barbara*, 99 F.3d at 59 ("[G]overnment agencies, including the SEC, would be entitled to sovereign immunity from all suits for money damages. As a private corporation, the Exchange does not share in the SEC's sovereign immunity, but its special status and connection to the SEC influences our decision to recognize an absolute immunity from suits for money damages . . .") (citations omitted).

But, federal agency immunity does not extend to claims for non-monetary relief. *See* 5 U.S.C. §702 (1976); *Trudeau v. Fed. Trade Comm'n*, 456 F.3d 178, 186-87 (D.C. Cir. 2006). FINRA's cannot be broader.

**C. The Rules At Issue Have The Force Of Federal Laws And Cannot Be Interpreted In A Manner Contrary to The FAA.**

Immediately after claiming immunity as a quasi-governmental organization, FINRA does an about-face and asserts that the FAA does not apply because Schwab's suit is nothing more than a contract dispute between two private parties. Aside from the incongruity this juxtaposition of arguments creates, the assertion rings hollow in the face of recent decisions that FINRA is not simply a private club. The Second Circuit has acknowledged that membership in FINRA is not voluntary because "[o]ne cannot deal in securities with the public without being a member of FINRA," and that this fact gives FINRA enormous power over the securities market. *Fiero v. FINRA*, 660 F.3d 569, 576 (2d Cir. 2011).

The Ninth Circuit has held that FINRA rules, while nominally those of a private organization, have the force of federal law and preempt inconsistent state laws. *Credit Suisse First Boston Corp.* v. *Grunwald*, 400 F.3d 1119, 1130 (9th Cir. 2005). FINRA's rules are so tightly bound up in the federal government's regulation of the securities market that when they form the basis of a suit, they give rise to federal question subject matter jurisdiction. *Sparta*, 159 F.3d at 1211-13; *D'Alessio*, 258 F.3d at 99-104. FINRA's depiction of itself as a private actor and its assertion that this is a simple contract dispute is belied by the Second Circuit's recent holding in *Fiero* that FINRA cannot sue a broker dealer in federal or state court to enforce fines based on its rules of membership because the SEC has not delegated such power to FINRA. *Fiero*, 660 F.3d at 577. The assertion that this suit is merely one based on a private contract strains credulity.

**D. Neither The Text Nor The Legislative History Of Rule 2268(d)(3) Shows A "Clear Congressional Command" To Override The Supreme Court's Interpretation Of The FAA.**

For the FINRA and NASD rules at issue in this case to override the Supreme Court's interpretation of the Federal Arbitration Act in *AT&T Mobility v. Concepcion,* 131 S. Ct. 1740 (2011) FINRA has the burden of showing a "clear Congressional command" to prohibit broker-

dealers from entering into class action waivers with their customers. *CompuCredit Corp. v. Greenwood*, 132 S. Ct. 665, 669 (2012). FINRA concedes that this Congressional intent must be evident from either the text or the legislative history of the rules. Opp. at 6-9. FINRA fails to show such intent.

**1. FINRA Fails To Address Its Tortured Reading Of Rule 2268(d)(3).**

There is not a single sentence in FINRA's Opposition that analyzes the text of the provision it contends regulates class action waivers in arbitration contracts, *i.e.*, FINRA Rule 2268(d)(3). The obvious reason for this glaring omission is that the text of 2668(d)(3) does not clearly bar a member from adopting a class action waiver provision in its arbitration agreement.

The rule provides, "No predispute arbitration agreement shall include any condition that: limits the ability of a party to file any claim in court permitted to be filed in court under the rules of the forums in which a claim may be filed under the agreement."[3] The rule addresses substantive "claims." It makes no mention of a claimant's right to employ the procedural device known as a class action in court. A "claim" is defined as a substantive right to pursue a remedy for an alleged wrong. *Black's Law Dictionary* (9th Ed. 2009). The ability to participate in a class action is not a "claim," but a procedural device that permits a representative individual to pursue certain claims on behalf of others, subject to prior approval of the court. FINRA does not argue otherwise and it cannot credibly do so. Numerous authorities hold that a class action does not create or protect claims, in only provides a procedural mechanism to enforce them. *See Eyak Native Village v. Exxon Corp.*, 25 F.3d 773, 781 (9th Cir. 1994) ("A class action is 'a multiple joinder device, permitting the litigation, in one single action, of multiple claims involving similar or identical questions of law and fact, usually arising from the same set of operative facts'") (quoting *Lesch v. Chicago & E. Ill. R.R. Co.*, 279 F. Supp. 908, 911 (N.D. Ill. 1968)); *see also Madden v. Cowen &*

