1

2

3

4

5

6               IN THE UNITED STATES DISTRICT COURT

7           FOR THE NORTHERN DISTRICT OF CALIFORNIA

8

9

CHARLES SCHWAB & CO INC,                    No. C-12-518 EDL

10          Plaintiff,                      **ORDER GRANTING DEFENDANT'S**
                                            **MOTION TO DISMISS**
11
    v.
12
FINANCIAL INDUSTRY REGULATORY
13  AUTHORITY INC,

14          Defendant.
                                        /
15

16          Plaintiff Charles Schwab & Co. seeks a declaratory judgment that Defendant Financial

17  Industry Regulatory Authority ("FINRA") may not enforce FINRA Rules regulating broker-dealers

18  to bar a new provision in Plaintiff's customer account agreements that waives any right to

19  participation in class action litigation and requires individual arbitration of claims.  Plaintiff

20  contends that FINRA Rule 2268(d), properly interpreted, does not prohibit class action waivers and,

21  in the alternative, even if intended to do so, its enforcement would impermissibly violate the Federal

22  Arbitration Act ("FAA"), 9 U.S.C. § 1, et seq.  Plaintiff seeks injunctive relief barring FINRA from

23  further pursuing discipline proceedings against Plaintiff based on the class action waiver.

24          Defendant filed a motion to dismiss, arguing primarily that this Court lacks jurisdiction to

25  hear this case.  Defendant's motion was fully briefed, and on April 3, 2012, the Court held a hearing

26  on the motion.  For the reasons stated at the hearing and in this Order, Defendant's motion to

27  dismiss is granted without leave to amend.  The hearing on Plaintiff's Motion for Preliminary

28  Injunction is vacated.

**United States District Court**
For the Northern District of California

**Background**

FINRA was originally incorporated in 1936 as the National Association of Securities Dealers ("NASD"). Compl. ¶ 7; Dettmer Decl. Ex. 5 at 627. In 2007, NASD merged with the regulation and enforcement functions of the New York Stock Exchange ("NYSE") and was renamed FINRA. Compl. ¶ 7. FINRA is a private, not-for-profit Delaware corporation functioning as a self-regulatory organization ("SRO") registered with the Securities and Exchange Commission ("SEC") as a national securities association. Compl. ¶¶ 2, 8; 15 U.S.C. § 78o-3; Karsner v. Lothian, 532 F.3d 876, 880 (D.C. Cir. 2008) ("FINRA, as NASD's successor, is 'the only officially registered "national securities association" under [the Exchange Act].'") (internal citation omitted). FINRA has regulatory power, delegated from Congress through the SEC in the Securities Exchange Act of 1934 ("Exchange Act"), over broker-dealer firms registered pursuant to section 15 of the Exchange Act and their registered associated persons. Compl. ¶ 10. The Exchange Act gives FINRA the power to propose rules for the conduct and governance of its regulatory functions, and also regulates those rules. Compl. ¶ 11. As an SRO, FINRA is a key part of the interrelated and comprehensive mechanism for regulating securities markets, including market participants such as Plaintiff. See, e.g., Desiderio v. Nat'l Ass'n of Sec. Dealers, Inc., 191 F.3d 198, 201 (2d Cir. 1999) ("As an integral part of a comprehensive system of federal regulation of the securities industry, the NASD regulates the over-the-counter securities market, which includes securities firms and registered representatives who buy and sell over-the-counter-securities.").

In 1975, Congress amended the Exchange Act to give the SEC a much larger role than it had in the past in supervising FINRA. Compl. ¶ 15. The amendments required FINRA to file proposed rules with the SEC, which then had authority to approve or disapprove all proposed rules after publishing them for public comment, subject to certain exceptions. Compl. ¶ 15; 15 U.S.C. § 78s(b); Credit Suisse First Boston v. Grunwald, 400 F.3d 1119, 1130 (9th Cir. 2005) ("'No proposed rule change shall take effect unless approved by the Commission[,]' 15 U.S.C. § 78s(b)(1); moreover, the Commission must give public notice of the specific reasons for its approval."). The SEC may also abrogate, add to and delete from the FINRA rules in any way that it deems appropriate or necessary. Compl. ¶ 15; 15 U.S.C. § 78s(c). FINRA "prescribes rules binding on member firms and

United States District Court
For the Northern District of California

their registered representatives for the conduct of securities business" (Compl. ¶ 14), but members can petition the SEC for changes to FINRA's rules.  See Ass'n of Inv. Brokers v. SEC, 676 F.2d 857, 864 (D.C. Cir. 1982).  FINRA has the power to sanction members for noncompliance with securities laws and FINRA Rules, including imposition of fines, censure, and suspension or revocation of membership or registration.  Compl. ¶ 14.  Because of the SEC's oversight, FINRA Rules approved by the SEC are expressions of federal legislative power and have the force and effect of a federal regulation.  Compl. ¶ 16; see also Credit Suisse, 400 F.3d at 1132 ("In sum, we conclude that SRO rules that have been approved by the Commission pursuant to 15 U.S.C. § 78s(b)(2) preempt state law when the two are in conflict, either directly or because the state law stands as an obstacle to the accomplishment of the objectives of Congress. Specifically, we hold that the NASD arbitration procedures in dispute here have preemptive force over conflicting state law.").

In the early 1970s, Plaintiff joined the NASD, and as part of the application for membership, Plaintiff certified its agreement to abide by the Rules of Fair Practice, now FINRA Rules.  Dettmer Decl. Ex. 15 at 4, 8, 12; see Fiero v. FINRA, 600 F.3d 569, 571 (2d Cir. 2011) ("As a practical matter, all securities firms dealing with the public must be members of FINRA.").  Plaintiff has recertified its agreement to abide by those rules at least ten times since becoming a FINRA member. Id.