---

[3] FINRA never quotes the entirety of the provision at dispute here. On page 9 of its Opposition, FINRA argues that Rule 2268(d)(3) "clear[ly] overrides" the FAA and meets the high bar set by the Supreme Court in *Compucredit,* but inexplicably only quotes the following language, "[n]o predispute arbitration agreement shall include . . . ." There is no reference to class actions at all in the remainder of the provision which FINRA chooses to exclude from its Opposition.

*Co.*, 576 F.3d 957 (9th Cir. 2009) (differentiating between the ability to participate in a class action and pursue a claim).

In order for the language of the text to apply, FINRA has the additional burden of showing that there is a FINRA forum rule that preserves a customer's right to pursue class litigation in Court. FINRA ducks this issue, too. In fact, there is none. While FINRA Rule 12204(d) provides that a motion to compel arbitration may not be filed when a putative class action is pending, it *does not* prevent a motion to compel arbitration after claims asserted by the class are dismissed. *French v. First Union Sec.,* 209 F. Supp. 2d 818 (M.D. Tenn. 2002) (holding that when a customer's class claims are dismissed by the court, former NASD Code Section 10301(d)(1), which is substantively identical to FINRA Code Section 12204(d), is no longer a barrier to an order compelling arbitration);[4] *Souter v. Tatro*, No. 03-CV-6141 CJS, 2004 WL 1574562, at *5 (W.D.N.Y. June 21, 2004) ("At the outset, the Court will consider whether or not this action may proceed as a class action . . . which in turn will determine whether or not plaintiffs' claims must be arbitrated").[5]

**2. FINRA Relies On Irrelevant Legislative History.**

The only reference to "class actions" that FINRA was able to muster in support of its Opposition is found in 1988 hearings before the House Subcommittee on Telecommunications and Finance of the Committee on Energy and Commerce. FINRA cites a few lines of this hearing out-of-context in order to create the false and misleading impression that rule 2268(d)(3) or its predecessor have always been directed at protecting a customer's right to pursue class actions. *See* Opp. at 6 n.3. The language of the FINRA rule at issue in this case— currently found in rule 2668(d)(3)—was not even proposed *until ten years after these hearings* (or adopted until sixteen years later in 2004). As first proposed in 1988 and approved in 1989, the predecessor to rule

---

[4] In *French*, the court explained that "[a]ny other construction of this rule would allow a plaintiff to append a questionable putative class action claim to other claims in order to avoid the specter of arbitration. Clearly, this is not what the NASD and the SEC intended when those organizations made the changes to the NASD Code of Arbitration Procedure in 1992." 209 F. Supp. 2d at 833-34.

[5] In a recent case involving an arbitration agreement and class action waiver agreed to by a broker-dealer and its employees, a court found UBS's class action waiver enforceable. After making that finding, the Court dismissed the class action on the basis of the arbitration agreement. *Lewis v. UBS Fin. Services Inc.*, No. C 10-04867 SBA, —F. Supp. 2d—, 2011 WL 4727795 (N.D. Cal. Sept. 30, 2011).

2268(d) *did not contain the language currently in subsection (d)(3).* It was only concerned with giving plaintiffs in arbitration the same remedies they would get in court, such as punitive damages. *See* Declaration of Gilbert R. Serota In Support Of Schwab's Reply ("Serota Reply Decl."), Ex. A (SEC Release No. 34-26805, 54 Fed. Reg. 21,144 (May 16, 1989)) (approving the predecessor to Rule 2268(d) which did not contain the provision at issue in the instant action). The language of the rule then read, "[n]o agreement shall include any condition which limits or contradicts the rules of any self-regulatory organization or limits the ability of a party to file any claim in arbitration or limits the ability of the arbitrators to make any award." *Id.* Ex. B at 66682 (SEC Release No. 34-42160 (Amendments to Rule 3110(f) Governing Predispute Arbitration Agreements with Customers) 64 Fed. Reg. 66,681 (SR-NASD-98-74) (November 29, 1999)) (publishing the proposed amendments to Rule 2268(d) including the addition of the language found in provision 2668(d)(3)); *see also id.* Ex. A at 21154. FINRA never explains how comments made ten years before it proposed the actual language on the rule in question can provide evidence of a clear Congressional command.