FINRA employs a five-stage disciplinary process to regulate broker-dealers.  Compl. ¶ 17.  First, a FINRA Hearing Panel hears a complaint.  Id.; 15 U.S.C. § 78o-3(h)(1); FINRA Rule 9231(b).  Second, either side may appeal the Hearing Panel's decision to the FINRA National Adjudicatory Council ("NAC").  Compl. ¶ 17; FINRA Rule 9311(a).  Third, at its discretion, the FINRA Board may review the NAC's decision.  Compl. ¶ 17; FINRA Rules 9349, 9351.  Fourth, a FINRA member or associated person aggrieved by a disciplinary action may apply for review by the SEC.  Compl. ¶ 17; 15 U.S.C. § 78s(d); FINRA Rule 9370(a).  Fifth, a FINRA member or associated person may appeal an adverse determination by the SEC to a federal circuit court of appeals. Compl. ¶ 17; 15 U.S.C. § 78y(a).  Plaintiff alleges that two out of the three members of the FINRA Hearing Panel need not be attorneys, and there is no requirement that any member of the NAC or the

FINRA Board be attorneys. Compl. ¶ 18. Plaintiff alleges that there is nothing in the FINRA rules giving members of the Hearing Panel, NAC or FINRA Board the authority to invalidate a FINRA rule. Compl. ¶ 20. Plaintiff notes that this disciplinary process can take many years to complete. See, e.g., PAZ Sec., Inc. v. SEC, 494 F.3d 1059 (D.C. Cir. 2007) (disciplinary complaint began on August 14, 2003; appellate court ruled on July 20, 2007).

Plaintiff's account agreement with its customers calls for arbitration before FINRA Dispute Resolution of any disputes arising out of the use of Plaintiff's services. Compl. ¶ 24. In October 2011, Plaintiff amended its account agreement to add a class action waiver:

> **Waiver of Class Action or Representative Action.** Neither you nor Schwab shall be entitled to arbitrate any claims as a class action or representative action, and the arbitrator(s) shall have no authority to consolidate more than one parties' claims or to proceed on a representative or class basis. You and Schwab agree that any actions between us and /or Related Third Parties shall be brought solely in our individual capacities. You and Schwab hereby waive any right to bring a class action, or any type of representative action against each other or any Related Third Parties in court. You and Schwab waive any right to participate as a class member, or in any other capacity, in any class action or representative action brought by any other person, entity or agency against Schwab or you.

Compl. ¶ 26 (emphasis in original). This amended agreement was delivered to nearly 7 million existing customers in September 2011 and was included in the Account Agreement for new customers opening accounts on or after October 1, 2011. Compl. ¶¶ 27-28.

On October 20, 2011, FINRA Enforcement Staff notified Plaintiff that it was investigating the new class action waiver. Compl. ¶ 29; Serota Decl. ¶ 4. In response, Plaintiff stated its position that FINRA Rule 2268(d) does not prohibit a class action waiver, and that if it did, it would be unenforceable under Supreme Court authority because it would violate the FAA. See AT&T Mobility v. Concepcion, 131 S. Ct. 1740 (2011); CompuCredit v. Greenwood, 132 S. Ct. 665 (2012); see also Compl. ¶ 29; Serota Decl. ¶ 5. In AT&T Mobility, the Court held that the Federal Arbitration Act preempted California law striking down class arbitration waivers in consumer contracts as unconscionable as set forth in Discover Bank v. Superior Court, 36 Cal.4th 148 (2005). There, the California Supreme Court held that class waivers in consumer arbitration agreements are unconscionable if the waiver is contained in an adhesion contract, disputes between the parties are likely to involve small amounts of damages, and the party with inferior bargaining power alleges a

deliberate scheme to defraud.  The <u>AT&T Mobility</u> Court reasoned: "The overarching purpose of the FAA, evident in the text of §§ 2, 3, and 4, is to ensure the enforcement of arbitration agreements according to their terms so as to facilitate streamlined proceedings. Requiring the availability of classwide arbitration interferes with fundamental attributes of arbitration and thus creates a scheme inconsistent with the FAA."  <u>AT&T Mobility</u>, 131 S. Ct. at 1748.  In <u>CompuCredit v. Greenwood</u>, 132 S. Ct. 665 (2012), the Supreme Court explained that the FAA "establishes 'a liberal federal policy favoring arbitration agreements.'  It requires courts to enforce agreements to arbitrate according to their terms. That is the case even when the claims at issue are federal statutory claims, unless the FAA's mandate has been 'overridden by a contrary congressional command.'" 132 S.Ct. at 669.  The statute at issue in that case was silent as to whether claims under the Act could proceed in an arbitrable forum, so the FAA required the arbitration agreement to be enforced according to its terms.

FINRA Enforcement Staff rejected Plaintiff's arguments against disciplinary action, stating that FINRA Rule 2268(d) precludes Plaintiff from inserting a class action waiver into its pre-dispute arbitration agreement with its customers, and that the FAA does not trump the FINRA rule.  Compl. ¶¶ 21, 30; <u>see also</u> Serota Decl. ¶ 6.  On February 1, 2012, FINRA initiated disciplinary proceedings against Plaintiff for violating FINRA Rule 2268(d) by including the class action waiver in its account agreement.  Dettmer Decl. Ex. 1; Serota Decl. Ex. B.  The disciplinary complaint asked the Hearing Panel to declare Plaintiff in violation of FINRA Rules, to order Plaintiff to refrain from further violations of Rule 2268(d) and to impose monetary or other sanctions.  <u>Id.</u> at 8.  On the same day, Plaintiff filed this action seeking a declaration that it does not violate FINRA Rule 2268(d)(3), or alternatively that the Rule cannot be enforced to bar the class action waiver provision, which must be permitted under the FAA.  Compl. ¶ 32.

On February 21, 2012, Plaintiff was sued in San Francisco Superior Court in a putative class action, <u>Kamberian v. Charles Schwab & Co.</u>, No. CGC-12-518383 (Serota Decl. Ex. C), filed on behalf of all Schwab customers who spoke with one of Schwab's employees on the telephone and had their conversations recorded, allegedly in violation of California law.  Plaintiff argues that it faces the choice in the state action of either enforcing its class action waiver in its customer

1  agreement and facing further disciplinary action by FINRA, or risking waiving its right to compel

2  individual arbitration in lieu of any class action.

3  **Legal Standard**

4      A motion to dismiss an action pursuant to Federal Rule of Civil Procedure 12(b)(1) raises the

5  question of the federal court's subject matter jurisdiction over the action.  When considering a Rule

6  12(b)(1) motion challenging the substance of jurisdictional allegations, the Court is not restricted to

7  the face of the pleadings, but may review evidence, such as declarations and testimony, to resolve

8  any factual disputes concerning the existence of jurisdiction.  See McCarthy v. United States, 850

9  F.2d 558, 560 (9th Cir.1988).  The party asserting jurisdiction has the burden of proving that

10  jurisdiction exists.  See Sopcak v. Northern Mountain Helicopter Serv., 52 F.3d 817, 818 (9th

11  Cir.1995); Ass'n of Am. Med. Coll. v. United States, 217 F.3d 770, 778-79 (9th Cir.2000).

12  **FINRA Rule at issue**

13      FINRA Rule 2268(d) states:

14      (d) No predispute arbitration agreement shall include any condition that:
        (1) limits or contradicts the rules of any self-regulatory organization;
15      (2) limits the ability of a party to file any claim in arbitration;
        *(3) limits the ability of a party to file any claim in court permitted to be filed in court*
16      *under the rules of the forums in which a claim may be filed under the agreement;*
        (4) limits the ability of arbitrators to make any award. (emphasis added).