But, even if the lone reference to class actions in the 1988 hearings were relevant, it does not carry the import FINRA suggests. The language upon which FINRA relies reads, "These SRO rules should identify standards to determine which cases would be appropriate to refer to the courts. For example, cases involving very difficult and complex litigation, class actions, and cases involving multiple parties, not all of whom may have signed predispute arbitration agreements, may be more appropriately resolved through the courts." Dkt. No. 16-2 at 487. This language only suggests that class actions may be more appropriately resolved through the courts than in arbitration. It is far from a clear congressional command that broker-dealers and their customers should not reach agreement to waive a customer's right to bring a class action.

**3. The Actual Legislative History Evidences No Intent To Bar Class Action Waivers.**

The relevant legislative history of Rule 2268(d)(3) begins in 1998. The actual legislative history of FINRA Rule 2268(d)(3) evidences no intent to bar a member from adopting a class action waiver in its arbitration agreement. At that time, the proposal stated that the intent behind the

amendment was to protect an individual's ability to pursue a claim in court when it is not eligible for arbitration because it is barred by FINRA's six-year eligibility rule in Rule 12206. Serota Reply Decl. Ex. B at 66,683 ("paragraph (f)(4) of the Rule would be amended to clarify the prohibition against provisions that limit rights or remedies, including provisions that would circumvent the eligibility rule.") NASD proposed the amendment which would add the predecessor to section (d)(3) five times over seven years before the SEC finally approved it. Never did the NASD state that the rule was intended to give parties any continued right to pursue class actions in court, nor did the SEC recognize such a purpose in its approval order. *See e.g.*, *id.* Ex. C (SEC Release No. 34-50713, 69 Fed. Reg. 70,293 (SR-NASD-98-74) (December 3, 2004) (Order Granting Approval to Proposed Rule Change as Amended and Notice of Filing and Order Granting Accelerated Approval to Amendment No. 5 by the NASD, Regarding NASD Rule 3110(f) Governing Predispute Arbitration Agreements With Customers) (SR-NASD-98-74); *see also id.* Ex. D (NASD Notice to Member 05-09 (January 2005)) (the "amendments are intended to, among other things, address provisions that attempt to circumvent NASD Rule 10304, governing the eligibility of claims in arbitration"). *Id.* at 3.

After the merger of NASD and NYSE regulation, as part of the transition to the FINRA consolidated rulebook, FINRA proposed to change NASD Rule 3110(f)(4)(C) to FINRA Rule 2268(d)(3) without amending the language of the rule. The SEC approved the Rule after public notice and comment. *See id.* Ex. E (SEC Release No. 34-63181, 75 Fed. Reg. 67,155 (November 1, 2010) (Notice of Filing of Proposed Rule Change to Adopt FINRA Rules Regarding Books and Records in the Consolidated FINRA Rulebook)); *id.* Ex. F (SEC Release No. 34-63784, 76 Fed. Reg. 5850 (SR-FINRA-2010-052) (February 2, 2011) (Order Approving Proposed Rule Change)). Neither the comments nor the rule proposal mentioned a prohibition of class action waivers or that the provision applies to a customer's right to bring a class action in court.

Despite FINRA's attempt to mislead the Court by relying upon irrelevant and unsupportive legislative history, the true history of Rule 2268(d)(3) and its predecessors is clear—protection of a customer's "right" to utilize the procedural device of a class action or the prohibition of class action waivers in customer arbitration agreements was *never* the stated purpose.

FINRA relies heavily upon the Ninth Circuit's decision in *Kolev v. Euromotors West/The Auto Gallery*, 658 F.3d 1024, 1029 (9th Cir. 2011), arguing that, under *Kolev,* Rule 2668(d)(3) would override the FAA. Not so. Both this case and *Kolev* involve regulations adopted under authority delegated by Congress. But, the relevant rule-making history by FINRA and NASD here starkly contrasts with that of the FTC in *Kolev.* Here, the rule-making history of Rule 2668(d)(3) and its predecessors reveals that a bar on class action waivers was never stated to be the intended purpose, let alone a specifically identified objective of the rules.