17

18      The "rules of the forums" referenced in Rule 2268(d)(3) are contained in the FINRA Code of

19  Arbitration Procedure for Customer Disputes.  Rule 12204(d) of that Code states that:

20      (d) A member or associated person may not enforce any arbitration agreement against
        a member of a certified or putative class action with respect to any claim that is the
21      subject of the certified or putative class action until:
        • The class certification is denied;
22      • The class is decertified;
        • The member of the certified or putative class is excluded from the class by the
23      court; or
        • The member of the certified or putative class elects not to participate in the class or
24      withdraws from the class according to conditions set by the court, if any.
        This paragraph does not otherwise affect the enforceability of any rights under this
25      Code or any other agreement.

26

27      In the late 1980s, the SEC approved NASD Rule 3110, the predecessor to FINRA Rule

    2268(d), to prevent pre-dispute arbitration agreements from "curtailing any rights that a party may
28
    otherwise have had in a judicial forum."  Dettmer Decl. Ex. 7 at 21,154.  NASD Rule 3110 was

6

**United States District Court**
For the Northern District of California

1   proposed in response to the SEC's suggestion that SROs review "issues raised by the current use of

2   mandatory predispute arbitration agreements by their member firms." Id. at 21,145; 21,154 n.56;

3   Dettmer Decl. Ex. 12.  One of the SEC's suggestions was that SROs should "consider procedures

4   that would permit investors access to the courts in appropriate cases . . . . For example, cases

5   involving . . . class actions . . . may be more appropriately resolved through the courts."  Dettmer

6   Decl. Ex. 13 at 487; see also id. Ex. 7 at 21,153; 21,154.  In particular, Rule 3110(f)(4) was aimed at

7   assuring customers in arbitration the same remedies they could obtain in court, such as punitive

8   damages.  See 54 Fed. Reg. 21,144 (SEC Release No. 34-26805) (May 10, 1989).  In 1988, when the

9   NASD presented Rule 3110 to the membership for comment, Plaintiff expressed its overall approval

10  of the new rules.  Dettmer Decl. Ex. 16.

11       In October 1998, the NASD proposed replacing NASD 3110 with the current language of

12  FINRA Rule 2268, in order to "clarify the prohibition against provisions that limit [investors'] rights

13  or remedies."  Dettmer Decl. Ex. 8 at *2, *5-6 (explaining that under the prior version of the rule, "a

14  customer who agreed to arbitrate disputes under New York law could inadvertently forfeit" rights,

15  such as "the ability to obtain punitive damages, that might have been available in court."); see also

16  Dettmer Decl. Ex. 9 at *4; 64 Fed. Reg. 66,681 (Amendments to Rule 3110(f) Governing Predispute

17  Arbitration Agreements with Customers) (Nov. 29, 1999).

18       The NASD proposed the basic language of rule 12204(d) on June 17, 1992.  Dettmer Decl.

19  Ex. 10 at 30,519.  As part of the same proposal, the NASD proposed amendments to the Rules of

20  Fair Practice requiring members to make certain disclosures in pre-dispute arbitration agreements

21  with their customers, which is now codified as rule 2268(f).  Id.  In approving these rules in October

22  1992, the SEC agreed with NASD's position that "the judicial system has already developed the

23  procedures to manage class action claims.  Entertaining such claims through arbitration at the NASD

24  would be difficult, duplicative and wasteful."  Dettmer Decl. Ex. 11 at 52,661 (agreeing with

25  NASD's position that "in all cases, class actions are better handled by the courts and that investors

26  should have access to the courts to resolve class actions efficiently.").

27  **Discussion**

28  **1.      Plaintiff's failure to exhaust administrative remedies bars this action**

7

**United States District Court**
For the Northern District of California

It is undisputed that Plaintiff has not exhausted the FINRA administrative process.  As noted, FINRA disciplinary actions proceed through a number of levels that culminate in administrative review by the SEC and then in judicial review by the federal court of appeals.  Congress believed that this process would achieve several benefits, including "the expertise and intimate familiarity with complex securities operations which members of the industry can bring to bear on regulatory problems, and the informality and flexibility of self-regulatory procedures." S. Doc. No. 93-13, 93rd Cong., 1st Sess. 149 (1973); see also Swirsky v. Nat'l Ass'n of Sec. Dealers, 124 F.3d 59, 62 (1997) (quoting S. Doc. No. 93-13, 93rd Cong., 1st Sess. 149 (1973)).

Defendant argues that Plaintiff's failure to exhaust deprives the Court of jurisdiction.  See First Jersey, 605 F.2d at 700 ("We conclude therefore that First Jersey's failure to exhaust its administrative remedies rendered the district court without jurisdiction to entertain the suit. The proper response by the district court would have been to grant NASD's motion for dismissal. If and when sanctions are imposed on First Jersey, the company would have full and ample opportunity to present its due process and statutory claims to the court of appeals.").  Plaintiff, however, argues that exhaustion under the Exchange Act is not jurisdictional, and that Plaintiff need not exhaust because it comes within the exceptions to exhaustion.  For the reasons set forth below, the Court concludes that the failure to exhaust administrative remedies is jurisdictional, but even if it is only an element of a claim, Plaintiff has failed to show that it meets the requirements for an exception to the requirement of administrative exhaustion.

Jurisdictional exhaustion is:

> rooted, not in prudential principles, but in Congress' power to control the jurisdiction of the federal courts. Whether a statute requires exhaustion is purely a question of statutory interpretation.  If the statute does mandate exhaustion, a court cannot excuse it. . . . In order to mandate exhaustion, a statute must contain '[s]weeping and direct' statutory language indicating that there is no federal jurisdiction prior to exhaustion, or the exhaustion requirement is treated as an element of the underlying claim. We presume exhaustion is non-jurisdictional unless 'Congress states in clear, unequivocal terms that the judiciary is barred from hearing an action until the administrative agency has come to a decision.'