In *Kolev*, the FTC promulgated a rule specifically intended to "prohibit[] judicial enforcement of [pre-dispute mandatory binding arbitration provisions covering written warranty agreements] with respect to consumer claims brought under the [Magnuson-Moss Warranty Act] MMWA." *Id.* at 1025. The Ninth Circuit, departing from contrary interpretations by two other circuits, found several express indications from the history of the rule evidencing a specific intent to override the FAA. *See, e.g., id.* at 1026 (citing 40 Fed. Reg. 60167, 60210 (Dec. 31, 1975)) ("[w]hen it published Rule 702, the FTC explained: several industry representatives contended that warrantors should be allowed to require consumers to resort to mechanisms whose decisions would be legally binding (e.g., binding arbitration)"); *see also id.* at 1027 (quoting 64 Fed. Reg. 19700, 19708 (Apr. 22, 1999) (noting that the FTC affirmed its interpretation that mandatory pre-dispute binding arbitration clauses are invalid under the MMWA).

The stated intent of the FTC in *Kolev* makes the Ninth Circuit's reasoning there inapposite to the instant action. FINRA shows no evidence that either NASD, FINRA, or the SEC have ever interpreted or identified FINRA Rule 2668(d)(3) as barring members from adopting class action waivers in their customer arbitration agreements

*CompucCredit*, decided after *Kolev*, heightens the burden on FINRA from that set forth by the Ninth Circuit in *Kolev. CompuCredit Corp. v. Greenwood*, 132 S. Ct. 665 (2012). There, individuals who received credit cards agreed to be bound by a provision which allowed either the customer or credit card company to elect to resolve claims by binding arbitration. Later, the customers filed a class action and contended that the arbitration provision could not be enforced under the Credit Repair Organizations Act's ("CROA") disclosure and non-waiver provisions. The

disclosure provision required that credit repair organizations include a disclosure that consumers have "'a right to sue a credit repair organization that violates [CROA].'" *Id.* at 667 (quoting 15 U.S.C. §1679c(a). The non-waiver provision provided that, "'Any waiver by any consumer of any protection provided by or any right of the consumer under this subchapter—(1) shall be treated as void; and (2) may not be enforced by any Federal or State court or any other person. '" *Id.* at 669 (quoting 15 U.S.C. §1679f(a)). CROA's civil-liability provision discusses remedies "as the court may allow" and for "class actions." *Id.* at 670.

The Supreme Court found these provisions inadequate to meet the standard of a clear congressional command and concluded that neither the non-waiver, civil liability or disclosure provisions evidenced a congressional command sufficient to override the FAA. *Id.* at 672-73. It held that the CROA civil-liability provision does not override the FAA's mandate because its express contemplation of judicial enforcement does not demonstrate that CROA provides consumers with a "right" to judicial enforcement. *Id.* at 671. It concluded that "[b]ecause the CROA is silent on whether claims under the Act can proceed in an arbitrable forum, the FAA requires the arbitration agreement to be enforced according to its terms." *Id.* at 673.

So too here. The text of Rule 2668(d)(3) and its rule-making history are silent with respect to whether a broker-dealer and customers can agree to a class action waiver. Accordingly, the FAA requires that Schwab's arbitration agreement, including the Class Action Waiver, be enforced.

**4. FINRA's Reliance On The SEC's Approval Of The Rules Ignores FINRA's Failure To Identify The Supposed Purpose Of The Rule.**

FINRA contends that the SEC's approval of Rule 2268(d)(3) evidences a clear contrary congressional command that would override the Supreme Court's latest interpretation of the FAA. Opp. at 6-9. This argument falls flat given that the purpose of the rule was never stated as one to bar members from adopting class action waivers in their customer arbitration agreements. *See* section I.D.1-3, *supra*. FINRA does not argue otherwise, nor can it. The history of Rule 2268(d)(3) is undisputed. *See* Serota Reply Decl., Ex. B (making no mention of a bar on class action waivers); *see id.* Ex. G at 53,765 (SEC Release No. 34-48444 (Notice of Amendment Nos. 3 and 4 to a Proposed Rule Change by the NASD Relating to NASD Rule 3110(f) Governing Use of Predispute