Avocados Plus Inc. v. Veneman, 370 F.3d 1243, 1247-48 (D.C. Cir. 2004) (internal citations omitted).  In the specific context of FINRA disciplinary procedures, courts have held without exception that the comprehensive review process renders exhaustion jurisdictional.  See First Jersey,

605 F.2d at 700; see also PennMount Sec. v. Frucher, 586 F.3d 242, 246 (3d Cir. 2009) (stating that "Typically, when a litigant refuses to exhaust the available administrative remedies provided by the Exchange Act, a district court may not exercise jurisdiction over the case," and noting that there are two exceptions: "either of which would compel a court to hear an unexhausted case: '1) when the administrative procedure is clearly shown to be inadequate to prevent irreparable injury; or 2) when there is a clear and unambiguous statutory or constitutional violation.'") (internal citation omitted); Merrill Lynch, Pierce, Fenner & Smith v. NASD, 616 F.2d 1363, 1368-71 (5th Cir. 1980) ("To fulfill these goals, self-regulatory disciplinary hearings should be handled expeditiously, without being disrupted by challenges to procedural rulings which do not pertain to the merits of the case. The doctrine of exhaustion of administrative remedies should therefore apply to the disciplinary proceedings of the NASD."); Alton v. NASD, 1994 WL 443460, at *2-3 (N.D. Cal. July 26, 1994) (granting motion to dismiss based on lack of subject matter jurisdiction where the plaintiff failed to exhaust the NASD disciplinary proceedings and did not qualify for an exception to the exhaustion of administrative remedies requirement).

The First Jersey court explained that the "comprehensiveness of the review procedure suggests that the doctrine of exhaustion of remedies should be applied to prevent circumvention of the established procedures." First Jersey, 605 F.2d at 695; see also Swirsky, 124 F.3d at 61-62 ("We agree with other circuits that have considered the question that the 'comprehensiveness of the review procedure suggests that the doctrine of exhaustion of administrative remedies should be applied to prevent circumvention of established procedures.'"); Cleantech Innovations, Inc. v. NASDAQ Stock Mkt, LLC, 2012 WL 345902, at *1-2 (S.D. N.Y. Jan. 31, 2012) (dismissing a case due to lack of jurisdiction where the focus of the amended complaint was the defendant's alleged unconstitutional conduct in delisting plaintiff's stock based on racial animus, stating that: "the Exchange Act sets forth a specific and comprehensive scheme for reviewing disciplinary actions taken by self-regulatory organizations ("SRO") like NASDAQ, including review by the SEC (15 U.S.C. § 78s(d)) and the United States Courts of Appeals (id. § 78y(a)(1)). This Court has repeatedly found that scheme to be the "exclusive route" for obtaining review of SRO disciplinary actions, such as delistings. . . . Most importantly . . . should plaintiff disagree with the SEC's ultimate assignment, it

1   can appeal it to the Court of Appeals . . . .”).

2       The conclusion that exhaustion of FINRA procedures is a jurisdictional requirement is

3   consistent with the Supreme Court's analysis in Thunder Basin Coal Co. v. Reich, 510 U.S. 200, 207

4   (1994) of whether the Federal Mine Safety and Health Amendments Act of 1977, 30 U.S.C. §§ 801,

5   et seq. (“Mine Act”), precluded district court jurisdiction prior to exhaustion of administrative

6   remedies.  The Mine Act required the Secretary of Labor or his representative to conduct periodic,

7   unannounced health and safety inspections of mines.  See 30 U.S.C. § 813.  Section § 813(f)

8   provides:

9           [A] representative of the operator and a representative authorized by his miners shall
            be given an opportunity to accompany the Secretary or his authorized representative
10          during the physical inspection of any coal or other mine ... for the purpose of aiding
            such inspection and to participate in pre-or post-inspection conferences held at the
11          mine.

12  Regulations promulgated under Section 813 defined a miners' representative as “[a]ny person or

13  organization which represents two or more miners at a coal or other mine for the purposes of the

14  Act.” 30 CFR § 40.1(b)(1) (1993).  The regulations required mine operators to post the information

15  regarding representatives at the mine.  Id.

16      Employees of Thunder Basin Coal Company, which operated a nonunion coal mine, selected

17  two employees of the United Mine Workers of America, who were not employees of the mine, to

18  serve as their miners' representatives pursuant to § 813(f).  Thunder Basin, 510 U.S. at 204.  Rather

19  than post the information regarding the representatives, Thunder Basin complained to the Mine

20  Safety and Health Administration (“MSHA”) that the designation compromised its rights under the

21  National Labor Relations Act (“NLRA”).  Id. at 204.  MSHA instructed Thunder Basin to post the

22  miners' representative designations.  Id.  Thunder Basin sued in district court for pre-enforcement

23  injunctive relief, arguing that “the designation of nonemployee [union] ‘representatives’ violated the

24  principles of collective-bargaining representation under the NLRA as well as the company's NLRA

25  rights to exclude union organizers from its property.”  Id.  Thunder Basin also argued that:

26  “requiring it to challenge the MSHA's interpretation of 30 U.S.C. § 813(f) and 30 CFR pt. 40

27  through the statutory-review process would violate the Due Process Clause of the Fifth Amendment,

28  since the company would be forced to choose between violating the Act and incurring possible

United States District Court
For the Northern District of California

10

1    escalating daily penalties, or, on the other hand, complying with the designations and suffering

2    irreparable harm." Id.

3           The Supreme Court held that the Mine Act precluded district court jurisdiction prior to

4    exhaustion of administrative remedies:

5           In cases involving delayed judicial review of final agency actions, we shall find that
            Congress has allocated initial review to an administrative body where such intent is
6           "fairly discernible in the statutory scheme." Whether a statute is intended to preclude
            initial judicial review is determined from the statute's language, structure, and
7           purpose, its legislative history, Block, 467 U.S., at 345, 104 S.Ct. at 2453, and
            whether the claims can be afforded meaningful review.

8
            Applying this analysis to the review scheme before us, we conclude that the Mine Act
9           precludes district court jurisdiction over the pre-enforcement challenge made here.
            The Act establishes a detailed structure for reviewing violations of "any mandatory
10          health or safety standard, rule, order, or regulation promulgated" under the Act. §
            814(a). A mine operator has 30 days to challenge before the Commission any citation
11          issued under the Act, after which time an uncontested order becomes "final" and "not
            subject to review by any court or agency." §§ 815(a) and (d). Timely challenges are
12          heard before an administrative law judge (ALJ), § 823(d)(1), with possible
            Commission review. Only the Commission has authority actually to impose civil
13          penalties proposed by the Secretary, § 820(i), and the Commission reviews all
            proposed civil penalties de novo according to six criteria. The Commission may grant
14          temporary relief pending review of most orders, § 815(b)(2), and must expedite
            review where necessary, § 815(d).