Arbitration Agreements with Customers)) (Sept. 4, 2003), 68 Fed. Reg. 53,762, 53,765 (SR-NASD-98-74) (Sept. 12, 2003) (same); *see id.*, Ex. C at 70,294-70,295 (same); *id.* Ex. D at 3 (same); *see id.*, Ex. H (SEC Release No. 34-51526 (Notice of Filing and Order Granting Accelerated Approval of Proposed Rule Change by the NASD Relating to the Delivery of Customer Agreements Containing Predispute Arbitration Clauses)) (April 12, 2005), 70 Fed. Reg. 20,407, 20,408 (SR-NASD-2005-045) (Apr. 19, 2005)) (same); *see id.*, Ex. I at 6 (NASD Regulatory Notice 08-25) (proposing to incorporate the requirements of NASD Rule 3110(f) with non-substantive changes into the new Consolidated FINRA Rulebook) (same); *see id.*, Ex. F at 5852 (same).

Because neither the NASD nor FINRA ever proposed Rule 2668(d)(3) or its predecessors with the stated purpose of prohibiting members from adopting class action waivers in their customer arbitration agreements it logically follows that the SEC's approval of the Rule cannot be interpreted as a clear congressional command of this unstated purpose.

## II. SCHWAB WILL SUFFER IRREPARABLE HARM IN THE ABSENCE OF INJUNCTIVE RELIEF.

FINRA's response to Schwab's assertion of irreparable harm is that the time and cost of disciplinary proceedings are not sufficient to constitute irreparable harm. Opp. at 9. But it is not merely the time and cost of disciplinary proceedings that will harm Schwab. It is the fact that until the lengthy and costly disciplinary process concludes, Schwab will be forced to decide whether or not to enforce its arbitration agreement in class actions—and face the repercussions of that decision—with no guidance on the important threshold legal issues presented here.

The irreparable harm Schwab fears is not merely hypothetical. On February 21, 2012, Schwab was sued in California state court in an action captioned *Kamberian v. Charles Schwab & Co., Inc.*, No. CGC-12-518383. Dkt. No. 23-3, Ex. B. That suit is filed as a class action on behalf of all Schwab customers who spoke with one of Schwab's employees on the telephone and had their conversations recorded, allegedly in violation of California law. As a result of the *Kamberian* class action, Schwab faces the *immediate* choice of either enforcing the class action waiver in its customer agreement and facing further FINRA disciplinary action, or risking waiving its right to compel individual arbitration. Dkt. No. 23-1 ¶3. As Schwab explained in its Motion, either one of

those options undoubtedly will be prejudicial to Schwab unless the Court preliminarily enjoins FINRA from pursuing disciplinary actions against Schwab based on its erroneous interpretation of the rules at issue here.

FINRA argues that Schwab makes no showing that pursuing its claim in court will resolve its dispute with FINRA any faster than proceeding through the administrative process. But, the case cited by FINRA, *Sapp v. Kimbrell*, 623 F.3d 813, 823 (9th Cir. 2010), is well off the point. That case involved the question of whether a state prisoner filing a civil rights action had exhausted his administrative remedies before proceeding to court. It did not involve a motion for preliminary injunction and it did not involve the particular disciplinary process at issue here, which FINRA does not contest, requires multiple steps and will not conclude for several years. Motion at 18-19.

FINRA also argues that the harm to Schwab is "of Schwab's making" because Schwab entered into two conflicting agreements—one with FINRA to abide by FINRA's rules, and the other in the form of its class action waiver. Opp. at 10. It cites inapposite cases in which Plaintiffs sought injunctive relief to attempt to repair the harm of a disadvantageous contract they had negotiated.[6] FINRA's argument ignores the context of this case and its own central role in the federal regulatory process. As explained in Schwab's Complaint, Schwab decided to amend its customer agreement following clear guidance from the United States Supreme Court in *AT&T Mobility* regarding the meaning of the FAA and the strong policies favoring enforcement of agreements to arbitrate which include class action waivers. Nothing in the language or history of the FINRA rules suggested that FINRA would interpret its rules as it now has. Accordingly, the irreparable harm Schwab faces is not "self-inflicted." It was created by FINRA's unprecedented interpretation of its own rules and its choice to engage in "rulemaking by discipline."