15
            *Mine operators may challenge adverse Commission decisions in the appropriate*
16          *court of appeals, § 816(a)(1), whose jurisdiction "shall be exclusive and its judgment*
            *and decree shall be final"* except for possible Supreme Court review, ibid. The court
17          of appeals must uphold findings of the Commission that are substantially supported
            by the record, ibid., but may grant temporary relief pending final determination of
18          most proceedings, § 816(a)(2).

19
     Thunder Basin Coal Co. v. Reich, 510 U.S. 200, 207 (1994) (emphasis added).
20
            The Exchange Act's administrative review process is very similar to the administrative
21
     process at issue in Thunder Basin.  Like the Mine Act, the Exchange Act allocates initial review to
22
     an administrative body, establishes a detailed structure for review that leads to review by an
23
     independent commission, and ultimately provides for judicial review by the court of appeals.  In
24
     particular, under the administrative procedure in the Exchange Act:
25
            *(1) A person aggrieved by a final order of the Commission entered pursuant to this*
26          *chapter may obtain review of the order in the United States Court of Appeals* for the
            circuit in which he resides or has his principal place of business, or for the District of
27          Columbia Circuit, by filing in such court, within sixty days after the entry of the
            order, a written petition requesting that the order be modified or set aside in whole or
28          in part.
            ***

11

**United States District Court**
For the Northern District of California

*(3) On the filing of the petition, the court has jurisdiction, which becomes exclusive on the filing of the record, to affirm or modify and enforce or to set aside the order in whole or in part.*
\*\*\*

See 15 U.S.C. § 78y (emphasis added); see also S.E.C. v. Jett, 514 F.Supp.2d 532 (S.D.N.Y. 2007) (Court of Appeals has exclusive jurisdiction to review the merits of an order of the SEC); Maschler v. Nat'l Ass'n of Sec. Dealers, Inc., 827 F.Supp. 131 (E.D.N.Y. 1993) (Securities Exchange Act restricted judicial review of final disciplinary orders of Securities and Exchange Commission exclusively to Courts of Appeals).  Moreover, similar to the posture of this case, in Thunder Basin, the party seeking to avoid administrative exhaustion raised the argument that enforcement of a regulation issued under one statute conflicted with and was trumped by its rights under a separate statute.  Nonetheless, the Supreme Court held that the failure to exhaust deprived the district court of jurisdiction.

Plaintiff argues that McBride Cotton & Cattle Co. v. Veneman, 290 F.3d 973 (9th Cir. 2002) supports its position that exhaustion is not a jurisdictional requirement here.  McBride Cotton addressed the exhaustion requirement under the Federal Crop Insurance Reform and Department of Agriculture Reorganization Act of 1994:

> Notwithstanding any other provision of law, a person shall exhaust all administrative appeal procedures established by the Secretary [of Agriculture] or required by law before the person may bring an action in a court of competent jurisdiction against-
> (1) the Secretary;
> (2) the Department; or
> (3) an agency, office, officer, or employee of the Department.

7 U.S.C. § 6912(e).  The court concluded that this provision was not jurisdictional.

Unlike the Exchange Act at issue here, the statute in McBride did not provide for exclusive jurisdiction in the Court of Appeals at the conclusion of the administrative process.  The McBride court reasoned:

> Comparing the exhaustion requirement in this case with other exhaustion requirements we have considered, we hold that 7 U.S.C. § 6912(e) does not limit the district court's subject matter jurisdiction over the plaintiffs' claims. Nothing in § 6912(e) mentions, defines, or limits federal jurisdiction. Instead, § 6912(e)'s requirement that "a person shall exhaust all administrative appeal procedures established by the Secretary or required by law before the person may bring an action in a court of competent jurisdiction ..." is similar to the language which, in Anderson and Rumbles, we held was merely a codification of the exhaustion requirement.

Arguing for a contrary result, the Secretary relies upon the Second Circuit's decision in <u>Bastek v. Federal Crop Insurance Corporation</u>, 145 F.3d 90 (2d Cir.1998), holding that the statutory exhaustion requirement of 7 U.S.C. § 6912(e) may not be waived by the court. The court in <u>Bastek</u> based its analysis upon a determination that the exhaustion requirement of § 6912(e) was a statutory requirement, as opposed to one which had been "judicially-developed." <u>Id</u>. at 94-95. We recognized in <u>Anderson</u>, <u>Rumbles</u>, and similar cases, however, that not all statutory exhaustion requirements are created equal. Only statutory exhaustion requirements containing "sweeping and direct" language deprive a federal court of jurisdiction. <u>Anderson</u>, 230 F.3d at 1162; <u>Rumbles</u>, 182 F.3d at 1067. Section 6912(e) contains no such language.

<u>McBride</u>, 290 F.3d at 980.  By contrast, the Exchange Act provides for judicial review of a final SEC order in the Court of Appeals, which has exclusive jurisdiction on the filing of the record.  15 U.S.C. § 78y.  This provision vesting exclusive jurisdiction in the Court of Appeals upon conclusion of the administrative process goes beyond a mere statutory "codification of the exhaustion requirement."

Plaintiff correctly points out that the Supreme Court has recently cautioned courts to be more careful to distinguish between true jurisdictional conditions and non-jurisdictional limitations on bringing claims.  <u>See</u> <u>Reed Elsevier, Inc. v. Muchnick</u>, 130 S. Ct. 1237, 1243 (2010).  The Court stated:

While perhaps clear in theory, the distinction between jurisdictional conditions and claim-processing rules can be confusing in practice. Courts—including this Court—have sometimes mischaracterized claim-processing rules or elements of a cause of action as jurisdictional limitations, particularly when that characterization was not central to the case, and thus did not require close analysis. <u>See</u> <u>Arbaugh</u>, <u>supra</u>, at 511–512, 126 S.Ct. 1235 (citing examples); <u>Steel Co.</u>, 523 U.S., at 91, 118 S.Ct. 1003 (same). Our recent cases evince a marked desire to curtail such "drive-by jurisdictional rulings," <u>ibid</u>., which too easily can miss the "critical difference[s]" between true jurisdictional conditions and nonjurisdictional limitations on causes of action, <u>Kontrick</u>, <u>supra</u>, at 456, 124 S.Ct. 906; <u>see also</u> <u>Arbaugh</u>, 546 U.S., at 511, 126 S.Ct. 1235.