---

[6] In *Dotster, Inc. v. Internet Corp. for Assigned Names & Nos.*, 296 F. Supp. 2d 1159 (C.D. Cal. 2003), Plaintiffs complained that injunctive relief was necessary because the contract at issue provided for a cap on damages. The court found that "[i]f Plaintiffs entered a disadvantageous contract, they must suffer the consequences." *Id.* at 1163 (citation omitted); *see also Salt Lake Tribune Publ'g Co. v. AT&T Corp.*, 320 F.3d 1081 (10th Cir. 2003) (rejecting argument that personnel changes constituted irreparable harm when those changes resulted from the express terms of a contract); *Caplan v. Fellheimer Eichen Braverman & Kaskey*, 68 F.3d 828 (3d Cir. 1995) (same).

Finally, FINRA argues that it is "equally possible" that FINRA's rule interpretation will be found invalid whether the dispute proceeds in court or in the administrative process. Opp. at 10. But FINRA does not even concede that the disciplinary panel may properly consider the question of whether FINRA's rule interpretation is barred by the FAA. FINRA's argument that it is "possible" that Schwab will be able to obtain relief through the disciplinary process is inadequate.

## III. FINRA HAS FAILED TO SHOW THAT IT WILL SUFFER ANY HARM IF INJUNCTIVE RELIEF IS GRANTED.

FINRA's argument on the balance of equities is that it will suffer "significant" harm because its expertise and authority will be eroded if the issues presented here are not resolved through the administrative process. This response fails for two reasons.

*First*, FINRA's argument would render meaningless the remedy of injunctive relief in a context such as this. Where, as here, an agency applies its authority in contradiction of a federal statue and controlling U.S. Supreme Court precedent, an injunction is precisely the appropriate remedy. There is nothing wrong with a Court telling FINRA that it has exceeded its power by relying on a highly ambiguous rule to evade clear Supreme Court precedent.

*Second*, as argued in Schwab's Motion, the issues before this Court are not the types of questions that the agency is especially well-equipped to decide. FINRA does not even concede that a disciplinary panel has authority to decide the question of whether its rules may be used to block class action waivers in contradiction of the FAA. This situation is entirely distinguishable from a case such as *Timbisha Shoshone Tribe v. Salazar*, 697 F. Supp. 2d 1181 (E.D. Cal. 2010), where the agency at issue had particular expertise to bring to bear on the questions presented. *See id.* (Bureau of Indian Affairs was especially suited to decide question of recognition of tribal election).[7]

---

[7] *FTC v. Standard Oil Co. of Cal.*, 449 U.S. 232 (1990), cited by FINRA, was not a case involving a demand for injunctive relief. The excerpt quoted by FINRA arose in considering whether an agency's action was judicially reviewable as a "final agency action" under the Administrative Procedure Act. The Court held that the agency action was not yet final and that judicial review therefore was inappropriate. That issue is not presented here. *Woodford v. Ngo*, 548 U.S. 81 (2006), string cited for the same exact quotation, involved an exposition of the doctrine of exhaustion of administrative remedies, which is not at issue here, and which is the subject of FINRA's separate motion to dismiss.

Both Schwab, other broker-dealers, and the public need a judicial determination of whether FINRA's newly articulated interpretation of its rules can override the FAA. The most expeditious and fair manner of achieving this determination is through this litigation.

## IV. IT IS IN THE PUBLIC INTEREST FOR THIS MATTER TO BE RESOLVED EXPEDITIOUSLY BY A COURT OF COMPETENT JURISDICTION.

FINRA asserts that an injunction is "contrary to the public's interest in promoting and preserving a judicial system that adheres to the rule of law." Opp. at 11 (quoting *Timbisha*, 697 F. Supp. 2d at 1191). It re-iterates the argument that the administrative review process will promote efficient results and provide for exhaustion of remedies—a legal doctrine that is not the subject of this Motion. Nowhere does FINRA refute Schwab's assertions that (1) it is unclear whether or when the disciplinary proceedings will reach the question of the interpretation of the FAA (Motion at 21); and (2) FINRA's hearing panel is not well-equipped to decide the issues presented here. *Id.* Accordingly, FINRA's response provides no assurances that the administrative process will in fact give both Schwab and other FINRA member firms much-needed guidance on this important question.

## CONCLUSION

For the foregoing reasons, this Court should GRANT Schwab's Motion for Preliminary Injunction.

Dated: March 13, 2012

ARNOLD & PORTER LLP

By: /s/ Gilbert R. Serota
GILBERT R. SEROTA

Attorneys for Plaintiff CHARLES SCHWAB & CO., INC.