In light of the important distinctions between jurisdictional prescriptions and claim-processing rules, <u>see, e.g.</u>, <u>id.</u>, at 514, 126 S.Ct. 1235, we have encouraged federal courts and litigants to "facilitat[e]" clarity by using the term "jurisdictional" only when it is apposite, <u>Kontrick</u>, <u>supra</u>, at 455, 124 S.Ct. 906. In <u>Arbaugh</u>, we described the general approach to distinguish "jurisdictional" conditions from claim-processing requirements or elements of a claim:

"If the Legislature clearly states that a threshold limitation on a statute's scope shall count as jurisdictional, then courts and litigants will be duly instructed and will not be left to wrestle with the issue. But when Congress does not rank a statutory limitation on coverage as jurisdictional, courts should treat the restriction as nonjurisdictional in character." 546 U.S., at 515–516, 126 S.Ct. 1235 (citation and footnote omitted).

1  Reed Elsevier, 130 S. Ct. at 1243-44.  In Reed Elsevier, the Supreme Court determined that a

2  provision in the Copyright Act, 17 U.S.C. § 411(a), requiring registration before bringing suit, with

3  certain enumerated exceptions, was not jurisdictional, but instead "impose[d] a precondition to filing

4  a claim that is not clearly labeled jurisdictional, is not located in a jurisdiction-granting provision,

5  and admits of congressionally authorized exceptions."  Id. at 1247.  The Reed Elsevier Court did not

6  consider a detailed regulatory scheme like FINRA's disciplinary process culminating in an

7  administrative review by a federal commission, the SEC, and ultimately vesting exclusive

8  jurisdiction in the Court of Appeals to review the SEC's decision, which is more akin to the

9  regulatory scheme held to be jurisdictional in Thunder Basin.  While it is true that numerous judicial

10  decisions holding that the Exchange Act's process is jurisdictional were decided prior to Reed

11  Elsevier, their reasoning appears to this Court to remain sound.

12       Moreover, even assuming that the label "jurisdictional" has been bestowed incorrectly, the

13  same considerations set forth in First Jersey and similar decisions support requiring exhaustion here

14  as a prudential matter.  Thus, assuming that exhaustion under the Exchange Act is only a claim

15  processing requirement, Plaintiff does not satisfy any of the exceptions to exhaustion recognized by

16  the courts.  In McCarthy v. Madigan, 503 U.S. 140, 146 (1992) (superseded by statutes on other

17  grounds as stated in Booth v. Churner, 532 U.S. 731, 740 (2001)), the Supreme Court explained: "In

18  determining whether exhaustion is required, federal courts must balance the interest of the individual

19  in retaining prompt access to a federal judicial forum against countervailing institutional interests

20  favoring exhaustion."  McCarthy, 503 U.S. at 146.  The Court acknowledged three exceptions under

21  this balancing principle:

22      This Court's precedents have recognized at least three broad sets of circumstances in
    which the interests of the individual weigh heavily against requiring administrative

23      exhaustion. First, requiring resort to the administrative remedy may occasion undue
    prejudice to subsequent assertion of a court action. Such prejudice may result, for

24      example, from an unreasonable or indefinite timeframe for administrative action.

25      Second, an administrative remedy may be inadequate "because of some doubt as to
    whether the agency was empowered to grant effective relief."  Gibson v. Berryhill,

26      411 U.S., at 575, n. 14, 93 S.Ct., at 1696, n. 14. For example, an agency, as a
    preliminary matter, may be unable to consider whether to grant relief because it lacks

27      institutional competence to resolve the particular type of issue presented, such as the
    constitutionality of a statute.

28
    Third, an administrative remedy may be inadequate where the administrative body is

United States District Court
For the Northern District of California

1    shown to be biased or has otherwise predetermined the issue before it.

2    Id. at 146-48; see also, e.g., First Jersey, 605 F.2d at 696 ("In this Circuit, we have recognized two

3    situations in which the exhaustion requirement will not be adhered to: 1) when the administrative

4    procedure is clearly shown to be inadequate to prevent irreparable injury; or 2) when there is a clear

5    and unambiguous statutory or constitutional violation.").

6        Plaintiff argues that it need not exhaust administrative remedies for all three reasons set forth

7    in McCarthy.  First, Plaintiff argues that requiring exhaustion in this case would irreparably harm

8    Plaintiff because the FINRA disciplinary process could take up to four or more years, during which

9    Plaintiff risks waiving its right to compel arbitration in one or more class action suits, citing

10   Alascom, Inc. v. ITT North Elec. Co., 727 F.2d 1419, 1422 (9th Cir. 1984) (when a court grants a

11   stay of arbitration, forcing the party to "undergo the expense and delay of a trial before being able to

12   appeal, the advantages of arbitration-speed and economy-are lost forever. We find this consequence

13   'serious, perhaps, irreparable' and 'effectually challenged' only by immediate appeal."); Olde

14   Discount Corp. v. Tupman, 805 F. Supp. 1130, 1141 (D. Del. 1992) ("Likewise, the Court concludes

15   that the loss of its federal substantive right to arbitrate, should injunctive relief be denied, constitutes

16   irreparable harm clearly distinguishable from purely economic losses.").  However, this case does

17   not concern a stay on arbitration or an injunction against an administrative rescission action on

18   behalf of investors, but instead the possibility that FINRA will impose discipline on Plaintiff, which

19   would ultimately be subject to judicial review.

20       Further, delay is not a basis to exempt a party from the requirement to exhaust administrative

21   remedies unless it is combined with a showing that the remedies available are palpably inadequate,

22   resulting in serious injustice.  See Maxon Marine, 39 F.3d at 147 ("But delay is not a valid ground

23   for bypassing the procedures established by Congress for obtaining judicial review of agency action,

24   procedures that include a mandatory resort to such administrative remedies as remain open to the

25   aggrieved party, unless those remedies are palpably inadequate, which Maxon has not shown,

26   resulting in serious injustice, which Maxon also has not shown."); Myers v. Bethlehem Shipbuilding

27   Corp., 303 U.S. 41, 51 (1938) ("Obviously, the rules requiring exhaustion of the administrative

28   remedy cannot be circumvented by asserting that the charge on which the complaint rests is

15

United States District Court
For the Northern District of California

1  groundless and that the mere holding of the prescribed administrative hearing would result in

2  irreparable damage."); Hodges v. Callaway, 499 F.2d 417, 422 (5th Cir. 1974) ("Exhaustion is

3  required in part because of the possibility that administrative review might obviate the need for

4  judicial review. That the administrative process might not have this effect is not usually a reason for

5  bypassing it.").

6          Second, Plaintiff contends that it cannot obtain effective relief at the administrative level

7  because FINRA hearing officers and panels lack experience and competence to decide whether the

8  FAA's mandate prevails over the Exchange Act and SRO rules. Cf. Mathews v. Diaz, 426 U.S. 67,

9  76 (1976) (noting that where plaintiffs challenged the constitutionality of a portion of the Social

10 Security Act, the Secretary of Health, Education and Welfare lacked competence to decide that

11 issue). However, much of Plaintiff's complaint alleges that FINRA Rule 2268(d), properly

12 understood, does not prohibit Plaintiff's class action waiver (Compl. ¶ 32), and that FINRA is

13 misinterpreting its own Rules in pursuing disciplinary action against Plaintiff (Compl. ¶¶ 34-38).

14 These issues are squarely within the expertise of FINRA, as well as the SEC. For example, the

15 Exchange Act instructs the SEC in reviewing final disciplinary actions to determine whether the

16 rules were applied in a manner "consistent with the purposes of" the Act, which are fundamentally

17 to ensure the  maintenance of fair and honest markets. See 15 U.S.C. § 78s(e); 15 U.S.C. § 78b;

18 Krull v. SEC, 248 F.3d 907 (9th Cir. 2001) ("Congress granted the Commission broad supervisory

19 responsibility over self-regulatory organizations such as NASD and requires the Commission to

20 approve all rules, policies, practices, and interpretations prior to implementation. Because of the

21 Commission's expertise in the securities industry, we owe deference to its construction of NASD's

22 Rules of Fair Practice.") (internal citation omitted); Shenandoah v. US Dep't of Interior, 159 F.3d

23 708, 713 (2d Cir. 1998) ("Exhaustion may also '[moot] a judicial controversy.... And even where a

24 controversy survives administrative review, exhaustion of the administrative procedure may produce

25 a useful record for subsequent judicial consideration, especially in a complex or technical factual

26 context' or where as here the underlying issues are particularly within the agency's expertise.")

27 (internal citation omitted).

28          Moreover, the remedies available in  the administrative process (or indeed on review by the

16

court of appeals) are not palpably inadequate.  To the contrary, Defendant stated unequivocally at the hearing that the disciplinary process is capable of concluding with a determination that the FINRA Rule at issue is invalid in light of the FAA.[1]  See, e.g., First Jersey, 605 F.2d at 696 ("Ultimate review by the court of appeals ensures that constitutional or statutory errors will not go unremedied."); Cleantech, 2012 WL 345902, at *2 ("The Court agrees with defendants that there is no reason to believe that the SEC lacks similar expertise to review the constitutionality of the SRO actions here. . . . Most importantly—as recognized by this Court in Altman—should plaintiff disagree with the SEC's ultimate assessment, it can appeal it to the Court of Appeals, where 'any constitutional challenge raised in [the] administrative proceedings will be meaningfully addressed.'") (internal citation omitted).

As stated above, in Thunder Basin, which like this case addressed a regulation issued under one statute that allegedly conflicted with a different statute, the Supreme Court made no exception for exhaustion even though the plaintiff there brought a constitutional claim as well as a statutory one, in view of the availability of review by an independent commission (like the SEC here) and by the Court of Appeals.  See Thunder Basin, 510 U.S. at 215 ("As for petitioner's constitutional claim, we agree that '[a]djudication of the constitutionality of congressional enactments has generally been thought beyond the jurisdiction of administrative agencies.'  This rule is not mandatory, however, and is perhaps of less consequence where, as here, the reviewing body is not the agency itself but an independent commission established exclusively to adjudicate Mine Act disputes. The Commission has addressed constitutional questions in previous enforcement proceedings.  Even if this were not the case, however, petitioner's statutory and constitutional claims here can be meaningfully addressed in the Court of Appeals.") (internal citations omitted).  Here, Plaintiff makes no constitutional claim and its statutory claim depends in large part on an area of FINRA's and the

---

[1]     Indeed, Plaintiff could also petition the SEC to change the FINRA Rule at issue in light of the recent Supreme Court decisions construing the FAA, which the SEC has the power to do.  See Credit Suisse First Boston v. Grunwald, 400 F.3d 1119, 1130 (9th Cir. 2005) ("Moreover, the 1975 Amendments gave the Commission the power to abrogate, add to, and delete from the rules of any SRO 'as the Commission deems necessary or appropriate to insure the fair administration of the self regulatory organization....' Unlike the restrictions in the original statute, this new authority is not limited to specific subject matter areas. The Commission's expanded authority includes, for example, 'the power to mandate the adoption of any rules [the Commission] deems necessary to ensure that arbitration procedures adequately protect statutory rights.'") (internal citations omitted).

SEC's expertise.  Again, the reasoning of <u>Thunder Basin</u> is highly instructive:

> Petitioner pressed two primary claims below: that the UMWA designation under § 813(f) violates the principles of collective bargaining under the NLRA and petitioner's right "to exclude nonemployee union organizers from [its] property," <u>Lechmere, Inc. v. NLRB</u>, 502 U.S. 527, 532, 112 S.Ct. 841, 845, 117 L.Ed.2d 79 (1992), and that adjudication of petitioner's claims through the statutory-review provisions will violate due process by depriving petitioner of meaningful review. Petitioner's statutory claims at root require interpretation of the parties' rights and duties under § 813(f) and 30 CFR pt. 40, and as such arise under the Mine Act and fall squarely within the Commission's expertise. The Commission, which was established as an independent-review body to "develop a uniform and comprehensive interpretation" of the Mine Act, <u>Hearing on the Nomination of Members of the Federal Mine Safety and Health Review Commission before the Senate Committee on Human Resources</u>, 95th Cong., 2d Sess., 1 (1978), has extensive experience interpreting the walk-around rights  and recently addressed the precise NLRA claims presented here. Although the Commission has no particular expertise in construing statutes other than the Mine Act, we conclude that exclusive review before the Commission is appropriate since "agency expertise [could] be brought to bear on" the statutory questions presented here. <u>Whitney Nat. Bank</u>, 379 U.S., at 420, 85 S.Ct., at 557.

<u>Thunder Basin</u>, 510 U.S. at 213-15.  As in <u>Thunder Basin</u>, here the interpretation of FINRA Rule 2268(d) and the Exchange Act is squarely within the expertise of FINRA and the SEC, and the SEC is capable of addressing the statutory issue of the interplay between the Exchange Act and the FAA. Moreover, the court of appeals has the final word and can correct any error.

Plaintiff argues that the SEC does not have any advantage in expertise over federal courts in deciding "standard questions of administrative law" where such questions do not involve "fact-bound inquiries" or "technical considerations of [agency] policy."  <u>Free Enterprise Fund v. Public Co. Accounting Oversight Bd.</u>, 130 S. Ct. 3138, 3151 (2010).  Plaintiff also relies on <u>Gupta v. SEC</u>, 796 F. Supp. 2d 503 (S.D. N.Y. 2011), in which the district court found that claims as to the constitutional violations that the plaintiff would "suffer from the allegedly improper retroactive application of the Dodd–Frank Act are not peculiarly within the SEC's competence or expertise. Indeed, questions of statutory retroactivity are far more commonly reviewed by district courts than by the SEC, and 'administrative expertise [is] not implicated where a constitutional violation is alleged, because such allegations are particularly suited to the expertise of the judiciary, . . .'" <u>Gupta</u>, 796 F. Supp. 2d at 512.  However, unlike <u>Gupta</u>, Plaintiff here does not bring any constitutional claims, and a major focus of its complaint is that the class action waiver does not violate any FINRA Rule, which is not a mere standard question of administrative law but instead

**United States District Court**
For the Northern District of California

implicates the expertise of FINRA and the SEC regarding resolution of customer disputes with the broker-dealers that FINRA regulates. Last but not least, review by a federal court of appeals provides the ultimate safeguard for addressing Plaintiff's concerns. See Thunder Basin, 510 U.S. at 215.

Moreover, in Gupta, the plaintiff brought both a constitutional claim and a statutory one. He alleged that the SEC unconstitutionally singled him out for unfair treatment in violation of the Equal Protection clause because, of the twenty-nine people implicated in the insider trading scheme at issue in that case, only Gupta was the subject of an SEC disciplinary proceeding, while the rest were sued in district court. The Gupta plaintiff also alleged that the SEC improperly sought retroactive penalties under the Dodd-Frank Act, thereby depriving the plaintiff of the procedural safeguards available in federal court. The Gupta court determined that the plaintiff's constitutional equal protection claim -- *but not* his claim based on the retroactive application of the Dodd–Frank Act -- was appropriate for judicial review because the claim satisfied the requirements of the Free Enterprise test. See Free Enterprise, 130 S. Ct. at 3150 ("But we presume that Congress does not intend to limit jurisdiction if 'a finding of preclusion could foreclose all meaningful judicial review'; if the suit is 'wholly collateral to a statute's review provisions;' and if the claims are 'outside the agency's expertise.'") (internal citation omitted). Here, however, Plaintiff's statutory claim concerning the interplay of the FAA and FINRA Rules is more akin to the statutory claim in Gupta, which the court held was subject to administrative exhaustion.

Third, Plaintiff argues that the FINRA disciplinary procedures do not offer a meaningful path to review because Plaintiff would have to "bet the farm" by violating the statute before testing its validity. See Free Enterprise, 130 S. Ct. at 3151 ("Alternatively, the Government advises petitioners to raise their claims by appealing a Board sanction. But the investigation of Beckstead and Watts produced no sanction, and an uncomplimentary inspection report is not subject to judicial review. So the Government proposes that Beckstead and Watts incur a sanction (such as a sizable fine) by ignoring Board requests for documents and testimony. If the Commission then affirms, the firm will win access to a court of appeals—and severe punishment should its challenge fail. We normally do not require plaintiffs to 'bet the farm ... by taking the violative action' before 'testing the validity of

**United States District Court**
For the Northern District of California

1   the law,' and we do not consider this a 'meaningful' avenue of relief.") (internal citation omitted).

2   Plaintiff argues that because of the pending putative class action in state court, it must choose

3   whether to "bet the farm" by enforcing its class action waiver and facing further discipline, or risk

4   losing the right to individual arbitration with putative class members.

5          However, in <u>Free Enterprise</u>, unlike here, the plaintiff challenged the very existence of the

6   administrative agency, a collateral issue to any discipline, and one which rendered meaningful

7   review in the administrative process a practical impossibility.  <u>See</u> <u>Free Enterprise</u>, 130 S. Ct. at

8   3150 ("But petitioners object to the Board's existence, not to any of its auditing standards.

9   Petitioners' general challenge to the Board is "collateral" to any Commission orders or rules from

10  which review might be sought.").  Here, Plaintiff's claims are not collateral to the disciplinary

11  process or to FINRA's Rules.  <u>See</u> <u>McBride</u>, 290 F.3d at 980 ("A claim is collateral if it is not

12  'bound up with the merits so closely that [the court's] decision would constitute "interference with

13  agency process."'") (internal citation omitted).  To the contrary, Plaintiff seeks to enjoin the

14  disciplinary process and obtain a contrary interpretation or invalidation of the FINRA Rule on which

15  the disciplinary action is based – issues central to the merits.   Further, in <u>Free Enterprise</u>, it was

16  undisputed that the challenger had not yet violated any rules, and thus faced the choice of having to

17  incur a sanction to proceed with its challenge.  By contrast, Plaintiff has allegedly already violated a

18  rule by inserting the class action waiver into its account agreement.  Regardless of where this

19  dispute is heard, Plaintiff may face sanctions for that violation unless it succeeds in changing the

20  interpretation of or invalidating FINRA Rule 2268(d).

21         Plaintiff maintains nonetheless that this action is collateral because it attacks FINRA's and

22  the SEC's authority to bar class action waivers, and may succeed regardless of whether Plaintiff

23  violated the FINRA rules.  As noted above, Plaintiff argues that the FAA as interpreted in <u>AT&T</u>

24  <u>Mobility v. Concepcion</u>, 131 S. Ct. 1740 (2011) and <u>CompuCredit v. Greenwood</u>, 132 S. Ct. 665

25  (2012) prevails over any inconsistent statute or regulation absent a clear statutory command to the

26  contrary, which it contends is lacking in the Exchange Act.  These cases, however, do not address

27  whether exhaustion of the administrative process set forth in the FINRA Rules is jurisdictional or

28  whether Plaintiff has shown that it is exempt from the administrative exhaustion requirement.

1  Moreover, here, Plaintiff's claims, far from being merely peripheral to the disciplinary action,

2  challenge the interpretation of the FINRA Rule whose alleged violation is its very basis.  Thus, the

3  Court concludes that exhaustion of FINRA's administrative remedies in this disciplinary case is

4  jurisdictional, but even if not, Plaintiff has not shown that it is entitled to an exception from the

5  general exhaustion requirement.

6  **Conclusion**

7      Accordingly, Defendant's motion to dismiss is granted without leave to amend.

8      **IT IS SO ORDERED.**

9

10  Dated:  May 11, 2012

_____
ELIZABETH D. LAPORTE
United States Magistrate Judge